**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **Touchstream Technologies, Inc.**, <br><br> *Plaintiff*, <br><br> v. <br><br> **Charter Communications, Inc.; Charter Communications Operating, LLC; Spectrum Management Holding Company, LLC; Time Warner Cable Enterprises, LLC; AND Spectrum Gulf Coast, LLC,** <br><br> *Defendants*. | Civil Action No. 23-cv-00059 <br><br> **JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Touchstream Technologies, Inc., hereby files this Original Complaint for Patent Infringement against Charter Communications, Inc., Charter Communications Operating, LLC, Spectrum Management Holding Company, LLC, Time Warner Cable Enterprises, LLC, and Spectrum Gulf Coast, LLC (collectively, "Spectrum") and alleges, upon information and belief, as follows:

## THE PARTIES

1. Plaintiff Touchstream Technologies, Inc., d/b/a Shodogg ("Touchstream" or "Plaintiff") is a New York corporation with its principal place of business in New York, New York.

2. On information and belief, defendant Charter Communications, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 12405 Powerscourt Drive, St. Louis Missouri, 63131.

3. On information and belief, defendant Charter Communications Operating, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 400 Atlantic Street, Stamford, Connecticut 06901.

4. On information and belief, defendant Spectrum Management Holding Company, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 400 Atlantic Street, Stamford, Connecticut 06901.

5. On information and belief, defendant Time Warner Cable Enterprises, LLC is a limited liability company registered with the state of Texas, organized and existing under the laws of the State of Delaware, with its principal place of business at 12405 Powerscourt Drive, Stamford, CT 06901.

6. On information and belief, defendant Spectrum Gulf Coast, LLC is a foreign limited liability company registered in the state of Texas, and organized and existing under the laws of the State of Delaware, with its principal place of business at 12405 Powerscourt Drive, St. Louis, Missouri 63131.

## NATURE OF THE ACTION

7. This is a civil action against Spectrum for patent infringement arising under the patent statutes of the United States, 35 U.S.C. § 271 *et seq*. for the infringement of United States Patent No. 8,356,251 (the "'251 patent") (alternatively, "the Touchstream Patent"). A true and correct copy of the '251 patent is attached as Exhibit 1 to this Complaint.

## JURISDICTION AND VENUE

8. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has personal jurisdiction over Spectrum in this action because Spectrum has committed acts within the Eastern District of Texas giving rise to this action and have established minimum contacts with this forum such that the exercise of jurisdiction over Spectrum would not offend traditional notions of fair play and substantial justice. Spectrum has engaged in continuous,

systematic, and substantial activities within this State, including substantial marketing and sales of products—including the Spectrum products[1] that are used by Spectrum in connection with performing the accused Spectrum functionalities[2]—within this State. Furthermore, Spectrum—directly and/or through subsidiaries or intermediaries—have committed and continue to commit acts of infringement in this District by, among other things, selling, offering to sell, and using the Spectrum services.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b). As discussed above, Spectrum currently has a regular and established place of business in this District, and has committed and continues to commit acts of patent infringement in this District.

11. Spectrum and/or one or more of its subsidiaries maintain permanent physical presences within the Eastern District of Texas, conducting business from numerous locations, including at least 4255 Dowlen Road, Beaumont, Texas 77706, and 3620 W University Drive, Suite 100, McKinney, Texas 75071.

12. On information and belief, Spectrum and/or one or more of its subsidiaries maintain numerous established physical presences in at least the counties of Jefferson and Collin, including the above mentioned stores and, on information and belief, 2825 Interstate 10 E Beaumont, Texas 77702; 2305 W Lucas Drive Unit E Beaumont Texas, 77706; 2940 Terrell Street Beaumont Texas, 77701; 1460 Calder Street, Beaumont Texas 77704; 1221 Coit Road, Plano Texas 75075; 1300 Coit Road, Plano Texas 75075; 1414 Summit avenue Plano Texas 75074; and 700 Alma Drive Plano Texas 75075.

