**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

**TOUCHSTREAM TECHNOLOGIES, INC.,**

   *Plaintiff*,

  *v.*

**CHARTER COMMUNICATIONS, INC., et al.,**

   *Defendants*.

**TOUCHSTREAM TECHNOLOGIES, INC.,**

   *Plaintiff*,

  *v.*

**COMCAST CABLE COMMUNICATIONS, LLC, D/B/A XFINITY, et al.,**

   *Defendants*.

**Lead Case No. 2:23-cv-00059-JRG**
Member Case No. 2:23-cv-00062-JRG

**TOUCHSTREAM TECHNOLOGIES, INC.'S OPENING
<u>CLAIM CONSTRUCTION BRIEF</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1
II.    BACKGROUND ........................................................................................................ 1
III.   LEGAL STANDARDS ............................................................................................. 2
IV.    DISPUTED CLAIM TERMS .................................................................................... 3
       A.    Terms Common to Multiple Patents ............................................................... 3
             1.    "media player" ('251 Patent claims 1, 2) / "media player application"
                   ('751 Patent claims 12, 13, 14, 16) / "media playing application ('934
                   Patent claims 17, 18, 19) ................................................................... 3
             2.    "a synchronization code" / "the synchronization code" ('251 Patent claims
                   1, 8, 9, and '751 Patent claim 12) ........................................................ 4
             3.    "synchronization code" ('251 Patent claims 1, 8, 9, and '751 Patent claim
                   12) ...................................................................................................... 5
             4.    "Method claim steps" (All Asserted Patents) ........................................ 8
       B.    Terms in the '251 Patent ................................................................................ 10
             5.    "storing . . . based on the synchronization code" ('251 Patent claim 1)... 10
       C.    Terms in the '751 Patent ................................................................................ 11
             6.    "first format" / "second format" ('751 Patent claims 12, 16) .................. 11
             7.    "the first format of the first message" ('751 Patent claim 12) ................. 13
       D.    Terms in the '934 Patent ................................................................................ 15
             8.    "a unique identifier" / "the unique identifier" ('934 Patent claim 17) ...... 15
             9.    "unique identifier" ('934 Patent claim 17) ............................................. 16
             10.   "first format" / "universal format" ('934 Patent claim 17) ...................... 18
V.     CONCLUSION .......................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   805 F.3d 1368 (Fed. Cir. 2015)................................................................8, 18

*BASF Corp. v. Johnson Matthey Inc.*,
   875 F.3d 1360 (Fed. Cir. 2017)........................................................................13

*CA, Inc. v. Netflix, Inc.*,
   No. 2:21-cv-00080-JRG-RSP, 2021 WL 5323413 (E.D. Tex. Nov. 16, 2021)..................5, 15

*Candela Corp. v. Palomar Med. Techs., Inc.*,
   No. CIV.A. 9:06-CV-277, 2008 WL 3285255 (E.D. Tex. Aug. 6, 2008) ...............................10

*Cisco Sys., Inc. v. XR Commc'ns, LLC*,
   835 F. App'x 590 (Fed. Cir. 2020) ........................................................................11

*Credle v. Bond*,
   25 F.3d 1566 (Fed. Cir. 1994).............................................................................10

*EmeraChem Holdings, LLC v. Volkswagen Grp. of America, Inc.*,
   714 F. Appx. 995 (Fed. Cir. 2017)........................................................................4

*Kruse Tech. P'ship v. Volkswagen AG*,
   544 F. App'x 943 (Fed. Cir. 2013) ........................................................................10

*Merck & Co. v. Teva Pharm. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005)............................................................................11

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898, 134 S. Ct. 2120 (2014)....................................................................13

*O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
   521 F.3d 1351 (Fed. Cir. 2008)............................................................................4

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)....................................................................2, 6, 16

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
   378 F.3d 1396 (Fed. Cir. 2004)............................................................................11

*Thorner v. Sony Computer Ent. Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012)............................................................................2

*United Access Techs., LLC v. AT & T Corp.*,
 757 F. App'x 960 (Fed. Cir. 2019) ............................................................................14

