# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **TOUCHSTREAM TECHNOLOGIES, INC.**,<br><br>*Plaintiff*,<br><br>v.<br><br>**CHARTER COMMUNICATIONS, INC., et al.**,<br><br>*Defendants*. | **Lead Case No. 2:23-cv-00059-JRG**<br>Member Case No. 2:23-cv-00062-JRG<br><br>**JURY TRIAL DEMANDED** |
| **TOUCHSTREAM TECHNOLOGIES, INC.**,<br><br>*Plaintiff*,<br><br>v.<br><br>**COMCAST CABLE COMMUNICATIONS, LLC, D/B/A XFINITY, et al.**,<br><br>*Defendants*. | |

**TOUCHSTREAM TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF
<u>ITS OPENING CLAIM CONSTRUCTION BRIEF</u>**

i

I.  **DISPUTED CLAIM TERMS**

   A.  **Terms Common to Multiple Patents**

   1.  **"media player" ('251 Patent claims 1, 2) / "media player application" ('751 Patent claims 12, 13, 14, 16) / "media playing application ('934 Patent claims 17, 18, 19)**

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | "application software for playing back video content." *('251 Patent)* |
| | "application software for playing back content" *('751 and '934 Patents)* |

The terms "media player," "media player application," and "media playing application" are not technical jargon—they are common terms. Contrary to Defendants' arguments, the plain and ordinary meaning of a "media player application" is easily understood: a "media player" is simply software for playing media. And there can be no doubt that the jury will be familiar with this common term and its meaning. For example, the most popular operating system in the world, Microsoft Windows, named its software application for playing media "Windows Media Player." While Defendants tout Touchstream's description of a "media player" during prosecution, the prosecution description of "media player" is coextensive with the plain and ordinary meaning of this term. As such, the prosecution history does not give rise to an actual claim scope dispute or require instructing the jury with a judicial claim construction.

As discussed in Touchstream's opening brief, a juror will understand what is or is not a "media player." ECF 36 at 3. On this point, Defendants strain to justify their construction by citing antiquated devices such as a VCR. But it borders on absurd to think the jury might confuse using a "media playing application" to cast digital content onto a TV with playing VHS tapes on a VCR.

Defendants' proposed constructions are unnecessary and would serve only to confuse rather than clarify. The jury is well equipped to understand the "media player" terms, and no alternative definitions are necessary.

2. **"a synchronization code" / "the synchronization code" ('251 Patent claims 1, 8, 9, and '751 Patent claim 12)**

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | "Must be the same 'synchronization code' throughout the claim." |

Defendants' brief makes clear that their proposed construction is a non-infringement argument masquerading as a claim construction dispute. Defendants read a non-infringement position into the claims for the express purpose of challenging the imagined testimony of Touchstream's expert witness. *See* ECF 40 at 9. The jury, however, does not need the Court's aid to understand that "a synchronization code" and "the synchronization code" refer to the same code.

Nor do Defendants provide any rationale for construing this term. Claim construction "is a matter of resolution of disputed meanings and technical scope…." *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Defendants do not address any dispute regarding claim scope or meaning. And Defendants offer no authority supporting their contention that imagined future testimony is a basis for entering a construction. Because the jury will not benefit from a construction of this term and Defendants' proposal does not resolve any actual dispute as to claim scope, a plain and ordinary construction is appropriate.

3. **"synchronization code" ('251 Patent claims 1, 8, 9, and '751 Patent claim 12)**

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | "a code which can be obtained by a user from the [display device / content presentation device] and provided by the user to the |

2

|  | [personal computing device / remote computing device]" |
|---|---|

Defendants argue that "synchronization code" has no plain and ordinary meaning in the art. Yet the ordinary meaning of "synchronization code" is simple—a code used in synchronizing. Tellingly, Defendants do not propose to construe "synchronization code" at all, but rather seek to insert unclaimed limitations regarding *how* a synchronization code may be communicated between a display/content presentation device and a personal/remote computing device. Defendants miss the mark. The '251 and '751 Patents do not require a user to "obtain" or "provide" the synchronization code, and Defendants' arguments improperly import limitations into the claims.

