████████████████████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| TOUCHSTREAM TECHNOLOGIES, INC., §<br>Plaintiff, §<br> §<br>v. §<br> §<br>CHARTER COMMUNICATIONS, INC., et §<br>al., §<br>Defendants. §<br>————————————————— §<br>TOUCHSTREAM TECHNOLOGIES, INC., §<br>Plaintiff, §<br> §<br>v. §<br> §<br>COMCAST CABLE COMMUNICATIONS, §<br>LLC, d/b/a XFINITY, et al., §<br>Defendants. § | Lead Case No. 2:23-cv-00059-JRG<br>Member Case No. 2:23-cv-00062-JRG |

## **COMCAST'S MOTIONS IN LIMINE NOS. 1-5**

████████████████████████

## TABLE OF CONTENTS

P<small>AGE</small>

I.  MIL NO. 1:  ALLEGED MONITORING OF OTHER LITIGATIONS ........................... 1

II. MIL NO. 2:  DISCONTINUED MOBILE APPLICATIONS NOT ACCUSED IN INFRINGEMENT CONTENTIONS .................................................................................. 5

III. MIL NO. 3:  WILLFUL INFRINGEMENT BEFORE FEBRUARY 2017 ...................... 8

IV. MIL NO. 4:  IRRELEVANT FINANCIAL INFORMATION ........................................ 10

V.  MIL NO. 5:  CONFIDENTIALITY OF DOCUMENTS ................................................. 13

████████████████████

## TABLE OF AUTHORITIES

PAGE

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   2011 WL 7036048 (E.D. Va. July 5, 2011) ............................................................. 3

*AVM Techs. LLC v. Intel Corp.*,
   2017 WL 2938191 (D. Del. Apr. 19, 2017) ............................................................. 7

*Biscotti Inc. v. Microsoft Corp.*,
   No. 2:13-cv-01015, Dkt. 238 (E.D. Tex. May 30, 2017) ........................................ 7

*Black v. Wrigley*,
   2019 WL 10817216 (N.D. Ill. July 11, 2019) ...................................................... 14

Brief of Mentor Graphics Corp. et al. as *Amici Curiae* in Support of Neither Party,
   *Halo Elecs., Inc. v. Pulse Elecs., Inc*, 579 U.S. 93 (2016) (No. 14–1513),
   2015 WL 9292300 (U.S. Dec. 14, 2015) ............................................................. 10

*Chalumeau Power Sys's LLC v. Alcatel-Lucent*,
   No. 11-cv-1175, Dkt. 50 (D. Del. July 18, 2012) ................................................... 2

*CIVIX-DDI, LLC v. Hotels.com, L.P.*,
   2012 WL 6591684 (N.D. Ill. Dec. 18, 2012) ......................................................... 3

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys.*,
   809 F.3d 1295 (Fed. Cir. 2015) ........................................................................... 11

*Conopco, Inc. v. May Dep't Stores Co.*,
   46 F.3d 1556 (Fed. Cir. 1994) ............................................................................... 9

*Datatreasury Corp. v. Wells Fargo & Co.*,
   2010 WL 11538713 (E.D. Tex. Feb. 26, 2010) .................................................... 12

*Eko Brands, LLC v. Adrian Rivera Maynez Enter., Inc.*,
   946 F.3d 1367 (Fed. Cir. 2020) ........................................................................... 10

*Ericsson, Inc. v. D-Link Sys.*,
   773 F.3d 1201 (Fed. Cir. 2014) ........................................................................... 11

*Fox Grp., Inc. v. Cree, Inc.*,
   700 F.3d 1300 (Fed. Cir. 2012) ........................................................................... 15

*Fujifilm Corp. v. Motorola Mobility LLC*,
   2015 WL 1737951 (N.D. Cal. Apr. 8, 2015) ....................................................... 12

*Golden Bridge Tech. v. Apple Inc.*,
   2014 WL 4057187 (N.D. Cal. June 1, 2014) ................................................................ 11

*Golden Bridge Tech. v. Apple Inc.*,
   No. 5:12-CV-04882-PSG, Dkt. 418 (N.D. Cal. May 2, 2014) ................................... 11

*HOYA Corp. v. Alcon Inc*,
   2024 WL 310706 (N.D. Tex. Jan. 26, 2024) .................................................................. 9

*In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*,
   2014 WL 505234 (S.D.W. Va. Feb. 5, 2014) ......................................................... 13, 14

*Kuen Hwa Traffic Indus. Co. v. DNA Motor, Inc.*,
   2019 WL 3934929, (C.D. Cal. Aug. 20, 2019) .............................................................. 4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ............................................................................... 12, 13

*Longitude Licensing v. Apple Inc*,
   2015 WL 1143071 (N.D. Cal. Mar. 13, 2015) .............................................................. 2

*Maxell, Ltd. v. Apple Inc.*,
   2021 WL 3021253, (E.D. Tex. Feb. 26, 2021) .............................................................. 3

*MONEC Holding AG v. Motorola Mobility, Inc.*,
   897 F. Supp. 2d 225 (D. Del. 2012) ............................................................................. 2

*Multimedia Pat. Tr. v. Apple Inc.*,
   2012 WL 12868264 (S.D. Cal. Nov. 20, 2012) ............................................................. 7