---

[1] The Spectrum products are defined at ¶¶ 33 *et. seq., infra.*
[2] The accused Spectrum functionalities are defined at ¶¶ 35, *et. seq.*, *infra.*

## TOUCHSTREAM'S PATENT

13. In 2010, David Strober, the inventor of the Touchstream Patent and the original founder of Touchstream, was working at Westchester Community College as a Program Manager and e-learning instructional designer. At this job Mr. Strober facilitated the development of online college courses, developing software as needed to support those efforts.

14. At least as early as mid-2010, Mr. Strober perceived the need to be able to take videos that could be viewed on a smaller device, like a smartphone, and "move" them to a larger screen, like a computer monitor or television. In working to bring his idea to fruition, Mr. Strober expanded his work by using a device like a smartphone to cause a video to play on a second screen, even if that video resided elsewhere (like the public internet). Near the end of 2010, Mr. Strober had developed a working prototype that demonstrated his groundbreaking concept. Recognizing that that his invention could revolutionize how people located, viewed, and shared media, Mr. Strober filed his first patent application in April 2011.

15. The Touchstream Patent is not directed to an abstract idea, but is limited to a specific, concrete messaging architecture. The claims require various components to send or receive signals (or messages) to control the playback of videos from various media players over a network, with precise requirements varying by claim. They do not cover all forms of remote control of content over a network. Specific steps must be performed in their specified order. Steps include, *inter alia*:

- Assigning a synchronization code to a display device by a server system;
- Receiving a message in the server system including the synchronization code;
- Storing a record in the server system based on the synchronization code;
- Receiving signals specifying a video file and identifying a particular media player;
- Including the synchronization code and a universal playback control command in the messages;

- Converting the universal playback control command to corresponding programming code; and

- Storing in a database information that specifies the video file to be acted upon, identifies the media player, and includes the corresponding programming code.

Further, Mr. Strober's improvements in this area do not reflect routine nor conventional steps. The arrangement of components and steps themselves is inventive, enabling, among other things, using different media players, associating different devices with a synchronization code, and coordinating between a personal computing device and display device loading a plurality of media players, video files, and control commands.

16. The Touchstream Patent, which is entitled "Play Control of Content on a Display Device," claims priority to U.S. Provisional Patent Application No. 61/477,998 (filed on April 21, 2011).

17. On January 15, 2013, the U.S. Patent and Trademark Office duly and legally issued the '251 patent to inventor David Strober.

18. Touchstream is the owner, by assignment, of all rights, title, and interest in the '251 patent.

## BACKGROUND OF THE DISPUTE

### TOUCHSTREAM REVOLUTIONIZES VIDEO STREAMING

19. In 2011, inventor David Strober officially incorporated Touchstream to share his inventions with the world.

20. In the following years, Touchstream raised millions of dollars in investments.

21. Since 2011, Touchstream, d/b/a "Shodogg," developed software that enables content to be wirelessly cast (e.g., accessed, displayed, and controlled) from a mobile device to a second display screen (e.g., TV, computer, tablet, etc.). Touchstream has been a leader in developing casting technology and has received numerous awards and recognition.

22. Unfortunately, the efforts of Touchstream and Touchstream's partners to appropriately monetize Mr. David Strober's inventions were significantly hindered by infringement of the Touchstream Patent, including by Spectrum. The timing and scope of Spectrum's infringement is discussed in more detail below.

## SPECTRUM MEETS WITH TOUCHSTREAM IN 2011-2017 TO LEARN ABOUT THE PATENTED TOUCHSTREAM TECHNOLOGY

23. Since at least December 14, 2011, Touchstream has made publicly clear that its revolutionary product offerings were "patent-pending."[3]

24. Just days after the first Touchstream Patent issued on January 15, 2013, Touchstream issued a press release announcing this patent award.[4]

25. Beginning in September 2011, Touchstream and Spectrum began discussing a potential partnership concerning the technology invented by Touchstream. Discussions continued through at least January of 2017.