*VLSI Tech. LLC v. Intel Corp.*,
 53 F.4th 646 (Fed. Cir. 2022) ...........................................................................8, 18

**Statutes**

35 U.S.C. § 112, ¶ 2 ...............................................................................................2, 3

**Other Authorities**

U.S. Patent No. 8,356,251 ................................................................... *passim*

U.S. Patent No. 11,048,751 ................................................................. *passim*

U.S. Patent No. 11,086,934 ................................................................. *passim*

## I.    <u>INTRODUCTION</u>

Touchstream's positions are rooted in the core tenets of claim construction set forth by the Federal Circuit. Though the claims are easy to understand using their plain and ordinary meaning, Defendants propose to inject unnecessary, confusing, and sometimes contradictory limitations into the claims. Defendants' proposals should be rejected.

## II.    <u>BACKGROUND</u>

Touchstream was founded in 2011 to build a business around Mr. Strober's inventions involving the "casting" of content from a personal device (e.g., smart phone, tablet, etc.) to a second display (e.g., a TV, computer, etc.). As a startup based on this concept of casting, Touchstream sought to protect its intellectual property—including by filing the applications resulting in the patents asserted here. The Asserted Patents in this case are U.S. Patent No. 8,356,251 ("'251 Patent"); U.S. Patent No. 11,048,751 ("'751 Patent"); and U.S. Patent No. 11,086,934 ("'934 Patent"). The '251 Patent is a continuation of Application No. 12/157,821, of which the '751 and '934 patents are both continuations-in-part. The Asserted Patents share a specification, and each claim priority to the same U.S. Provisional Patent Application No. 61/477,998, which was filed on April 21, 2011.

Prior to the inventions of Mr. Strober, a user of personal computing device, such as a phone, could find, view, and control content on his or her device. But bringing this content up on a secondary display was typically cumbersome—the main mode being to use the TV remote to launch the app, search for and start the content, fast-forward to the current point being watched, then stop the content on the phone. While "mirroring" existed—that is, sending the contents of a phone's screen to a second screen for simultaneous display—this had significant disadvantages, including requiring a continuous connection between the phone and the TV, using significant

battery on the phone, and being unable to use the mobile phone for texting or other purposes while the content was being "mirrored" to the TV (or inadvertently "mirroring" a text message conversation to the TV).

To address these disadvantages, the technology disclosed in the Asserted Patents enables a user to locate content on his or her mobile device, select a second device (e.g. a TV, computer, tablet, etc.), and *transfer* the content—along with the responsibility for downloading and playing the content—to the second device. This freed the mobile devices while maintaining control over the content, providing a user-friendly and seamless way of consuming content. These innovations drove significant value to consumers and businesses through promoting and facilitating the consumption of content on larger screens.

## III.    <u>LEGAL STANDARDS</u>

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). A court may only depart from the plain and ordinary meaning of the claim terms in two circumstances: (1) where a patentee defines a term, thus acting as his own lexicographer, or (2) when a patentee disavows the full scope of a claim term in the specification or during prosecution. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

This Court is familiar with the law of definiteness. 35 U.S.C. § 112, ¶ 2 requires "that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Fractus, S.A., v. Tcl Corp., Tcl Communication Technology Holdings Ltd., Tct Mobile Worldwide, Ltd., Tct Mobile International, Ltd.*, No. 2:20-CV-00097-JRG, 2021 WL 2983195, at *4 (E.D. Tex. July 14, 2021) (*citing Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910, 134 S. Ct. 2120, 2129 (2014)).

Further, a defendant must prove a claim indefinite by "clear and convincing evidence." *Id.* (*citing Sonix Tech. Co. v. Publ'ns Int'l, Ltd.,* 844 F.3d 1370, 1377 (Fed. Cir. 2017)).