First, Defendants sidestep the actual claim language. As discussed in Touchstream's opening brief, Claim 1 of the '251 Patent and Claim 12 of the '751 Patent set forth requirements for the "synchronization code," including the elements involved in "assigning," "receiving," and "obtaining" it. *See* ECF 36 at 6. Notably absent from the claims is any suggestion that a "user" obtain the synchronization code—or that a "user" do anything at all. *Id.* at 6-7. Defendants' attempt to insert a "user" is an improper attempt to concoct a joint infringement defense that is absent from the claims as-written. Defendants do not even attempt to confront the dichotomy between their proposed construction and the express language of the claims. *See* ECF 40 at 10-13.

Second, Defendants misread the specification. Defendants argue that a user *must* enter the synchronization code into the personal computing device. *See* ECF 40 at 11. But, the patents disclose that a user *can* select a display device by entering a synchronization code, not that the user *must* do so. '251 Patent 5:14-16. As discussed in Touchstream's opening brief, the specification recites several embodiments where a user neither obtains nor provides the synchronization code. ECF 36 at 7-8. Defendants attempt to diminish these embodiments, but in so doing they prove the inaccuracy of their proposed construction and their reading of the specification.

3

For example, when discussing an embodiment wherein the synchronization code is represented by a QR code, Defendants state, "obviously, the user must aim the device's camera at the display in order to capture the image."[1] ECF 40 at 13. But even if a user aims a device's camera, the *user* does not "obtain" or "provide" the synchronization code. Rather, the device obtains the synchronization code via interpreting the QR image it captures. Even in this example, the user does not act as an intermediary to relay the synchronization code, as would be required by Defendants' proposed construction. Defendants' proposed construction not only contradicts the claim language but also would exclude embodiments in the specification.

The specification also suggests that IP and MAC addresses can be used as synchronization codes. '251 Pat., at 2:24–26 ("The synchronization code *can* be different from an IP address associated with the display device and/or a media access control [MAC] address associated with the display device.") (emphasis added). Again, Defendants' construction improperly excludes these embodiments. Dependent claim 9 explicitly contemplates this situation, reciting "[t]he method of claim 8 wherein the synchronization code is different from an IP address associated with the display device and is different from a MAC address associate with the display device." '251 Pat., 12:22–25; *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1376 (Fed. Cir. 2009) ("claim 1 cannot be construed … without making claim 25 redundant."). The patents plainly contemplate the use of an IP or MAC address for a synchronization code, neither of which are read or typed by users.

Third, Defendants' proposed construction improperly imports limitations from a particular embodiment into the claims. "[E]ven when a patent only describes a single embodiment, the claims

---

[1] Touchstream does not admit that Defendants' premise has merit but discusses Defendants' argument on its own terms for the sake of argument.

4

are not necessarily construed as being limited to that embodiment. We must avoid importing limitations from the specification into the claims." *MasterObjects, Inc. v. Meta Platforms, Inc.*, No. 2023-1097, 2024 WL 630330, at *6 (Fed. Cir. Feb. 15, 2024) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc)). In *MasterObjects*, the Federal Circuit gave the terms "query message" and "asynchronous" their plain and ordinary meanings and refused to import into claim limitations that were discussed in connection with specific embodiments. *Id.* at *6-7. Here, the specification is not even limited to a single embodiment, and Defendants wholly fail to address the claim language—even admitting that their proposed construction is solely based on certain disclosed embodiments. *See* ECF 40 at 10-13. Because Defendants fail to even consider the claim language at issue and import limitations from a selection of disclosed embodiments, their proposed construction is improper.

Finally, Defendants argue that Touchstream's plain-and-ordinary arguments rely only on "unsupported attorney argument." ECF 40 at 13. But it is the Defendants—Not Touchstream—seeking to alter the meaning of this claim term to suit their objectives without expert testimony. There is simply no evidence supporting Defendants' revisions to this claim language, and "synchronization code" should be afforded its plain and ordinary meaning.