*Multimedia Pat. Tr. v. Apple Inc.*,
   2012 WL 5873711 (S.D. Cal. Nov. 20, 2012) ....................................................... 11, 12

*Proxense, LLC v. Samsung Elecs*,
   No. 6:21-cv-00210-ADA, Dkt. 161 (W.D. Tex. Nov. 28, 2022) ................................. 7

*Ruiz v. SEIU Loc. 32BJ*,
   2022 WL 3716267 (S.D.N.Y. Aug. 29, 2022) .............................................................. 5

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985) ................................................................................... 9

*Sutphin v. Ethicon, Inc.*,
   2020 WL 5079170 (S.D.W. Va. Aug. 27, 2020) ......................................................... 14

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ................................................................................. 13

*United Servs. Automobile Ass'n v. PNC Bank N.A.*,
   No. 2:20-cv-0319-JRG-RSP, Dkt. 579 (E.D. Tex. Apr. 11, 2022) ........................................ 14

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ................................................................................................ 9

*Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*,
   2019 WL 2211897 (S.D. Cal. May 22, 2019) .......................................................................... 3

*Williams v. Brennan*,
   2022 WL 1450407 (N.D. Ill. May 6, 2022) ............................................................................ 4

*Zimmer Tech., Inc. v. Howmedica Osteonics, Corp.*,
   2008 WL 11504967 (N.D. Ind. Nov. 25, 2008) .................................................................... 15

**Statutes**

35 U.S.C. § 284 .............................................................................................................................. 8, 9

**Rules**

Fed. R. Evid. 401 ............................................................................................................................... 8

Fed. R. Evid. 402 ...................................................................................................................... passim

Fed. R. Evid. 403 ...................................................................................................................... passim

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| Ex. 1 | Touchstream Technologies, Inc.'s Second Supplemental Responses and Objections to Comcast Defendants' First Set of Interrogatories (Nos. 1-4), served in this case and dated June 11, 2024 |
| Ex. 2 | Sprint's First Amended Complaint, filed in *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC*, Case No. 2:11-cv-02684 (D. Kan.) and dated March 29, 2012 |
| Ex. 3 | Deposition transcript of Seth Kramer, taken in this case on June 4, 2024 |
| Ex. 4 | Transcript of Jury Trial Proceedings, taken in *Touchstream Techs., Inc. v. Google LLC*, Case No. W-21-CV-569 (W.D. Tex.), dated July 20, 2023 |
| Ex. 5 | Expert Report of Dr. Kevin Jeffay Regarding Invalidity of U.S. Patent Nos. 8,356,251, 11,048,751, and 11,086,934, served in this case and dated June 24, 2024 |
| Ex. 6 | Deposition transcript of Herb Mitschele, taken in this case on May 30, 2024 |
| Ex. 7 | COM_00105093 through COM_00105104 |
| Ex. 8 | COM_00105108 through COM_00105109 |
| Ex. 9 | COM_00105105 through COM_00105107 |
| Ex. 10 | Deposition transcript of Anandhan Subbiah, taken in this case on May 24, 2024 |
| Ex. 11 | Expert Report of Russell W. Mangum III, Ph.D., served in this case and dated June 24, 2024 |
| Ex. 12 | Deposition transcript of Sharon Cilione-Berger, taken in this case on May 22, 2024 |
| Ex. 13 | Expert Report of Dr. Kevin C. Almeroth Regarding Infringement of U.S. Patent Nos. 8,356,251, 11,048,751, & 11,086,934, served in this case and dated June 24, 2024 |
| Ex. 14 | Deposition transcript of Sharon Cilione-Berger, taken in *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co. L.P.*, Case No. 2:12-cv-00859 (E.D. Pa.) |
| Ex. 15 | Deposition transcript of David Strober, taken in this case on June 6, 2024 |
| Ex. 16 | Expert Report of Stephen L. Becker, Ph.D., served in this case on July 15, 2024 |
| Ex. 17 | Deposition transcript of Stephen Becker, Ph.D. taken in this case on July 29, 2024 |
| Ex. 18 | Deposition transcript of Ernest Pighini, taken in this case on June 7, 2024 |
| Ex. 19 | Touchstream's proposed trial exhibit PTX-009, purported to be a webpage *available at*: http://www.xfinity.com/buy/tv-equipment |
| Ex. 20 | Transcript of Jury Trial Proceedings, taken in *Touchstream Techs., Inc. v. Google LLC*, Case No. W-21-CV-569 (W.D. Tex.), dated July 17, 2023 |

| Exhibit | Description |
|---------|-------------|
| Ex. 21 | Transcript of Jury Trial Proceedings, taken in *Touchstream Techs., Inc. v. Google LLC*, Case No. W-21-CV-569 (W.D. Tex.), dated July 18, 2023 |
| Ex. 22 | Rebuttal Report of Dr. Kevin Almeroth in Response to the June 24, 2024 Opening Invalidity Expert Report of Dr. Kevin Jeffay, served in this case and dated July 15, 2024 |
| Ex. 23 | COM_00008410 through COM_00008415 |
| Ex. 24 | COM_00105070 through COM_00105092 |
| Ex. 25 | COM_00094669 through COM_00094778 |
| Ex. 26 | Touchstream's proposed trial exhibit PTX-062, purported to be a webpage entitled, "Comcast Begins X1 National Launch, Introduces X1 Remote App," dated May 21, 2012 |

███████████████████████████████████

Comcast makes the following motions *in limine*.[1]

## I.   MIL NO. 1:  ALLEGED MONITORING OF OTHER LITIGATIONS

Pursuant to Fed. R. Evid. 402 and 403, Comcast moves to preclude any evidence, testimony, or argument concerning any alleged monitoring of other litigations by Comcast.