---

[3] *See e.g.*, Sean Ludwig, *Shodogg will let you pause and restart video from any device (exclusive)*, VentureBeat (Dec. 14, 2011 7:00 AM), https://venturebeat.com/2011/12/14/shodogg-video-sharing-phones-tvs-exclusive/; Shodogg, *Shodogg Launches at CES and Transforms Streaming Video Delivery by Fueling Industry Expansion with Content Providers*, Cision PR Newswire (Jan. 10, 2012, 9:43 ET), https://www.prnewswire.com/news-releases/shodogg-launches-at-ces-and-transforms-streaming-video-delivery-by-fueling-industry-expansion-with-content-providers-137010098.html; *see also* https://web.archive.org/web/20111003131546/http://shodogg.com/ (archived snapshot of Shodogg website from October 3, 2011) ("Shodogg is a patent-pending technology that allows viewers to access online streaming content from any smartphone and display it to any larger connected screen, such as a laptop, tablet, or TV.").

[4] Shodogg, *Shodogg announces the release of ScreenDirect a business-to-business solution enabling companies to seamlessly direct digital content across screens*, Cision PR Newswire (Jan. 17, 2013 9:15 ET) https://www.prnewswire.com/news-releases/shodogg-announces-the-release-of-screendirect-a-business-to-business-solution-enabling-companies-to-seamlessly-direct-digital-content-across-screens-187284641.html; *See also, e.g., Meet Shodogg Who Won this Year's Techweek NYC Launch Competition*, AlleyWatch (12/2014), https://www.alleywatch.com/2014/12/meet-shodogg-who-won-this-years-techweek-nyc-launch-competition/.

26. In or around June of 2011, multiple Touchstream employees presented to Spectrum. Touchstream demonstrated the technology, and informed them it was patent-pending. Touchstream further provided a patent application number to Spectrum at this meeting. Touchstream further emailed the presentation document containing the patent application number to Spectrum in at least October of 2011. As such, Spectrum knew about the patent applications leading to the Touchstream Patent by no later than 2011.

27. Further interactions between Spectrum and Touchstream occurred at least in September, October, November, and December of 2011; January, March, and June of 2012; January and August of 2013, February and June of 2014; July and August of 2015; April, June, July, September, October, and December of 2016, and January of 2017. It was Touchstream's pattern and practice to inform actual or potential business partners of its patents and/or pending patent applications when meeting.

28. Spectrum also knew, or at the very least should have known, of the issued Touchstream Patent on or shortly after the date each such patent was issued, beginning with the '251 Patent that issued in January 2013.

29. At no point in 2011-2017 did Spectrum reach out to Touchstream about potentially acquiring a license to Touchstream's pending or awarded patent, and to this day Spectrum has not requested or received a license to the Touchstream Patent.

**SPECTRUM UNVEILS ITS INFRINGING SERVICES**

30. On information and belief, Spectrum has operated its Spectrum TV App product—which perform the infringing functionalities—since at least 2016.[5]

---

[5] *See, e.g.*, Apple, *App Store Preview: Spectrum TV*, https://apps.apple.com/us/app/spectrum-tv/id420455839 (indicating copyright 2016).

31.     As of December 31, 2022, Spectrum announced it had 15.1 million video customers.[6]

## THE ACCUSED SPECTRUM TV FUNCTIONALITIES

32.     The accused Spectrum TV App functionalities comprise the methods performed through operation of at least the Spectrum set top box ("STB") devices as well as the Spectrum TV mobile applications.  The accused products did provide in the past, and continue to provide, functionality and structure that facilitates the controlling of content, such as audio and/or video content, on a content presentation device that loads any one of a plurality of different media players described in further detail below.



https://www.spectrum.com/cable-tv

33.     Upon initial operation, the STB is connected to a device having a screen (e.g., a television). The user then activates their STB with their Spectrum account information, such as account number or phone number. On information and belief, the STB communicates with Spectrum servers to register a Device Identifier associated with the user account.