## IV.    DISPUTED CLAIM TERMS[1]

### A.    Terms Common to Multiple Patents

1. **"media player" ('251 Patent claims 1, 2) / "media player application" ('751 Patent claims 12, 13, 14, 16) / "media playing application ('934 Patent claims 17, 18, 19)**

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | "application software for playing back video content." *('251 Patent)* |
| | "application software for playing back content" *('751 and '934 Patents)* |

The terms "media player," "media player application," and "media playing application" are well-known, easily understood terms used in accordance with their plain and ordinary meaning. As such, no construction is necessary. Nevertheless, Defendants' attempt to convolute the term by including the phrase "application software." Claim construction serves to clarify—not obfuscate— the meanings of disputed terms. The scope of "media player" is clearer than that of "application software." A juror will understand what is or is not a "media player," but may, and likely will, have difficulty understanding whether something is "application software." Defendants' proposed construction is, at best, unnecessary as redundant and, at worst, risks confusing the jury while deviating from the terms' ordinary meaning.

---

[1] Defendants are no longer seeking construction of [1] "a server system" / "the server system" ('251 and '934 Patents), [2] "remote server device" ('751 Patent), and [3] "universal playback control command" ('251 Patent). Accordingly, Touchstream does not address those terms here.

"Claim construction is 'not an obligatory exercise in redundancy.'" *EmeraChem Holdings, LLC v. Volkswagen Grp. of America, Inc.*, 714 F. Appx. 995, 997 (Fed. Cir. 2017). "[D]istrict courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims…Rather, '[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.'" *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (emphasis original).

Not only are Defendants' construction(s) redundant and unnecessary, they are inconsistent. For instance, Defendants' proposed construction of these terms differs between the '251 Patent and the '751 and '934 Patents, limiting this term to only "video content" in the '251 Patent. This confusing variation is unwarranted, as the asserted '251 Claims are *already* limited to video content by the language in the '251 claims. *See* '251 Patent at Claim 1 (11:37-38, reciting "video content" rather than just "content"). Thus, limiting the term "media player" to only video content in the '251 Patent serves only to duplicate a limitation already present in the claim.[2]

The jury would not benefit from a construction of this term, and Defendants' proposal does not resolve any apparent scope disputes. A plain and ordinary construction is appropriate here.

**2. "a synchronization code" / "the synchronization code" ('251 Patent claims 1, 8, 9, and '751 Patent claim 12)**

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | "Must be the same 'synchronization code' throughout the claim." |

---

[2] While Defendants may point to the February 22, 2012, Remarks made in Amendment to support their construction, this argument is based on similarly flawed reasoning. In said Remarks counsel stated that "media player" referred to "application software for playing back video content." But, the claim language at issue was already limited to video content, so this construction of "media player" would render the "video content" claim language of the '251 Patent superfluous and cannot be correct.

It is unnecessary to construe this term. Touchstream is confused by Defendants' reasoning here: a jury does not need assistance to understand common terms like "a" and "the." Such a construction is unnecessary and risks obscuring the plain and ordinary meaning of these terms.

Here, the antecedent basis rule renders Defendants' construction redundant. *See CA, Inc. v. Netflix, Inc.*, No. 2:21-cv-00080-JRG-RSP, 2021 WL 5323413, at *11 (E.D. Tex. Nov. 16, 2021). "Synchronization code" is introduced in the claim using the indefinite article "a" and referred back to with the definite article "the." '251 Pat., 11:26, 11:31, 11:34; '751 Pat. 12:66–67, 13:1, 13:3–4, 13:6. This use of indefinite and definite articles is obviously extremely common. The jury needs no guidance as to whether "a synchronization code" and "the synchronization code" refer to the same "synchronization code" because the jury is capable of understanding the words "a" and "the."

Defendants do not appear confused by these words either, as they do not propose similar constructions for other terms with definite articles. For example, Defendants take no issue with the '251 Patent's use of "a server system" vs. "the server system," or "a message" vs. "the message." '251 Pat., 11:28, 11:30–31. This implicit admission is that words like "a" and "the" are best understood by their plain and ordinary meaning. Construing this term is unnecessary.