### 4. "Method claim steps" (All Asserted Patents)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| The terms are not chronologically limited under relevant case law, and the jury does not need instruction on ordering of claim steps, as any ordering requirements are reasonably clear from the claims themselves. | All steps of claim 12 must occur in order (*'751 Patent*) |
| | All steps of claim 17 must occur in order (*'934 Patent*) |
| | Step 2.A ("checking") must occur after step 1.D ("receiving, in the server system, one or more signals"). (*'251 Patent*) |

5

Defendants misunderstand Touchstream's argument. While courts presume that steps of a method claim may be performed in any order, Touchstream recognizes that the Asserted Claims logically require some steps to be performed after others and acknowledged as much in its opening brief. *See* ECF 36 at 9 ("it is apparent from the claims themselves that some steps must be performed in order"). Touchstream argues not that the claims may be performed in any order, but rather that any ordering requirements are apparent from the claims themselves. *Id.* Where such order is logically required, performing the steps in any other order is impossible. For example, "providing" the synchronization code to another device before obtaining it in the first place does not make any sense. '751 Patent, 12:64–13:9. Further construing claims to exclude logical impossibilities that are already apparent is not a useful exercise. For the reasons set forth in Touchstream's opening brief, an express instruction regarding the order of claim steps will not aid the jury. *Id.* Further, such an instruction risks encouraging the jury to impose a rigid order to terms such as "first message" and "second message," which are not sent in numerical order. *Id.* The jury is capable of determining the logical order of claims without instruction by the Court. A plain and ordinary construction is appropriate.

B.   **Terms in the '251 Patent**

5.   **"storing . . . based on the synchronization code" ('251 Patent claim 1)**

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | "based on the synchronization code, storing" |

Defendants' proposed construction rewrites the claim language through strained misunderstanding. Defendants argue that, because they proposed a construction, the term must be construed—insisting that "parties' dispute as to this term's meaning shows that, at the very least,

6

the term cannot be given a plain-and-ordinary meaning construction." ECF 40, at 16. Yet Defendants fail to articulate exactly what actual scope dispute their construction will resolve.

Defendants' re-writing of this claim language lacks foundation in the intrinsic record, and violates basic rules of grammar. The relative phrase "based on the synchronization code" modifies the closest object, in this case, "an association between the personal computing device and the display device." *See* Chicago Manual of Style, § 5.60 (17th ed. 2017) ("The longer the separation [between a relative phrase and its antecedent] the more pronounced the problem—especially when one or more unrelated nouns fall between the true antecedent and the clause."); *see also id.* at § 5.226 ("a relative clause is a subordinate clause that is introduced by a relative pronoun and **modifies the noun element (or sentence or clause) it follows**…") (emphasis added).

The specification does not contradict the rules of English grammar. Defendants cite Figure 4 as evidence of a stored correspondence not based on the synchronization code, but that look-up table is part of a switchboard of look-up tables, one of which stores the association based on the synchronization code. *Cf.* ECF 40, at 17; '251 Pat. 5:36-53, Figs. 1, 4. Defendants' cited case actually undermines its position: "[t]he standard for disavowal is exacting, requiring clear and unequivocal evidence … Ambiguous language cannot support disavowal." *Cisco Sys., Inc. v. Int'l Trade Comm'n,* 873 F.3d 1354, 1361 (Fed. Cir. 2017). Contrary to Defendants' assertion, the specification teaches the association is based on the synchronization code. '251 Pat. 5:36-53. In other words, not only does the specification not contradict the claim's grammar, it supports it. This is not undone by contrived ambiguity.

Defendants' other cases also undermine their position. In *Eon Corp. IP Holdings v. Silver Spring Networks*, the Federal Circuit reversed the District Court because it failed to resolve a bona fide dispute of claim scope. 815 F.3d 1314, 1316 (Fed. Cir. 2016). There, the Plaintiff sought to

7

expand the scope of the word "portable" to encompass houses. *Id.* at 1317-18. A plain and ordinary construction there allowed the Plaintiff to submit those questions to the jury. By contrast, Touchstream asks only that the claim language be read in full and not stripped of half its words, as Defendants attempt. The claim here reads, "storing, by the server system, a record establishing an association between the personal computing device and the display device based on the synchronization code." '251 Pat., 11:32-34. There is no reason to modify this language to require the "storing" be "based on the synchronization code," when the claim requires "storing" of a "record establishing an association between the personal computing device and the display device based on the synchronization code."