The Court's MIL No. 13 precludes evidence, testimony, or argument concerning a party's other litigations.  Touchstream attempts to sidestep that rule, purportedly in support of its willfulness case.  First, it alleges that Comcast monitored a wholly unrelated litigation between Sprint and Vonage in 2007 and therefore had a policy and practice of monitoring patent litigations such that it must have monitored Touchstream's earlier litigations against other companies.  *See, e.g.*, Ex. 1 (Touchstream's 2d Suppl. Resps. & Objs. to Comcast's 1st Interrogs. (Nos. 1-4)) at 14-18.  Second, it alleges that the fact that █████████████████████ ██████████████████████████████████████████████████.  *Id.* at 15-16.  Neither set of allegations is admissible.

***First***, the Court should preclude Touchstream from referencing any alleged pre-suit monitoring of other litigations.  There is no admissible evidence concerning the 2007 litigation between Sprint and Vonage.  In any event, that case was between two parties unrelated to those in this case, involved patents directed to unrelated telephony technology, and occurred years before Touchstream ever existed.  *See* Ex. 2 (*Sprint* Am. Compl.) ¶¶ 1-5, 10-18, 21-33.

---

[1] This Motion uses the following abbreviations: Plaintiff Touchstream Technologies, Inc. ("Touchstream"); Defendants Comcast Cable Communications, LLC, Comcast Corporation, Comcast Cable Communications Management, LLC, and Comcast of Houston, LLC (collectively, "Comcast"); U.S. Patent Nos. 8,356,251 (the "'251 Patent"), 11,048,751 (the "'751 Patent"), and 11,086,934 (the "'934 Patent") (collectively, "Asserted Patents"); claims 1, 5, 7, 8, and 9 of the '251 Patent, claims 12, 13, 14, and 16 of the '751 Patent, and claims 17, 18, 19, and 20 of the '934 Patent (collectively, "Asserted Claims"); *Touchstream Techs., Inc. v. Google LLC*, No. 6:21-cv-569-ADA (W.D. Tex. 2021) as the "Google Litigation"; and exhibits to the Declaration of Micayla Hardisty ("Ex.").

Whether a defendant monitored a litigation that did not involve the parties or patents at issue cannot establish willfulness. *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 (D. Del. 2012) (allegations of pre-suit knowledge of an asserted patent was implausible where plaintiff alleged that "Defendants would have known about the [asserted] patent based on the litigation activities of their competitors"). And reference to the case would be distracting and confusing for the jury such that the unfair prejudice would substantially outweigh any conceivable relevance (none).

Further, the 2007 *Sprint* litigation provides no justification for allowing Touchstream to baselessly speculate before the jury that Comcast had a "pattern and practice" of monitoring patent litigations and that it therefore engaged in pre-suit monitoring of Touchstream's previous litigations. The *Sprint* litigation is itself inadmissible and fails to suggest, let alone establish, a pattern and practice of monitoring. Moreover, even if Comcast had such a practice, discovery revealed no evidence to suggest that Comcast was aware of any Touchstream litigation prior to the filing of the instant suit such that it could have monitored it. No document suggests that Comcast had any pre-suit knowledge of a prior Touchstream litigation, and Comcast's corporate representative confirmed after investigation that Comcast had no such knowledge. *See* Ex. 3 (Kramer Dep. Tr.) at 80:12-86:1.

Several courts have dismissed willful infringement claims based on allegations that the defendant actually had monitored other litigations involving an asserted patent. *E.g.*, *Longitude Licensing v. Apple Inc*, 2015 WL 1143071, at *3 (N.D. Cal. Mar. 13, 2015) (knowledge of asserted patent implausible where plaintiff pointed to "unrelated litigation involving the patents-in-suit that did not involve [defendant]"); *Chalumeau Power Sys's LLC v. Alcatel-Lucent*, No. 11-cv-1175, Dkt. 50 at 2 (D. Del. July 18, 2012) (knowledge of asserted patent implausible where plaintiff alleged it "filed a lawsuit against unrelated defendants" for infringement of the

2

asserted patent).  Touchstream cannot even make such an allegation here.  Moreover,

Touchstream's prior litigations involved different parties, accused products, witnesses, prior art,

and two patents not asserted here.  *Maxell, Ltd. v. Apple Inc.*, 2021 WL 3021253, at *6 (E.D.