---

[6] Charter Communications, Inc., Form 10-K, at 5 (Dec. 2022)



Spectrum STB
https://d15yx0mnc9teae.cloudfront.net/sites/default/files/sup_spectrum_worldbox_100_200_quickStart-1465322682.pdf

34. A user may then download and install the Spectrum TV application on their mobile device (e.g., a smartphone). The mobile application allows users to discover and connect to their STB device, by way of a synchronization code or unique identifier. On information and belief, Spectrum STBs have Device Identifiers. By way of non-limiting examples, each STB has a unique "Receiver Name" and a "Unit Address" to identify and associate the STB. The STB and mobile application communicate via a server intermediary that associates the two devices. On information and belief, the mobile devices' messages include this synchronization code or unique identifier, and the server uses this information to route messages to the desired STB.

TURN ANY SCREEN INTO A TV
• Stream live TV anywhere you have a connection.
• Enjoy streaming thousands of On Demand shows and movies.
• Cast from your phone or tablet to a compatible TV with Chromecast.

https://play.google.com/store/apps/details?id=com.TWCableTV&hl=en_US&gl=US



https://play.google.com/store/apps/details?id=com.TWCableTV&hl=en_US&gl=US

35. Users may then use the Spectrum TV application to browse and discover content. The mobile application presents content on the mobile device screen by title, image, and other metadata such as series seasons and episodes. Users can navigate the mobile application interface to see different content options available to them via their Spectrum account. Spectrum provides content from a variety of sources, for example Live TV, DVR, or Video on Demand sources. On information and belief, the mobile application retrieves content options and information from a remote Spectrum server.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                         Page 10



Spectrum, *Using the Spectrum TV App*, https://www.youtube.com/watch?v=1bPuIRY19b8

36.     By browsing content on the mobile application, users may find and select the content they wish to view. Upon finding their desired content, users pick the content on the mobile application and press "watch on TV" to send a message to a server system including information identifying the media and its respective media player. The server system communicates this information to the STB so the STB can effect the user's commands, for instance, by loading the content and media player, and beginning playback of their selected TV show.



Spectrum, Using the Spectrum TV App, https://www.youtube.com/watch?v=1bPuIRY19b8

37. Users may also use the same mobile application to control playback of content. On information and belief, initial content selection is accompanied by a "play" command, so when a user selects content it automatically begins playing. Further, on information and belief, a user may send play/pause, rewind, fast-forward, and seek commands from the mobile application. On information and belief, the mobile application sends these messages to the server system, which translates or converts them into commands each particular media player can execute, and stores a record of the message.

38. Spectrum provide media from various sources, for example Live TV channels, or Video on Demand. Users may select content from any of these sources via the mobile application. The mobile device communicates to the server what media player is required for the specified content. The server system then relays instructions to the STB device to load the corresponding media player. For instance, on information and belief, Live TV and Video on Demand use different media

codecs. Different media players handle these codecs, and allow for similar viewing experiences for the end user.

39. Each of the steps discussed above is either performed by or otherwise attributable to Spectrum. To the extent another actor performs any of these steps, Spectrum directs or controls that performance, conditioning participation in the activity or the receipt of a benefit upon performance of the patented method steps, and establishing the manner or timing of that performance. Additionally, Spectrum profits from their infringement and have the right and ability to stop or limit the infringement. For instance, Spectrum tests and demonstrates the accused functionality, including in advertisements. Further, Spectrum advertises and demonstrates to customers that the infringing method steps will be performed, as shown above. Further, Spectrum cause automatic updates to the Spectrum TV systems. As discussed below, the functionality advertised and directed by Spectrum infringes the Touchstream Patent, and on information or belief, is known by Spectrum to do so.