### 3. "synchronization code" ('251 Patent claims 1, 8, 9, and '751 Patent claim 12)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | "a code which can be obtained by a user from the [display device / content presentation device] and provided by the user to the [personal computing device / remote computing device]" |

The term "synchronization code" is used in accordance with its plain and ordinary meaning. Defendants' proposed construction offers no clarification or guidance as to the meaning

of the term "synchronization code." Rather, Defendants seek to limit how a synchronization code may be communicated between a display device/content presentation device and a personal computing device/remote computing device beyond that imposed by the plain language of the claims. Defendants' proposed construction disregards the claim language, seeking to limit their scope to a single embodiment. In doing so, Defendants stray from the "'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

Claim 1 of the '251 Patent recites, in relevant part, steps of "assigning, by a server system, a synchronization code to the display device; receiving, in the server system, a message from a personal computing device . . . wherein the message includes the synchronization code" and "storing, by the server system, a record establishing an association between the personal computing device and the display device based on the synchronization code . . . ." '251 Pat. at Claim 1 (11:26-34). Similarly, claim 12 of the '751 Patent recites, in relevant part, "obtaining, by a content presentation device, a synchronization code associated with the content presentation device, wherein the associated synchronization code is stored on a remote server device" and "providing, by the content presentation device, the synchronization code to a remote computing device in communication with the remote server device, wherein the provided synchronization code causes the remote server device to store an association between the content presentation device and the remote computing device . . . ." '751 Pat. at Claim 12 (12:66-13:9). These steps clearly set forth the claimed requirements for the synchronization code, including which elements must be involved in the "assigning," "receiving," and "obtaining" of it.

The claims do not require that a user act as an intermediary to obtain the synchronization code from a display device before providing that synchronization code to the personal computing

device. Instead, the claims describe communication between a display device and a personal computing device—not between a display device and a *user*. The '251 Patent requires that the server system receives a message containing a synchronization code from the personal computing device, while the '751 Patent further describes the content presentation device providing a synchronization code to the remote computing device. '251 Pat. at Claim 1 (11:26-34); '751 Pat. at Claim 12 (12:66-13:9). Notably absent from the claim language is a requirement that a user obtain the synchronization code. Without support in the claim language, the merit of Defendants' construction relies wholly on the '251 and '751 specifications.

Defendants support their proposed construction with a single, exemplary embodiment disclosed in the specifications. Both the '251 and '751 specifications describe that "the user can select the display device by entering a synchronization code uniquely associated with the particular display device." '251 Pat. 5:14–16; '751 Pat. 5:31–33. But this is only one of many embodiments, and it explicitly says that the user *can* select the display device by entering a synchronization code—not that the user *must*. Further, the specification discloses other options:

- "As illustrated in FIG. 7A, the synchronization code 48 can be displayed for example, on a splash page of the display device as text on the screen or as an image such as a QR code, and can be entered into the mobile phone 20, for example, manually by the user or by scanning the code into the mobile phone." '251 Pat. 5:16–21; '751 Pat. 5:35–39 (emphasis added).

- "In some implementations, the server system stores a look-up table that includes a synchronization code uniquely associated with the display device. A message from the personal computing device can include the synchronization code, and in response to receiving the message from personal computing device, the server system can use the synchronization code and the look-up table to identify the display device on which the content is to be played." '251 Pat. 2:16–26; '751 Pat. 2:24–34.

- "The code can be scanned, for example, using optical scanning or RFID techniques." '251 Pat. 5:21–23; '751 Pat. 5:39-40.

- "Once the synchronization code is entered into, or captured by, the mobile phone 20, it is sent from the mobile phone 20 to the server system 24 . . . ." '251 Pat. 5:36–38; '751 Pat. 5:53–55.

So while the user may obtain a synchronization code from the display device and enter that synchronization code to a personal computing device in some embodiments, other embodiments teach that the display device may provide the synchronization code directly to the personal computing device without the user serving as an intermediary. *See* '251 Pat. 5:8–41; '751 Pat. 5:25–58.

As the Federal Circuit has repeatedly cautioned, "claims should not be limited 'to preferred embodiments or specific examples in the specification.'" *VLSI Tech. LLC v. Intel Corp.*, 53 F.4th 646, 652 (Fed. Cir. 2022). "[E]ven where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1376 (Fed. Cir. 2015). No clear intention to limit claim scope is present here.

Lacking support in the claims or specifications, Defendants' proposed construction is improper. Defendants' proposal should be rejected in favor of the term's plain and ordinary meaning.