### C. Terms in the '751 Patent

#### 6. "first format" / "second format" ('751 Patent claims 12, 16)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | Second format is different from the first format |

Defendants' response indicates their true intent: they seek to exclude situations where a conversion between *formats* results in the same substantive content. Defendants' reliance on the prosecution history shows no clear and unambiguous disavowal of claim scope with regard to the content remaining parallel between two formats.[2] Touchstream's point is that "conversion" and a "first" and "second" format sufficiently define the scope of the claims. But nowhere do the claims

---

[2] Defendants' citation to applicant's traversal of the Morris reference is inapposite, as it did not distinguish the '751 by a requirement that different formats contain categorically different content. Instead, it focused on the act of converting, which is a required step regardless of whether the output happens to match the input: "Morris still fails to describe that another message having a command in a different format is generated." ECF 40-4, 23.

require that the resulting *contents* be different each and every time. ECF 40, at 19, '751 Pat., 13:44–14:5. Defendants' construction implies otherwise, and their response explicitly argues this.

Defendants position is apparent by the sentence "[i]f the two formats were the same, no conversion would be necessary or, indeed, possible." ECF 40, at 19. But just because the English phrase "no construction necessary" translates to "no es necesaria ninguna construcción" in Spanish does not mean the word "no" was not translated from English to Spanish. Indeed, Fig. 5 of the '751 Patent (showing parallel "pause" commands between two formats) proves that the '751 expressly contemplates cognates, as discussed at length in Touchstream's opening brief.[3] *See* ECF 36 at 11-12. This construction should be rejected, as the plain and ordinary meaning of "first format" and "second format" teach that they are two different formats without confusing baggage.

### 7. "the first format of the first message" ('751 Patent claim 12)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | Indefinite |

Defendants overcomplicate this term to inject ambiguity where none exists. Stripped of Defendants' linguistic contortions, the meaning of this term is simple: a first message is sent, and that message includes a command in a first format. The format of the command is necessarily included in the format of the message, as the command is a piece of the message. Defendants do not produce any evidence, much less clear and convincing evidence, that the '751 Patent fails to provide those of skill in the art with reasonable certainty as to the scope of the invention. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015). Feigned confusion and

---

[3] Defendants' suggest Figure 5's "pause" is different because it is capitalized, a trivial difference not even recognized by many programming languages. The point remains that the specification does not mandate differences between the content of two formats. '251 Pat., Fig. 5.

9

attorney argument do not constitute evidence of indefiniteness. *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1349–51 (Fed. Cir. 2022). Defendants offer nothing more, so their invalidity bid must fail.

### D. Terms in the '934 Patent

#### 8. "a unique identifier" / "the unique identifier" ('934 Patent claim 17)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | Must be the same "unique identifier" throughout the claim. |

Defendants offer the same non-infringement argument here as discussed at § A(2) *supra*. This construction is inappropriate for the same reasons discussed there.

#### 9. "unique identifier" ('934 Patent claim 17)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | "an identifier which can be obtained by a user from the media receiver and provided by the user to the computing device" |

Defendants offer the same improper limiting embodiment argument here as discussed at § A(3) *supra*. This construction is inappropriate for the same reasons discussed there.

#### 10. "first format" / "universal format" ('934 Patent claim 17)

| Touchstream's Proposal | Defendants' Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | Universal format is different from the first format. |

Defendants offer similar implication of unsupported claim limitations discussed at § C(6) *supra*. This construction is inappropriate for the same reasons discussed there.

## II. **CONCLUSION**

Touchstream respectfully requests that the Court adopt its proposed claim constructions.

10

| | |
|---|---|
| Dated: April 25, 2024 | Respectfully Submitted, |

*/s/ Ryan Dykal*
Ryan Dykal (*Pro Hac Vice*)
Philip Eckert (*Pro Hac Vice*)
Jordan Bergsten *(Pro Hac Vice)*
Shook, Hardy & Bacon L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Phone: (816) 474-6550
Fax: (816) 421-5547
Email: rdykal@shb.com
Email: peckert@shb.com
Email: jbergsten@shb.com


Robert H. Reckers (State Bar No. 24039520)
Anita Liu (State Bar No. 24134054)
Andrew M. Long (State Bar No. 24123079)
Shook, Hardy & Bacon L.L.P.
JPMorgan Chase Tower
600 Travis St, Suite 3400
Houston, TX 77002-2926
Phone: (713) 227-8008
Fax: (713) 227-9508
Email: rreckers@shb.com
Email: aliu@shb.com
Email: amlong@shb.com

***Counsel for Plaintiff***
***Touchstream Technologies, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2024, counsel of record for the Defendants were notified via the CM/ECF System.

/*s/ Ryan Dykal*/
Ryan Dykal