Tex. Feb. 26, 2021) (excluding "refer[ences] to other litigations or parallel proceedings").  Thus,

their probative value to willfulness, even if Comcast knew about them (which it did not), is

minimal, and the unfair prejudice and confusion that would arise from discussing them in front

of the jury is high.  *See id.* at *6-7; *CIVIX-DDI, LLC v. Hotels.com, L.P.*, 2012 WL 6591684, at

*8 (N.D. Ill. Dec. 18, 2012) (finding "no legal citation or reason . . . to infer a subsidiary's

awareness of possible infringement based on a parent company's settlement in a separate case

involving different parties and different [accused] websites").[2]



**Second**, the Court should exclude Touchstream from referencing that, █████████

████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████  Allowing

Touchstream to suggest otherwise will confuse the jury and run contrary to the concept of a

public trial that ensures the fairness and transparency of the judicial system.  Further, learning

---

[2] *See also Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, 2019 WL 2211897, at *4
(S.D. Cal. May 22, 2019) (Other litigation involving asserted patent "would likely have a
significant improper influence" and "only serve to complicate the issues and confuse the jury.");
*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 2011 WL 7036048, at *2 (E.D. Va. July
5, 2011) ("[E]vidence pertaining to proceedings involving some of the patents-in-suit . . . would
be unduly prejudicial.").

████████████████████████████████████████████

what occurred in the *Google* trial does not suggest post-suit willfulness, including because

Comcast learned that the Google accused product was fundamentally different than the Xfinity

TV Remote mobile application ("Xfinity TV Remote Application") accused of infringement here

and that Touchstream asserted a conception date ***after*** Comcast had conceived of and prototyped

its accused application.  *See* Ex. 4 (Jul. 20, 2023 *Google* Litigation Trial Tr.,

TS_COMCAST_00045566) at 1290:2-6; Ex. 5 (Jeffay Op. Rpt.) ¶ 221.  *Google* thus confirmed

Comcast's good-faith belief that it does not infringe any valid claim of the Asserted Patents.  *See*

*Kuen Hwa Traffic Indus. Co. v. DNA Motor, Inc.*, 2019 WL 3934929, at *5 (C.D. Cal. Aug. 20,

2019) (finding Plaintiff did not establish willful infringement because "the Court is convinced

that . . . Defendant's general manager[] had a good-faith belief that the accused products did not

infringe").  But explaining why that is so would require a re-litigation of *Google*, which is what

MIL No. 13 avoids.



Touchstream has further alleged that ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████.  *See Williams v. Brennan*, 2022 WL 1450407, at *9 (N.D. Ill. May 6,

2022) (excluding claims regarding attorney misconduct where defendant argued claims were

"baseless or unsubstantiated," and finding claims "completely irrelevant . . . and . . . highly

prejudicial for the jury to hear"); *Ruiz v. SEIU Loc. 32BJ*, 2022 WL 3716267, at *1 (S.D.N.Y.



Aug. 29, 2022) (warning that "[c]ontinued unfounded accusations of misconduct . . . may result in sanctions against Plaintiff").

Thus, the Court should exclude all references to alleged monitoring of other litigations.

## II.    MIL NO. 2:  DISCONTINUED MOBILE APPLICATIONS NOT ACCUSED IN INFRINGEMENT CONTENTIONS

Pursuant to Fed. R. Evid. 402 and 403, Comcast moves to preclude evidence, testimony, or argument regarding any Comcast mobile applications not referenced in Touchstream's infringement contentions.  Comcast has offered various mobile applications since 2010. However, the only Xfinity cable-video-related mobile applications it currently offers are the Xfinity TV Remote Application and Xfinity Stream applications.  Other applications that Comcast previously offered, including the Xfinity TV X1 Remote, Comcast Labs MyMedia, and Xfinity Share applications, were discontinued by the start of the damages period and are not accused of infringement.[3]  Those applications are irrelevant and reference to them would only mislead the jury and confuse the issues as to which specific application is at issue.

Touchstream has repeatedly confused Comcast's mobile applications and injected those that are not accused into this case.  For example, during the deposition of Comcast technical vice president Anandhan Subbiah, Touchstream confused the unaccused Xfinity TV X1 Remote application with the accused Xfinity TV Remote Application and suggested they were identical. Ex. 10 (Subbiah Dep. Tr.) at 98:4-100:12; *see also id.* at 93:24-94:10 ("This is your app, right, that's being referred to in the title of this article, right?").  Mr. Subbiah explained that the unaccused (and no longer operable) Xfinity TV X1 Remote application was different from the

---

[3] *See* Ex. 7 at -5093 ███████████████████████; Ex. 8 at -5108 ███████████████████████████████████; Ex. 9 at -5105 ███████████████████████████

accused Xfinity TV Remote Application.  *Id.* at 164:2-165:11.  However, Touchstream's

damages expert, Dr. Russell W. Mangum III, nonetheless refers to the "launch of the accused X1

Remote app alleged to utilize the patented functionality."  Ex. 11 (Mangum Op. Rpt.) ¶ 77; *see*

*also id.* ¶ 97.  And Touchstream has designated the portions of Mr. Subbiah's deposition

regarding the Xfinity TV X1 Remote application and listed exhibits related to it on its exhibit

list.  *See* Ex. 25 at -4671-4673; Ex. 26.  Similarly, during discovery, Touchstream probed the

history of the unaccused Comcast Labs MyMedia and Xfinity Share applications and attempted

to draw a connection between Comcast's MyMedia application and an application by that same

name once offered by Touchstream.  Ex. 12 (Cilione-Berger Dep. Tr.) at 16:22-20:11; *see also*

*id.* at 85:18-86:14 (asking about Xfinity Share application).  Touchstream then designated Ms.

Cilione-Berger's testimony regarding the Comcast's MyMedia application.