## COUNT I: INFRINGEMENT OF THE '251 PATENT

40. Touchstream adopts and incorporates by reference the allegations set forth in ¶¶ 1-39, *supra*.

41. Spectrum directly infringes at least claim 1 of the '251 patent by performing the methods described in ¶¶ 30-39, *supra*.

42. For example, Spectrum performs the machine-implemented method of controlling presentation of video content on a display device that loads any one of a plurality of different media players. *See, e.g.*, ¶¶ 30-39, *supra*. Spectrum further assigns, by a server system, a synchronization code to the display device. *See, e.g.*, ¶¶ 33-34 *supra*. Spectrum further receives, in the server system, a message from a personal computing device that is separate from the server system and separate from the display device, wherein the message includes the synchronization

code. *See, e.g.*, ¶ 34, *supra*. Spectrum further stores, by the server system, a record establishing an association between the personal computing device and the display device based on the synchronization code. *See, e.g.*, ¶¶ 33-34, *supra*. Spectrum further receives, in the server system, one or more signals from the personal computing device, the one or more signals specifying a video file to be acted upon and identifying a particular media player for playing the video content, the one or more signals further including a universal playback control command for controlling playing of the video content on the display device by the particular media player. *See, e.g.*, ¶ 37, *supra*. Spectrum further converts, by the server system, the universal playback control command into corresponding programming code to control playing of the video content on the display device by the particular media player, wherein converting the universal playback control command includes selecting from among a plurality of specific commands, each of which represents a corresponding playback control command for a respective media player. *See, e.g.*, ¶ 37, *supra*. Spectrum further stores, in a database associated with the server system, information for transmission to or retrieval by the display device, wherein the information specifies the video file to be acted upon, identifies the particular media player for playing the video content, and includes the corresponding programming code to control playing of the video content on the display device by the particular media player in accordance with the universal playback control command. *See, e.g.*, ¶¶ 34-37, *supra*.

43. Spectrum's infringement of the '251 patent has been, is, and continues to be willful, including Spectrum's infringement of at least claim 1 as described at ¶¶ 23-29, *supra*.

44. Touchstream has been and will continue to be irreparably harmed by Spectrum's infringing acts, requiring the entry of a permanent injunction to prevent Spectrum's further infringement of the '251 patent because Touchstream does not have another adequate remedy at law.

## JURY DEMAND

45.     Touchstream demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Touchstream requests entry of a judgment in its favor and against Spectrum as follows:

   a)   Judgment that Spectrum has directly infringed one or more claims of the Touchstream Patent;

   b)   An award of damages to compensate for Spectrum's infringement, including damages pursuant to 35 U.S.C. § 284, as well as prejudgment and post-judgment interest.

   c)   An award of costs and expenses in this action, including an award of Touchstream's reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

   d)   A permanent injunction restraining and enjoining Spectrum, and their respective officers, agents, servants, employees, attorneys, and those persons in active concert or participation with Spectrum who receive actual notice of the order by personal service or otherwise, from any further sales or use of their infringing products and/or services and any other infringement of the Touchstream Patent;

   e)   A finding that Spectrum has willfully infringed and is willfully infringing one or more claims of the Touchstream Patent;

   f)   A finding that this case is an exceptional case, and awarding treble damages due to Spectrum's deliberate and willful conduct, and ordering Spectrum to pay Touchstream's costs of suit and attorneys' fees; and

   g)   For such other and further relief as the Court may deem just, proper, and equitable

Dated: February 16, 2023

Respectfully submitted,

*/s/ Michael W. Gray*
Michael W. Gray (State Bar No. 24094385)
**SHOOK, HARDY & BACON L.L.P.**
JPMorgan Chase Tower
600 Travis St, Suite 3400
Houston, TX 77002-2926
Phone: (713) 227-8008
Fax: (713) 227-9508
mgray@shb.com

*Counsel for Plaintiff*
*Touchstream Technologies, Inc.*