### 4.  "Method claim steps" (All Asserted Patents)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| The terms are not chronologically limited under relevant case law, and the jury does not need instruction on ordering of claim steps, as any ordering requirements are reasonably clear from the claims themselves. | All steps of claim 12 must occur in order (*'751 Patent*) |
| | All steps of claim 17 must occur in order (*'934 Patent*) |
| | Step 2.A ("checking") must occur after step 1.D ("receiving, in the server system, one or more signals"). (*'251 Patent*) |

Any required order of operations applicable to the Asserted Claims is readily ascertainable from the claim language alone. The jury needs no guidance to determine whether the claim steps need be performed in a particular order.

"When analyzing whether an order exists between steps of a method claim, the presumption is that limitations may be performed in any order." *Datanet LLC v. Dropbox, Inc.*, No. 622CV001142OLGDTG, 2023 WL 7545234, at *3 (W.D. Tex. Nov. 10, 2023) (citing *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003)). "Courts first look at the 'claim language to determine if, as a matter of logic or grammar, they must be performed in the order written' and, if not, whether the specification 'directly or implicitly requires such a narrow construction.'" *Id.*

While the presumption is that steps may be performed in any order, it is apparent from the claims themselves that some steps must be performed in order. For instance, "obtaining a synchronization code" must occur before it is "stored" in the '751 Patent, (*i.e.,* the code cannot be "stored" before it is "obtained"). '751 Pat. 11:53–55. Similarly, the code must be "provided" before it "causes the remote device to store an association." '751 Pat. 11:56–61. But this order is apparent from how those limitations are written, and an explicit instruction, for example, that "[a]ll steps of claim 12 must occur in order," risks confusing the jury—especially because the claim contemplates a "second message" existing before the receiving of a "first message." '751 Pat. 11:62–67. Just because the first message is *introduced* in the claims before the second message does not require it to be *sent* before the second message exists. Indeed, this would defy a plain reading of the claims. An instruction that all steps must occur in order would introduce confusing baggage for the jury to read the claims, and not change the requirements of infringement. The jury needs no such instruction.

### B.     Terms in the '251 Patent

### 5.   "storing . . . based on the synchronization code" ('251 Patent claim 1)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | "based on the synchronization code, storing" |

Defendants inject ambiguity where none exists. The relevant limitation of the '251 Patent reads in full: "storing, by the server system, a record establishing an association between the personal computing device and the display device based on the synchronization code." '251 Pat., 11:32–34. The relative phrase "based on the synchronization code" describes the immediately preceding object: "an association between the personal computing device and the display device." *Id.* Thus, the server system is storing a record establishing an association, wherein *the association*—not *the storing*—is based on the synchronization code. Defendants' construction is simply incorrect. Even if it were not, the jury does not need the Court's assistance to comprehend this basic English syntax.

Grammar applies to patent claims. *Candela Corp. v. Palomar Med. Techs., Inc.*, No. CIV.A. 9:06-CV-277, 2008 WL 3285255, at *4 (E.D. Tex. Aug. 6, 2008); *Kruse Tech. P'ship v. Volkswagen AG*, 544 F. App'x 943, 949 (Fed. Cir. 2013). A proposed construction is incorrect when it is "at war with its grammar and syntax and thus would force an unreasonable interpretation." *Credle v. Bond*, 25 F.3d 1566, 1572 (Fed. Cir. 1994).

Defendants' proposed construction is not simply "at war with [the] grammar and syntax" of the claim limitation—it actually usurps the limitation's original meaning. According to Defendants, instead of storing a record that is based on the synchronization code, the claims must base the *storing itself* on the synchronization code. This interpretation changes the claim element to something that is not written (i.e., something like "storing, ~~by the server system, a record~~

10

~~establishing an association between the personal computing device and the display device~~ based on the synchronization code."). A construction that renders eighteen of the twenty-four words at issue superfluous cannot stand. *See Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004); *see also Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."). Indeed, the phrase "based on the synchronization code" is unambiguous. The relative clause modifies the noun preceding it; here, it modifies "association." *Cisco Sys., Inc. v. XR Commc'ns, LLC*, 835 F. App'x 590, 592 (Fed. Cir. 2020) (finding relative clause unambiguous). Only Defendants' addition of an ellipsis introduces uncertainty as to what must be "based on the synchronization code." *Id.* The limitation, read in full, is otherwise clear and should be afforded its plain and ordinary meaning.