　　　　None of these former Comcast applications are accused of infringement or otherwise

relevant to this case.  Touchstream's expert, Dr. Kevin Almeroth, opines that the remote tune

functionality of Comcast's Xfinity TV Remote Application infringes the Asserted Patents.  *See*

Ex. 13 (Almeroth Op. Rpt.) ¶ 59.  There is no evidence, and no expert has opined, that any of the

discontinued applications included that remote tune functionality.[4]  *See id.* ¶ 127 (identifying the

claimed "personal computing device" to be any device having the Xfinity TV Remote

Application installed).  Indeed, other than "consider[ing] the casting ability of the Xfinity Stream

app," *id.* ¶ 339, Dr. Almeroth does not address the features or functionality of any other mobile

application offered by Comcast.  Thus, there is no evidence or opinion that the discontinued

---

[4] The evidence actually confirms that the Xfinity TV X1 Remote application did ***not*** have
the accused remote tune functionality.  Ex. 14 (*Comcast v. Sprint* Cilione-Berger Dep. Tr.) at
281:5-15.

applications infringed the Asserted Patents.[5]  And, in any event, there could be no damages for such infringement, as all three applications pre-date the damages period.  Courts routinely exclude reference to unaccused products in similar circumstances.[6]

    During the parties' meet-and-confer, Touchstream suggested that the Comcast Labs MyMedia application is relevant because Comcast has criticized Touchstream's damages expert for failing to apportion out functionality of Touchstream's MyMedia application from the software license royalty rate that he applies.  *See, e.g.*, Ex. 16 (Becker Rebut. Rpt.) ¶ 390. Touchstream's counsel suggested that Comcast discontinuing its application by the same name is evidence that the MyMedia name and functionality is not valuable.  But this only demonstrates the confusion and unfair prejudice that would arise from referencing the application in front of the jury.  There is no evidence or opinion that Comcast Labs' MyMedia application worked in the same way as Touchstream's MyMedia application or had any relation to the Asserted Patents.  But the jury is likely to be confused by the similar names of the applications and may infer some impropriety or equivalence even though there is no evidence that Comcast's MyMedia application had anything to do with Touchstream's patented technology.  The Court

---

    [5] Indeed, ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████████████████.  Ex. 15 (Strober Dep. Tr.) at 138:18-139:15.

    [6] *AVM Techs. LLC v. Intel Corp.*, 2017 WL 2938191, at *2 (D. Del. Apr. 19, 2017) (excluding evidence that unaccused circuit copied asserted patent where no expert mentioned that circuit); *Multimedia Pat. Tr. v. Apple Inc.*, 2012 WL 12868264, at *3 (S.D. Cal. Nov. 20, 2012) (precluding defendants from "presenting evidence or argument related to the unaccused products"); *Proxense, LLC v. Samsung Elecs*, No. 6:21-cv-00210-ADA, Dkt. 161 at 5 (W.D. Tex. Nov. 28, 2022) (granting motion *in limine* to exclude Samsung's unaccused products); *see also Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015, Dkt. 238 at 2 (E.D. Tex. May 30, 2017) (precluding evidence or argument that any non-accused technology infringes).

████████████████████████████████████████

should thus preclude any reference to it or any of Comcast's other unaccused and discontinued mobile applications.

## III.    MIL NO. 3:  WILLFUL INFRINGEMENT BEFORE FEBRUARY 2017

Pursuant to Fed. R. Evid. 402 and 403, Comcast moves to preclude testimony, evidence, and argument regarding purported pre-February 2017 knowledge of Touchstream's technology, patents, or alleged infringement, including ████████████████████████ ████████████████████████████, because such evidence is unduly prejudicial and risks misleading the jury.  Willfulness is only relevant to enhancement of damages under 35 U.S.C. § 284.  In turn, enhancement can only be considered with respect to the damages period, which begins no earlier than February 2017 for the '251 patent.  35 U.S.C. § 286 ("[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.");Dkt. 1 in No. 2:23-cv-0063, Feb. 17, 2023.  Thus, all pre-February 2017 evidence regarding purported knowledge of the '251 patent or alleged infringement is substantially more prejudicial than probative because it risks misleading the jury regarding the correct time period to evaluate willfulness.  Fed. R. Evid. 403.

In addition, this Court already dismissed Touchstream's claim of pre-suit willful infringement with respect to the '751 and '934 patents.  Dkt. 44.  Accordingly, ████████████ ████████████████████████████ have no probative value with respect to alleged post-suit willful infringement of those patents.  Fed. R. Evid. 401-402.  Even if they did, it would be substantially outweighed by the risk of confusing the jury and the prejudice to Comcast.  Fed. R. Evid. 403.  Accordingly, this Court should preclude all evidence, testimony, or argument regarding Comcast's purported knowledge of the Asserted Patents or alleged infringement before February 2017.

████████████████████████████████████████

Alternatively, at the very least all evidence, testimony, or argument regarding Comcast's purported knowledge from before the '251 patent issued on January 15, 2013, should be excluded.  Before this date, there were no Asserted Patents that Comcast could be aware of, let alone infringe.  *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it." (emphasis omitted)).  Further, the Federal Circuit has cautioned "not to place undue weight on defendants' activities prior to the issuance of the patent" because while such "activities may have been undertaken with knowledge that a patent application covering the [claimed technology] was pending . . . that is insufficient to support a finding of willfulness."  *Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994); *see also HOYA Corp. v. Alcon Inc*, 2024 WL 310706, at *15 (N.D. Tex. Jan. 26, 2024) ("all but one of the emails relied on by [plaintiff] predate by several years the 2017 and 2018 issuance dates of the '718, '826, and '442 patents, and thus are not probative of knowledge or willful infringement of those patents"); 35 U.S.C. § 284 ("Increased damages under this paragraph shall not apply to provisional rights under section 154(d).").  Accordingly, evidence of ████████████████████████ ██████████████████ should be excluded as unduly prejudicial because such evidence risks misleading the jury into believing that having a pending application is the same as having a patent for purposes of willful infringement.  Fed. R. Evid. 403.