### C.    Terms in the '751 Patent

#### 6.   "first format" / "second format" ('751 Patent claims 12, 16)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | Second format is different from the first format |

The terms "first format" and "second format" should be given their plain and ordinary meaning. Defendants' proposed construction purports to differentiate between two formats while actually injecting an unsupported limitation requiring every command in those formats to be different. The jury does not need guidance to differentiate two formats.

Touchstream does not dispute that the "first format" and "second format" are different formats. Such is apparent from the plain claim language; the jury does not require the Court's guidance to understand this. But two instances of a command may include the same expression in

11

two separate formats. For instance, the word "no" is the same in both English and Spanish. Despite different formats (or in this case, languages) the command (or in this case, the word) is the same. The '751 Patent accounts for this. Figure 5 of the '751 Patent is illustrative, showing a "Universal" command in a first format that results in the same content—but different format—for the "Specific Player Command":

| Universal API Adapter | | |
|---|---|---|
| Universal Command | MediaPlayerID | Specific Player Command |
| New Video | YouTube | yt_loadVideo |
| | Ted.com | getVideo |
| | Vimeo | loadNewVideo |
| Pause | YouTube | yt_pauseVideo |
| | Ted.com | pauseVideo |
| | Vimeo | pause |

FIG. 5

'751 Pat., Fig. 5 (annotated). Here, there are at least two formats: a first format (universal command format) and a second format (specific player command). For YouTube, the "pause" command in the first, universal command format is equivalent to "yt_pauseVideo" in the second, specific player command format. For Vimeo, however, the universal command "pause" remains the same in both the first and second formats. While other players might look different, for instance the Ted.com player would result in "pauseVideo," it is not necessary the universal playback control command, in every instance, be unrecognizable by the media player. This is further supported by the specification, which details the command can be converted "if the command received from the personal computing device is not recognizable by the media player." '751 Pat., 2:12-13. As the '751 Patent teaches, converting does not necessarily require a change.

In short, Defendants' proposed construction is confusing, redundant, and unsupported by the claims and specification. This claim term should be afforded its plain and ordinary meaning.

12

### 7.  "the first format of the first message" ('751 Patent claim 12)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | Indefinite |

The scope of this term is reasonably clear to those of skill in the art. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910, 134 S. Ct. 2120, 2129 (2014). As with other terms, Defendants manufacture ambiguity where none exists. Defendants argue that "first format" is used inconsistently, modifying both the "message" and the "command" as referenced earlier. But the "command" is in the message, so the format of the command is also the format "of the message." Such contrived inconsistency does not carry Defendants' heavy burden to prove indefiniteness by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017).

The '751 Patent describes a process wherein the remote server device takes a "second message including at least one command in a second format" as a basis for generating and sending a "first message that includes at least one command *in a first format*." '751 Pat. 13:10–16. The content presentation device then uses the "first message" to select a media player. *Id.* 13:17–24. Which media player to select is "based at least in part on *the first format* of the first message," and that selected media player is able to "play a first piece of content referenced in the received first message." '751 Pat. 13:17–24.

Defendants' proposal attempts to magnify a supposed inconsistency in the claims: the "first format" is introduced as applying to the "command." Defendants complain that the claims later refer to "the first format of the first message" instead of the format of the "command." But the claims specifically recite that the command is *included in* the "first message." '751 Pat. 11:62–63

("a first message that includes at least one command in a first format"). Feigning so much confusion so as to render the claim indefinite is not plausible.