Finally, although Comcast acknowledges the Federal Circuit's holding that "the factual components of the willfulness question should be resolved by the jury," *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016), it preserves the right to argue at an appropriate time that willfulness should be decided by the Court.  Willful infringement was not presented to the jury at common law, and willfulness is only relevant to enhancement, which is assigned by statute to "the court."  35 U.S.C. § 284; *see also Eko Brands, LLC v. Adrian Rivera Maynez*



*Enter., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) ("enhancement is for the court and not the jury."); Brief of Mentor Graphics Corp. et al. as *Amici Curiae* in Support of Neither Party, *Halo Elecs., Inc. v. Pulse Elecs., Inc*, 579 U.S. 93 (2016) (No. 14–1513), 2015 WL 9292300, at *20-25 (U.S. Dec. 14, 2015).  Thus, as with claim construction, any relevant fact findings are properly for the Court to decide.

## IV.    MIL NO. 4:  IRRELEVANT FINANCIAL INFORMATION

Pursuant to Fed. R. Evid. 402 and 403, Comcast moves to preclude any evidence, testimony, or argument concerning Comcast video or X1 revenues, profits, costs, or fees.  Such information is irrelevant and would unfairly prejudice and mislead the jury as to any appropriate damages.

X1 is Comcast's premium cable television service.  Touchstream accuses of infringement the remote tune functionality of the free Xfinity TV Remote Application ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.  Ex. 13 ¶¶ 59, 129, 167.  Touchstream's damages expert, Dr. Mangum, does not use any Comcast financial information to calculate Touchstream's alleged damages.  Instead, ▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.  Ex. 11 ¶¶ 10, 54-55, 136-37.  For his part, Comcast's damages expert, Dr. Becker, critiques Dr. Mangum's use of the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉.  *See* Ex. 16 ¶¶ 358-403.  He separately opines that any damages should be based on ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.  *Id.* ¶¶

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

257-58, 331, 350-54.  Like Dr. Mangum, Dr. Becker does not use any video or X1 financials in calculating his damages.  *See id.* ¶¶ 350-54.

Touchstream nonetheless appears poised to present evidence and argument about Comcast's financials beyond the accused free Xfinity TV Remote Application.  For example, Touchstream questioned Dr. Becker about Comcast's 2023 video revenue.  Ex. 17 (Becker Dep. Tr.) at 128:5-130:17; *see also id.* at 126:23-127:17.  Touchstream also designated extensive testimony from Ernest Pighini, Comcast's controller, regarding Comcast's video revenue and the fees Comcast charges its customers to rent X1 STBs.  Ex. 18 (Pighini Dep. Tr.) at 56:10-19, 61:14-24, 63:6-64:11, 97:21-98:7.  Touchstream has also included on its exhibit list documents with similar information.  *See, e.g.*, Ex. 19.

"[D]amages awarded for patent infringement 'must reflect the value attributable to the infringing features of the product, and no more.'"  *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (*quoting Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)).  Here, X1 revenues and financials, including those related to Comcast's cable television service as a whole or X1 STB rental fees, are unconnected to the value of the free Xfinity TV Remote Application.  Touchstream's expert does not opine that those revenues are attributable to the application and thus they are not admissible. *See Golden Bridge Tech. v. Apple Inc.*, No. 5:12-CV-04882-PSG, Dkt. 418 at 6-7 (N.D. Cal. May 2, 2014) (filing motion *in limine* to preclude argument or testimony regarding "generic financial information" including "revenues on accused products"); *Golden Bridge Tech. v. Apple Inc.*, 2014 WL 4057187, at * 2 (N.D. Cal. June 1, 2014) (granting motion *in limine* discussed in Dkt. 418); *Multimedia Pat. Tr. v. Apple Inc.*, 2012 WL 5873711, at *6 (S.D. Cal. Nov. 20, 2012) (excluding "testimony and damages analysis to the extent it relies on or is based on Defendants' revenues or profits of the accused products" because plaintiffs had not invoked the entire market

11



value rule and "any discussion of the Defendants' total revenue carries a substantial danger of unfair prejudice to the Defendant").

Moreover, any disclosure of Comcast's video or X1 financial information would be unfairly prejudicial because of the "danger that the jury might set damages based on . . . ability to pay rather than on proper evidence of damages." *Datatreasury Corp. v. Wells Fargo & Co.*, 2010 WL 11538713, at *19 (E.D. Tex. Feb. 26, 2010); *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 1737951 (N.D. Cal. Apr. 8, 2015) (precluding testimony "regarding the total revenue from sales of the accused products" because such mention "cannot help but skew the damages horizon for the jury."). If the jury were permitted to hear about the revenues from all of X1 or the amount Comcast charges for an X1 STB, they could not help but contextualize Dr. Mangum's ███████████ within these numbers when considering whether Touchstream's damages fee is reasonable. This is unfairly prejudicial to Comcast and is an improper consideration for the jury, especially when Dr. Mangum does not use this fee in his calculations. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012); *Multimedia Pat. Tr.*, 2012 WL 5873711, at *6.