The language is not inconsistent. For instance, there would be no confusion in first referring to a "brief that includes a text in a first font" then later referring to "the first font of the brief." The text was introduced as being part of the brief; there is no other reference to a first font. It would thus be apparent to those of skill in the art that the "first font of the brief" refers to the text's font that was previously introduced. Indeed, if this was superficially inconsistent—which it is not— superficial inconsistencies do not render a patent invalid because the standard is one of reasonable certainty, and "'reasonable certainty' does not require 'absolute or mathematical precision.'" *United Access Techs., LLC v. AT & T Corp.*, 757 F. App'x 960, 969 (Fed. Cir. 2019) (quoting *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1381 (Fed. Cir. 2015)).

A reader of the claims would understand that the first message includes a media-player specific command, and the format of this command is to be used to select a media player. The '751 Patent's specification supports this. *See, e.g.*, '751 Pat. Fig. 5 (showing commands in different formats):

| Universal API Adapter | | |
|---|---|---|
| Universal Command | MediaPlayerID | Specific Player Command |
| New Video | YouTube | yt_loadVideo |
| | Ted.com | getVideo |
| | Vimeo | loadNewVideo |
| Pause | YouTube | yt_pauseVideo |
| | Ted.com | pauseVideo |
| | Vimeo | pause |

FIG. 5

*See also* '751 Patent, 6:5–25 (describing conversion from one command to another), 6:26–37 (describing same, with examples). At any rate, the claims are clear on their own: there is no reason

14

the format of the first command cannot also be referred to as the format "of" the message it is in. When the claims are clear, as they are here, they provide reasonable certainty as to the scope of the claims. The Court should reject Defendants' proposal.

### D.    Terms in the '934 Patent

#### 8.    "a unique identifier" / "the unique identifier" ('934 Patent claim 17)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | Must be the same "unique identifier" throughout the claim. |

Defendants' proposed construction is a reprisal of their earlier construction regarding synchronization code. As discussed above, it is unnecessary to construe this term. The words "a" and "the" are used in common parlance. The jury does not need assistance to understand these common terms, and such a construction risks obscuring the plain and ordinary meaning of these terms.

Here, the antecedent basis rule renders Defendants' construction redundant. *See CA, Inc. v. Netflix, Inc.*, No. 221CV00080JRGRSP, 2021 WL 5323413, at *11 (E.D. Tex. Nov. 16, 2021). "Unique identifier" is introduced in the claim using the indefinite article "a" and referred back to with the definite article "the." '934 Pat., 13:21-24. The jury needs no guidance as to whether "a unique identifier" and "the unique identifier" refer to the same "unique identifier" because the jury is capable of understanding the words "a" and "the." As noted above, Defendants implicitly admit this language's plain and ordinary meaning is the correct construction, as they do not propose similar constructions for other claim terms making use of definite articles. Thus, construing this term is unnecessary and redundant.

### 9. "unique identifier" ('934 Patent claim 17)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | "an identifier which can be obtained by a user from the media receiver and provided by the user to the computing device" |

The term "unique identifier" is used in accordance with its plain and ordinary meaning. Defendants' proposed construction offers no clarification or guidance as to the meaning of the term "unique identifier." Rather, similar to the proposed construction of "synchronization code," Defendants seek to limit the means by which a unique identifier may be communicated between a media receiver and a computing device. Defendants' proposed construction disregards the language of the claims and limits their scope to a single embodiment. In doing so, Defendants stray from the "'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

Claim 17 of the '934 Patent recites, in relevant part, the step of "providing, by a media receiver, a unique identifier of the media receiver to a computing device in communication with a server system" '934 Pat. at Claim 17 (13:21-23). This claim does not require that a user act as an intermediary to obtain the unique identifier from a media receiver before providing that unique identifier to the computing device. Instead, the claims describe communication between a media receiver and a computing device—not between a media receiver and a user. The '934 Patent requires that the media receiver provide a unique identifier to a computing device. '934 Pat. at Claim 17 (13:21-23). Absent from the claim language is a requirement that a user obtain the unique identifier. Without support in the claim language, the merit of Defendants' construction relies wholly on the specification.