Touchstream's questioning of Dr. Becker on the ███████████ demonstrates both the irrelevance and unfair prejudice of such evidence. Under this agreement, ███████████ ███████████████████████████████████████. Ex. 16 ¶¶ 127-29. The agreement states that ██████████████████████████████████████████████. *Id.* ¶ 129 n.276. ████████████████████████████████████████ ██████. *Id.* ¶ 231. Thus, if applied to Comcast, the royalty rate would be ████ of the fee Comcast charges for Xfinity TV Remote Application software (which is nothing). But in deposition, Touchstream's counsel asked Comcast's damages expert to ███████████████ ███████████████████. Ex. 17 at 126:23-127:17. That calculation is facially irrelevant and

Touchstream's own expert does not opine that it would be a reasonable approach.  Allowing

Touchstream's counsel even to ask the question before the jury would be unfairly prejudicial and

"cannot help but skew the damages horizon for the jury, regardless of the contribution of the

patented component to [that] revenue."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292,

1320 (Fed. Cir. 2011); *see also LaserDynamics*, 694 F.3d at 67 (explaining that product-level

financials "only serve to make a patentee's proffered damages amount appear modest by

comparison, and to artificially inflate the jury's damages calculation beyond that which is

'adequate to compensate for the infringement.'").  The Court should thus exclude any such

evidence, testimony or argument.

## V.      MIL NO. 5:  CONFIDENTIALITY OF DOCUMENTS

Pursuant to Fed. R. Evid. 402 and 403, Comcast moves to preclude testimony or

argument regarding the confidentiality of documents, including references to confidentiality

designations under the Protective Order or to allegedly "secret" Comcast documents.  As is

typical in patent litigation, both parties have produced numerous internal documents designated

under the Protective Order.  *See* Dkt. 77 in No. 2:23-cv-0060.  The confidentiality of these

documents has no relevance to the issues before the jury, and referring to them as "secret" (and

the like) will give the jury the misleading impression of some illicit or improper motive for

keeping documents confidential.

"Whether a party designates a document as confidential during the litigation process is

absolutely irrelevant."  *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 2014 WL

505234, at *7 (S.D. W. Va. Feb. 5, 2014) (granting motion *in limine* to preclude reference to

documents' confidentiality status).  Courts therefore regularly exclude references to the

confidentiality branding applied to documents pursuant to a Protective Order.  *United Servs.*

*Automobile Ass'n v. PNC Bank N.A.*, No. 2:20-cv-0319-JRG-RSP, Dkt. 579 at 8-9 (E.D. Tex.

Apr. 11, 2022) (granting motion *in limine*); *In re Ethicon, Inc.*, 2014 WL 505234, at *7 (same); *Sutphin v. Ethicon, Inc.*, 2020 WL 5079170, at *5 (S.D. W. Va. Aug. 27, 2020) (same).  Indeed, recognizing the risk of jury confusion, some courts even require that "confidential" stamps be removed from any exhibits that will be shown to the jury.  *See, e.g.*, *Black v. Wrigley*, 2019 WL 10817216, at *3 (N.D. Ill. July 11, 2019).

Here, not only are the confidentiality designations irrelevant, but referencing them would be unduly prejudicial to Comcast because they may suggest to the jury that Comcast improperly kept documents from the public.  In a case like this one, where Touchstream accuses Comcast of willful infringement, any suggestion of wrongdoing based on Comcast's legitimate production of documents under the Protective Order would be unduly prejudicial.  Additionally, the Protective Order in this case included several different confidentiality levels, which may prompt the jury to question the reason for the various designations.

Any broader reference to Comcast's "secret" or "confidential" materials is also irrelevant and prejudicial.  Touchstream's technical expert, Dr. Almeroth, has already stated in his infringement report that he "reviewed and analyzed Comcast's secret and highly sensitive source code" and "conducted a careful review and considered analysis of Comcast's confidential and secret materials."  Ex. 13 ¶¶ 39-40.  Similarly, in the *Google* trial, Touchstream's counsel repeatedly referenced in his opening statement the "confidential documents inside of Google" obtained through the litigation, Ex. 20 (Jul. 17, 2023 *Google* Litigation Trial Tr., TS_COMCAST_00044538) at 43:11-14, 45:14-16, and Dr. Almeroth referred to the "very secret Google source code."  Ex. 21 (Jul. 18, 2023 *Google* Litigation Trial Tr., TS_COMCAST_00044782) at 417:7-418:13.  Such statements only serve to inflame the jury that a company acted improperly in safeguarding its source code and technical documents.  This is not a trade-secrets case, so references to the "secret" status of documents is irrelevant.  *See*

*Zimmer Tech., Inc. v. Howmedica Osteonics, Corp.*, 2008 WL 11504967, at *2 (N.D. Ind. Nov. 25, 2008) (precluding any arguments or references at trial that documents relating to the prior art product were "secret," "hidden away," "unpublished," or "non-public").