16

Defendants' proposed construction finds support in a single embodiment disclosed in the specification. The '934 Patent teaches "a first computing device that provides a unique identifier to a second computing device to establish an association there between." '934 Pat. at Abstract. Thus, a synchronization code, which is also used to establish an association between a display device and a computing device, is a subset of "unique identifier." *See* '934 Pat. at 5:33-60. The '934 specification describes that:

- "As illustrated in FIG. 7A, the synchronization code 48 can be displayed for example, on a splash page of the display device as text on the screen or as an image such as a QR code, and can be entered into the mobile phone 20, for example, manually by the user or by scanning the code into the mobile phone." '934 Pat. 5:35–41 (emphasis added).

- "In some implementations, the server system stores a look-up table that includes a synchronization code uniquely associated with the display device. A message from the personal computing device can include the synchronization code, and in response to receiving the message from personal computing device, the server system can use the synchronization code and the look-up table to identify the display device on which the content is to be played." '934 Pat. 2:26–36.

- "The code can be scanned, for example, using optical scanning or RFID techniques." '934 Pat. 5:41–42.

- "Once the synchronization code is entered into, or captured by, the mobile phone 20, it is sent from the mobile phone 20 to the server system 24 . . . ." '251 Pat. 5:36–38; '751 Pat. 5:55–57.

As the Federal Circuit has repeatedly cautioned, "claims should not be limited 'to preferred embodiments or specific examples in the specification.'" *VLSI Tech. LLC v. Intel Corp.*, 53 F.4th 646, 652 (Fed. Cir. 2022). "[E]ven where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1376 (Fed. Cir. 2015). No clear intention to limit claim scope is present here.

Absent support in the claims or specifications, Defendants' proposed construction is improper. The Court should reject Defendants' proposal and afford "unique identifier" its plain and ordinary meaning.

### 10. "first format" / "universal format" ('934 Patent claim 17)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | Universal format is different from the first format. |

Defendants' construction reprises its construction of the '751 Patent's "first format" and "second format." Such a construction imposes an unsupported limitation on the '934 Patent. As with the first and second formats of the '751 Patent, neither the claim language nor the specification mandate that the universal format be different from the universal format.

In claim 17 of the '934 patent, a command in universal format is received from the computing device and converted to a command in a first format. '934 Pat., 13:24–14:3. As described above, the step of converting is an explicit requirement of the claims, but nowhere do the claims require the result of conversion be different than its input. The specification supports this, repeatedly confronting the problem of commands in different formats, but never requiring differentiation as a feature of the conversion's output. '934 Pat., 2:7–20, 4:41–57, 6:7–26, 6:27–38. The conversion step serves to solve, via automated method, the often-encountered scenario wherein the first command will look different than the command of a universal format. It does not form a required feature of either of those formats. Defendant's proposed construction to the contrary should be rejected.

## V.    <u>CONCLUSION</u>

Touchstream respectfully requests that the Court adopt its proposed claim constructions.

18

Dated: April 4, 2024                    Respectfully Submitted,

                                        /s/ Ryan Dykal
                                        Ryan Dykal (*Pro Hac Vice*)
                                        Philip Eckert (*Pro Hac Vice*)
                                        Jordan Bergsten *(Pro Hac Vice)*
                                        Shook, Hardy & Bacon L.L.P.
                                        2555 Grand Boulevard
                                        Kansas City, MO 64108
                                        Phone: (816) 474-6550
                                        Fax: (816) 421-5547
                                        Email: rdykal@shb.com
                                        Email: peckert@shb.com
                                        Email: jbergsten@shb.com


                                        Robert H. Reckers (State Bar No. 24039520)
                                        Anita Liu (State Bar No. 24134054)
                                        Andrew M. Long (State Bar No. 24123079)
                                        Shook, Hardy & Bacon L.L.P.
                                        JPMorgan Chase Tower
                                        600 Travis St, Suite 3400
                                        Houston, TX 77002-2926
                                        Phone: (713) 227-8008
                                        Fax: (713) 227-9508
                                        Email: rreckers@shb.com
                                        Email: aliu@shb.com
                                        Email: amlong@shb.com

                                        **Counsel for Plaintiff**
                                        **Touchstream Technologies, Inc.**

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2024, counsel of record for the Defendants were notified via the CM/ECF System.

<u>*/s/ Ryan Dykal*</u>
Ryan Dykal

20