In his invalidity rebuttal report, Dr. Almeroth states that Comcast documents "are often marked confidential and/or proprietary and thus would establish that the invention is 'concealed'" within the meaning of § 102(g).  Ex. 22 (Almeroth Rebut. Rpt.) ¶ 201.  Of course, this provides no justification for reference to confidential or "secret" documents relevant to alleged infringement.  But, in any event, it is the wrong inquiry.  Comcast's prior art system was plainly not suppressed or concealed given that a public demonstration of a prototype was publicly posted on YouTube on May 12, 2010, Ex. 23, and the mobile application was available as a free download in the Apple App Store on November 15, 2010, Ex. 24 at -5091.  Prior art inventions are not suppressed or concealed where, for example, "the product itself (though not the process used to make it) was described in a published paper" and knowledge of the product was disclosed outside the company.  *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1306 n.4 (Fed. Cir. 2012).  The purported secrecy of any particular document is irrelevant and any testimony or argument that Comcast's documents are "secret" would only confuse the jury on this point.

Dated: September 3, 2024

Respectfully submitted,

/s/ David J. Lisson
Deron Dacus (State Bar No. 00790553)
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel:    (903) 705-1117
ddacus@dacusfirm.com

DAVIS POLK & WARDWELL LLP
Ashok Ramani (CA Bar No. 200020)
David J. Lisson (CA Bar No. 250994)
James Y. Park (CA Bar No. 343659)
Micayla Hardisty (CA Bar No. 333246)
1600 El Camino Real
Menlo Park, CA 94025
ashok.ramani@davispolk.com
david.lisson@davispolk.com
james.park@davispolk.com
micayla.hardisty@davispolk.com

Alena Farber (NY Bar No. 5896170)
450 Lexington Avenue
New York, NY 10017
alena.farber@davispolk.com

*Counsel for Defendants Comcast Cable
Communications, LLC, Comcast Cable
Communications Management, LLC,
Comcast of Houston, LLC, and Comcast
Corporation*

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that this document is authorized to be filed under seal pursuant to the

Protective Order entered in this case.

/s/ David J. Lisson
David J. Lisson

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and that this motion is opposed.  Micayla Hardisty, James Park and Alena Farber, counsel for Comcast, met and conferred by Zoom videoconference on August 23, 2024 with Philip Eckert, Jordan Bergsten, and Mark Schafer, counsel for Touchstream, regarding MILs 1-4. The parties were unable to reach agreement as to the relief sought in this motion.  After Comcast's prior MIL 5 was mooted, Comcast emailed Touchstream on September 3, 2024 to meet and confer regarding MIL 5, and counsel for Touchstream responded that Touchstream opposed the motion.  As such, discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ David J. Lisson*
David J. Lisson

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2024 true and correct copies of the foregoing were served upon the following as indicated:

BOIES SCHILLER FLEXNER LLP
Ryan Dykal
Mark Schafer
Jordan Bergsten
Anita Liu
Philip A. Eckert
1401 New York Avenue, NW
Washington, DC 20005
rdykal@bsfllp.com
mschafer@bsfllp.com
jbergsten@bsfllp.com
aliu@bsfllp.com
peckert@bsfllp.com

BOIES SCHILLER FLEXNER LLP
John Michael Lyons
Sabina Mariella
Sophie Roytblat
55 Hudson Yards
New York, NY 10001
jlyons@bsfllp.com
smariella@bsfllp.com
sroyblat@bsfllp.com

☒ Via Email
☐ Via Overnight Courier
☐ Via Hand Delivery
☐ Via First Class Mail

*Counsel for Plaintiff Touchstream Technologies, Inc.*

17

GILLIAM & SMITH LLP
Melissa Richards Smith
303 South Washington Ave.
Marshall, TX 75670
melissa@gillamsmithlaw.com

☒ Via Email
☐ Via Overnight Courier
☐ Via Hand Delivery
☐ Via First Class Mail

*Counsel for Plaintiff Touchstream Technologies, Inc.*

ARNOLD & PORTER KAYE SCHOLER LLP
Dina M. Hayes
70 West Madison Street, Suite 4200
Chicago, IL 60602
dina.hayes@arnoldporter.com

☒ Via Email
☐ Via Overnight Courier
☐ Via Hand Delivery
☐ Via First Class Mail

Daniel L. Reisner
David Benyacar
Elizabeth A. Long
Melissa Brown
Robert Stout
250 West 55th Street
New York, NY 10019
daniel.reisner@arnoldporter.com
david.benyacar@arnoldporter.com
elizabeth.long@arnoldporter.com
melissa.brown@arnoldporter.com
robert.stout@arnoldporter.com

Carson Anderson
3000 El Camino Real, Suite 500
Palo Alto, CA 94306
carson.anderson@arnoldporter.com

Marc A. Cohn
601 Massachusetts Avenue, NW
Washington, DC 20001
marc.cohn@arnoldporter.com

*Counsel for Charter Defendants*

THE DACUS FIRM, PC
Deron R. Dacus
821 ESE Loop 323, Suite 430
Tyler, TX 75701
ddacus@dacusfirm.com

☒ Via Email
☐ Via Overnight Courier
☐ Via Hand Delivery
☐ Via First Class Mail

*Counsel for Comcast and Charter Defendants*

/s/ Angela Quach
Angela Quach
Senior Litigation Paralegal

18