**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **TOUCHSTREAM TECHNOLOGIES, INC.,** | |
| *Plaintiff,* | |
| *v.* | |
| **CHARTER COMMUNICATIONS, INC. et al.,** | |
| *Defendants.* | Lead Case No. 2:23-cv-00059-JRG |
| **TOUCHSTREAM TECHNOLOGIES, INC.,** | **Member Case No. 2:23-cv-00062-JRG** |
| *Plaintiff,* | |
| *v.* | |
| **COMCAST CABLE COMMUNICATIONS, LLC, D/B/A XFINITY, et al.,** | |
| *Defendants.* | |

**JOINT PROPOSED PRETRIAL ORDER**[1]

Plaintiff Touchstream Technologies, Inc. ("Plaintiff" or "Touchstream") and Defendants

Comcast Cable Communications, LLC, d/b/a Xfinity; Comcast Corporation; Comcast Cable

Communications Management, LLC; and Comcast of Houston, LLC (collectively "Comcast")

(Touchstream and Comcast collectively, "the Parties") submit the following proposed Joint

Pretrial Order pursuant to the Court's Third Amended Docket Control Order (Dkt. 205), the

Federal Rules of Civil Procedure, and Local Rules of this Court. This case is scheduled for a

---

[1] Submissions that are agreed to by both Touchstream and Comcast are not highlighted.
Submissions proposed by Touchstream that are not agreed to by Comcast are bracketed and
highlighted in green. Submissions proposed by Comcast that are not agreed to by Touchstream
are bracketed and highlighted in yellow.

pretrial management conference on December 2, 2024, pursuant to Local Rule CV-16 and Rule 16 of the Federal Rules of Civil Procedure. The Parties have stipulated to various matters identified herein and having identified exhibits, witnesses, factual contentions, and triable issues.

## I.    APPEARANCE OF COUNSEL

**Attorneys for Plaintiff Touchstream Technologies, Inc.**

> Ryan D. Dykal (*pro hac vice*)
> Jordan T. Bergsten (*pro hac vice*)
> Mark Schafer (*pro hac vice*)
> Philip A. Eckert (*pro hac vice*)
> Anita Liu (TX State Bar No. 24134054)
> **BOIES SCHILLER FLEXNER LLP**
> 1401 New York Ave, NW
> Washington, DC, DC 20005
> (t) 202-274-1109
> rdykal@bsfllp.com
> jbergsten@bsfllp.com
> mschafer@bsfllp.com
> peckert@bsfllp.com
> aliu@bsfllp.com
>
> John Michael Lyons (*pro hac vice*)
> Sabina Mariella (*pro hac vice*)
> Sophie Roytblat (*pro hac vice*)
> **BOIES SCHILLER FLEXNER LLP**
> 55 Hudson Yards, 20th Floor
> New York, NY 10001
> jlyons@bsfllp.com
> smariella@bsfllp.com
> sroytblat@bsfllp.com
>
> Melissa Smith (TX State Bar No. 24001351)
> **GILLAM & SMITH LLP**
> 303 S. Washington Ave.
> Marshall, TX 75670
> (t) 903-934-8450
> melissa@gillamsmithlaw.com

**Attorneys for Comcast Defendants**

Deron Dacus (State Bar No. 00790553)
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
(t) (903) 705-1117
ddacus@dacusfirm.com

DAVIS POLK & WARDWELL LLP
Ashok Ramani (CA Bar No. 200020)
David J. Lisson (CA Bar No. 250994)
James Y. Park (CA Bar No. 343659)
Micayla Hardisty (CA Bar No. 333246)
1600 El Camino Real
Menlo Park, CA 94025
ashok.ramani@davispolk.com
david.lisson@davispolk.com
james.park@davispolk.com
micayla.hardisty@davispolk.com

Alena Farber (NY Bar No. 5896170)
450 Lexington Avenue
New York, NY 10017
alena.farber@davispolk.com

WILMER CUTLER PICKERING HALE AND DORR LLP
Thomas G. Saunders (NY Bar No. 4429387)
2100 Pennsylvania Ave, NW
Washington, DC 20007
thomas.saunders@wilmerhale.com

Lauren E. Matlock-Colangelo (NY Bar No. 5771340)
7 World Trade Center
250 Greenwich St
New York, NY 10007
lauren.matlock-colangelo@wilmerhale.com

## II.    STATEMENT OF JURISDICTION

This Court has subject-matter jurisdiction under Title 28, U.S.C. §§ 1331 and 1338(a), because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* The parties do not dispute subject-matter jurisdiction or personal jurisdiction for purposes of this action only.

### III.    JOINT STATEMENT OF THE CASE

This is a civil action for patent infringement in which Touchstream accuses Comcast of directly infringing claims 1, 5, 7, 8, and 9 of U.S. Patent No. 8,356,251 ("'251 patent"); claims 12, 13, and 14 of U.S. Patent No. 11,048,751 ("'751 patent"); and claims 17, 18, 19 and 20 of U.S. Patent No. 11,086,934 ("'934 patent") (collectively the "Asserted Claims" of the "Asserted Patents"). Touchstream alleges that Comcast has directly infringed each of the Asserted Claims. Comcast denies that it has infringed the Asserted Claims of the Asserted Patents and argues that the Asserted Claims are invalid.

Touchstream alleges Comcast infringes the Asserted Claims of the Asserted Patents by performing certain methods. In particular, Touchstream alleges that Comcast infringes when a subscriber uses the Xfinity TV Remote Application in conjunction with an X1 set-top box (the "Accused Functionalities"). Touchstream seeks monetary damages in the form of a reasonable royalty for past damages, an ongoing reasonable royalty for future damages, pre- and post-judgment interest, costs, and an award of its fees under 35 U.S.C. §§ 284 and 285, as well as any other relief the Court deems appropriate. Touchstream also seeks a permanent injunction to prevent further infringement of the Asserted Patents. Touchstream asserts that Comcast's alleged infringement of the '251 patent was and continues to be willful. Touchstream also asserts that Comcast's alleged infringement of the '751 and '934 patents has been willful after the filing of this lawsuit. Touchstream seeks enhanced damages as a result of Comcast's alleged willful infringement, and any other relief the Court deems appropriate. Touchstream disagrees with each allegation, defense, and/or affirmative defense asserted by Comcast.

Comcast contends that it does not infringe the Asserted Claims and that the Asserted Claims are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112. Because Comcast does not

infringe any valid Asserted Claim, Touchstream is not entitled to any damages or equitable relief. Comcast further contends that it has not willfully infringed any of the Asserted Patents. Further, this case is exceptional under 35 U.S.C. § 285, and Comcast seeks its attorney's fees and costs thereunder, as well as any other relief the Court deems appropriate.

## IV.    CONTENTIONS OF THE PARTIES

By providing these statements, the Parties do not concede that any of the following issues are appropriately presented at trial. The Parties also do not waive any issues raised by their previously filed motions or previously lodged objections.

The contentions below do not include every detail underlying each contention. The Parties do not waive any issues raised in their pending, decided, or future motions, including any motions *in limine*, motions for summary judgment, *Daubert* motions, motions to strike, and any other future motions or objections that they may file.

### A.    Touchstream's Contentions

(1) Plaintiff Touchstream is the owner of all right, title, and interest in the '251 patent titled "Play Control of Content on a Display Device." Comcast has been and is infringing the '251 patent under 35 U.S.C. § 271 by using the methods of one or more claims of the '251 Patent within the United States through its Accused Functionalities. Touchstream accuses Comcast of infringing claims 1, 5, 7, 8, and 9 of the '251 patent.

(2) Plaintiff Touchstream is the owner of the '751 patent titled "Play Control of Content on a Display Device." Comcast has been and is infringing the '751 patent under 35 U.S.C. § 271 by using the methods of one or more claims of the '751 patent within the United States through its Accused Functionalities. Touchstream accuses Comcast of infringing claims 12, 13, and 14 of the '751 patent.

(3)  Plaintiff Touchstream is the owner of the '934 patent titled "Play Control of Content on a Display Device."  Comcast has been and is infringing the '934 patent under 35 U.S.C. § 271 by using the methods of one or more claims of the '934 patent within the United States through its Accused Functionalities.  Touchstream accuses Comcast of infringing claims 17, 18, 19, and 20 of the '934 patent.

(4)  Touchstream provided pre-suit notice of the '251 patent to Comcast, Comcast was aware of the '251 patent prior to the filing of Touchstream's Original Complaint either through actual notice or willful blindness, and Comcast was aware or should have been aware that it was likely to infringe one or more Asserted Claims of the '251 patent.

(5)  Comcast's pre-suit and post-suit infringement of the '251 patent has been and continues to be willful.

(6)  Comcast's post-suit infringement of the '751 patent and '934 patent has been and continues to be willful.

(7)  The Asserted Claims of the Asserted Patents are not invalid for any reason, including under 35 U.S.C. §§ 101, 102, 103, and/or 112.

(8)  Touchstream has been damaged by Comcast's infringement of the Asserted Claims, and Touchstream is entitled to damages for all infringement addressed at trial.

(9)  Touchstream is entitled to supplemental damages for all infringement that is not addressed at trial, including, for example, damages for infringement that occurred (i) after the temporal cutoff for the data presented at trial; (ii) during the period between the jury verdict and the entry of final judgment, as well as pre-judgment and post-judgment interest; and (iii) in the future until expiration of each of the respective Asserted Patents.

(10)    Touchstream seeks the following relief:

    i.   A judgment that Comcast has infringed the '251 patent;

    ii.   A judgment that Comcast has infringed the '751 patent;

    iii.   A judgment that Comcast has infringed the '934 patent;

    iv.   A judgment that Comcast's infringement has been willful;

    v.   A judgment and order requiring Comcast to pay Touchstream damages under 35 U.S.C. § 284, together with pre-judgment and post-judgment interest and a running royalty for future damages;

    vi.   A judgment and order requiring Comcast to pay Touchstream the costs of this action;

    vii.   A judgment and order declaring this case to be exceptional based on Comcast's infringement and/or litigation conduct;

    viii.   A judgment and order awarding attorneys' fees, costs, expenses, and any other relief the Court deems appropriate to Touchstream under 35 U.S.C. § 285;

    ix.   A permanent injunction restraining and enjoining Comcast from any further use of the methods of the Asserted Claims; and

    x.   All equitable relief that the Court deems just and proper.

(11)    Touchstream contends that the Asserted Patents are valid, patent-eligible, and enforceable, and that its claims are not barred or otherwise limited as a result of any of the affirmative defenses raised by Comcast.

(12)    To the extent not already addressed above, Touchstream disagrees with Comcast's contentions below.

**B.    Comcast's Contentions**

(1)    To the extent not addressed below, Comcast denies each of Touchstream's contentions.

(2)    Comcast does not infringe, and has not infringed, any of the Asserted Claims.

(3)    Comcast's alleged infringement of the Asserted Claims has not been, and is not, willful.

(4)    The Asserted Claims are not patent-eligible under 35 U.S.C. § 101.

(5)    The claim elements of the Asserted Claims, both individually and as an ordered combination, were well-understood, routine, and conventional at the time of the alleged invention.

(6)    Comcast contends that U.S. Patent No. 9,294,800 ("McMahon") is prior art to the Asserted Claims under at least 35 U.S.C. §§ 102 (e) and/or (g) (pre-AIA).

(7)    Comcast contends that the 2010 Xfinity TV App System is prior art to the Asserted Claims under at least 35 U.S.C. §§ 102 (a) and/or (g)(2) (pre-AIA).

(8)    Comcast contends that U.S. Patent Publication No. 2004/0078812 ("Calvert") is prior art to the Asserted Claims under at least 35 U.S.C. §§ 102 (a), (b), (e), and/or (g) (pre-AIA).

(9)    Comcast contends that U.S. Patent No. 8,660,545 ("Redford") is prior art to the Asserted Claims under at least 35 U.S.C. §§ 102 (a), (b), (e), and/or (g) (pre-AIA).

(10)    Comcast contends that the Asserted Claims are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 in view of the following prior art:

- McMahon;

- McMahon in view of Calvert;

- The 2010 Xfinity TV App System;

- The 2010 Xfinity TV App System in view of McMahon;

- The 2010 Xfinity TV App System in view of Calvert; and/or

- Redford.

(11)    Comcast contends that the Asserted Claims are invalid for lack of written description under 35 U.S.C. § 112.

(12)    Comcast contends that Touchstream is not entitled to enhanced damages under 35 U.S.C. § 284.

(13)    Comcast contends that Touchstream is not entitled to any attorneys' fees or other costs under 35 U.S.C. § 285.

(14)    Comcast contends that Touchstream is not entitled to pre- and post-judgment interest.

(15)    Comcast contends that it is entitled to costs, expenses, and attorneys' fees under 35 U.S.C. § 285, as well as any other relief the Court finds appropriate.

(16)    Touchstream is not entitled to any damages or other relief under any theory because Comcast has not infringed any valid claim of the Asserted Patents.

(17)    Touchstream is not entitled to supplemental damages or other relief under any theory.

(18)    Comcast contends that, even if infringement of a valid Asserted Claim is found, Touchstream's proposed royalty is excessive and unsupported.

(19)    Comcast contends that no order should restrain or enjoin Comcast from continuing its use of the Accused Functionalities.

(20)    Comcast contends that Touchstream's claims are without merit.

## V.    STIPULATIONS AND UNCONTESTED FACTS

The Parties will continue to meet and confer to attempt to resolve their objections to deposition designations and exhibits, and to identify additional potential stipulations, including stipulations related to the admissibility of exhibits, and will supplement these stipulations to the extent that additional stipulations are agreed by the Parties.

### A.    The Parties' Statement of Stipulations

The Parties have met and conferred and agreed upon certain trial management procedures as set forth below.

(1)    The parties propose that the Court present a tutorial video for the Federal Judicial Center regarding the U.S. Patent Office to the members of the jury as part of its preliminary instructions to the jury.

(2)    The parties agree that written answers to interrogatories and requests for admission or stipulations agreed to in this case shall be treated by the opposing party as having been given under oath, whether or not the answers were signed or verified by the party making them.

(3)    The parties will share any courtroom audio-visual equipment.

(4)    The parties shall make good faith efforts to resolve objections over the use of identified witnesses, testimony, exhibits, and demonstratives by participating in a meet and confer following the identification of and objection to witnesses, testimony, exhibits, and demonstratives each day as outlined further below.

(5)    Fact witnesses will be sequestered so that they cannot hear other witnesses' testimony pursuant to Federal Rule of Evidence 615. This stipulation does not apply to a party's corporate trial representative.

**B.    The Parties' Statement of Uncontested Facts**

(1)     Comcast Cable Communications, LLC is a Delaware limited liability company.

(2)     Comcast Cable Communications Management, LLC is a Delaware limited liability company.

(3)     Comcast of Houston, LLC is a Delaware limited liability company.

(4)     Comcast Corporation is a Pennsylvania company.

(5)     The Asserted Patents are U.S. Patent Nos. 8,356,251 ("'251 patent"), which issued January 15, 2013; 11,048,751 ("'751 patent"), which issued June 29, 2021; and 11,086,934 ("'934 patent"), which issued August 10, 2021 (collectively, the "Asserted Patents").

(6)     Touchstream is the record assignee and owner of the Asserted Patents.

(7)     Each of the Asserted Patents is titled "Play Control of Content On a Display Device."

(8)     Each of the Asserted Patents names David Strober as inventor.

(9)     On February 17, 2023, Touchstream filed the Original Complaint asserting infringement of the '251 Patent.  2:23-cv-00062-JRG, Dkt. 1.

(10)    On May 25, 2023, Touchstream filed its First Amended Complaint asserting infringement of the Asserted Patents.  2:23-cv-00060-JRG, Dkt. 55.

(11)    On March 28, 2024, Touchstream filed its Second Amended Complaint asserting infringement of the Asserted Patents.  Dkt. 30.

(12)    On April 30, 2024, this Court dismissed all allegations of pre-suit willful infringement as to the '751 and '934 patents.  2:23-cv-00059-JRG, Dkt. 44.

(13)    McMahon was filed as U.S. Application No. 13/103,574 and claims priority to

and incorporates by reference in its entirety U.S. Provisional Application No. 61/333,066, which was filed on May 10, 2010.

 (14) Calvert was filed as U.S. Application No. 2004/0078812 on January 4, 2002.

 (15) Redford was filed as U.S. Application No. 12/683,405 on January 6, 2010.

## VI. CONTESTED ISSUES OF FACT AND LAW

The Parties identify the following issues that remain to be litigated.  The Parties reserve the right to identify additional factual or legal issues that may arise, including issues raised by any further discovery undertaken in this case or the Court's rulings on any pending motions or rulings made at the pretrial conference on this action.

By providing this statement, the Parties do not concede that all of these issues are appropriate for trial.  The Parties also do not waive any issues raised in their pending, decided, or future motions.

 (1) Whether Touchstream has shown by a preponderance of evidence that Comcast has directly infringed or is directly infringing the Asserted Claims.

 (2) Whether Comcast has proven by clear and convincing evidence that the Asserted Claims are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.

 (3) Whether the claim elements of the Asserted Patents, both individually and as an ordered combination, were well-understood, routine, and conventional at the time of the alleged invention.

 (4) Whether certain of Comcast's references qualify as prior art in light of Touchstream's assertion of an October 2010 priority date for each Asserted Patent.

 (5) Whether the Asserted Patents are entitled to the asserted priority date of October 2010.

(6)    Whether the hypothetical negotiation between Touchstream and Comcast would have begun in mid-2012 and culminated in an agreement in early 2013.

(7)    Whether Comcast has proven the availability of any available and acceptable non-infringing alternative by a preponderance of the evidence.

(8)    If Touchstream proves infringement of one or more valid claims of the '251 Patent, the amount of reasonable royalty damages that Touchstream has shown by a preponderance of the evidence to which it is entitled for the period from February 17, 2017 to the date of trial.

(9)    If Touchstream proves infringement of one or more valid claims of the '751 Patent, the amount of reasonable royalty damages that Touchstream has shown by a preponderance of the evidence to which it is entitled for the period from June 29, 2021 to the date of trial.

(10)    If Touchstream proves infringement of one or more valid claims of the '934 Patent, the amount of reasonable royalty damages that Touchstream has shown by a preponderance of the evidence to which it is entitled for the period from August 10, 2021 to the date of trial.

(11)    If the jury awards damages to Touchstream, whether Touchstream has shown by a preponderance of the evidence that it is entitled to supplemental damages for infringement that is not included in the jury verdict, including, for example, damages for infringement that occurred between the jury verdict and the expiration of the Asserted Patents.

(12)    If Touchstream proves infringement of one or more patent claims that are not invalid, whether Touchstream is entitled to a permanent injunction to prevent further

infringement.

(13)    If the jury awards damages to Touchstream, whether Touchstream has shown by a preponderance of the evidence that it is entitled to pre- and/or post-judgment interest and, if so, the amount.

(14)    Whether Touchstream has shown by a preponderance of the evidence that Comcast has willfully infringed any valid claim of the '251 Patent.

(15)    Whether Touchstream has shown by a preponderance of the evidence that Comcast has willfully infringed any valid claim of the '751 Patent or '934 Patent after the filing of this lawsuit.

(16)    If the jury finds willful infringement, whether Touchstream should be awarded enhanced damages under 35 U.S.C. § 284 and, if so, the amount of enhancement.

(17)    Whether this case is exceptional under 35 U.S.C. § 285 and, if so, whether Touchstream or Comcast is entitled to attorneys' fees or costs, and, if so, the amount.

## VII.    LIST OF WITNESSES

The Parties' witness lists and objections thereto are attached as Exhibits A and B.  The Parties will continue to meet and confer regarding these lists, objections, and amendments thereto.

## VIII.    LIST OF EXHIBITS

The Parties' exhibits lists and objections thereto are attached as Exhibits C and D.[2]  The Parties' joint exhibit list is attached as Exhibit E.  The Parties reserve the right to object to the admission of any of the exhibits currently listed on the joint exhibit list based on rulings on the pending motions for summary judgment, *Daubert* motions, and motions *in limine*.  The Parties

---

[2] After the Parties exchanged initial exhibit lists, certain exhibits were agreed-upon as joint exhibits.  Those exhibits were removed from the individual exhibit lists, and those lists are therefore not numbered continuously.

will continue to meet and confer regarding these lists, objections, and amendments thereto.  In addition, any exhibits implicated by motions *in limine* are deemed objected to.

## IX.    DEPOSITION DESIGNATIONS

The Parties' deposition designations and objections are attached as Exhibits F[3] and G. The Parties will continue to meet and confer regarding these designations, objections, and amendments thereto.  In addition, any deposition designations implicated by motions *in limine* are deemed objected to.

## X.    STIPULATIONS AND TRIAL DISCLOSURES

The following stipulations were agreed upon by the Parties as discussed below and are made a part of this Pretrial Order.

### A.  Trial Disclosure Schedule

The Parties agree to the following procedure which will govern the disclosure of witnesses, exhibits, deposition testimony, and demonstratives to use at trial and the process to identify any objections remaining between the Parties with regard to these disclosures:

(1)    At **7:30 PM**[4] two days before each day of trial (e.g., 7:30 PM Saturday for a Monday trial day), each party will exchange by email the following for that trial day:

(i)    A list of witnesses the party intends to call for direct examination, in the order the party intends to call such witnesses (whether live

---

[3] The Second Amended Docket Control Order (Dkt. 114) set September 11, 2024 as the deadline to "Serve Objections to Counter-Designations," but did not contemplate counter-counter designations.  Accordingly, Comcast objects to Touchstream's counter-counter designations as improper.  Additionally, Comcast reserves the right to serve specific objections to the admissibility of the counter-counter designations should Touchstream seek to offer them at trial.

[4] All times noted herein are Central Time.

or by deposition);

(ii)    A list of the deposition testimony it intends to introduce (either by video or through a reading of the transcript), a list and PDF copy of any trial exhibits it intends to introduce for the first time through such deposition testimony, and a short statement of introduction for the witness that may be read to the jury prior to reading or playing the designated deposition testimony to the jury; and

(iii)    A list of the responses to requests for admissions or interrogatories it intends to read into the record.

(2)    At **7:30 PM** one day before a day of trial (e.g., 7:30 PM Sunday for a Monday trial day), each party will exchange by email the following for that trial day:

(i)    A list and PDF copy of each trial exhibit for each witness it intends to present for the first time through direct examination;

(ii)    Copies of demonstratives to be used during direct examination (including native versions of any demonstratives with video or animation);

(iii)    Objections to witnesses for both live and deposition trial witnesses;

(iv)    Identification of objections to designated deposition testimony and deposition counter-designations to be included when the other party introduces its identified deposition testimony; and

(v)      Identification of objections to the list of requests for admission or interrogatories to be introduced at trial.

(3)      At **8:30 PM** one day before a day of trial (e.g., 8:30 PM Sunday for a Monday trial day), each party will exchange by email the following for that trial day:

(i)      Objections to trial exhibits and disclosed demonstratives to be used during direct examination; and

(ii)      Objections to counter-designations.

(4)      At **9:00 PM** one day before a day of trial (e.g., 9:00 PM Sunday for a Monday trial day), the parties shall meet and confer regarding objections to witnesses, trial exhibits, deposition testimony, and demonstratives.

(5)      At **10:00 PM** the day before a day of trial (e.g., 10:00 PM Sunday for a Monday trial day), to the extent there are unresolved issues, the parties shall submit to the Court by email arguments regarding any remaining evidentiary disputes.

(6)      By the morning of the day of trial (e.g., Monday morning for a Monday trial day), the Court will rule on evidentiary disputes submitted the previous evening.

In addition, the parties agree to the following procedures for the exchange of demonstratives to be used during opening arguments and physical exhibits:

(1)      The parties will exchange demonstratives to be used during opening arguments by **5:00 PM** the day before the trial day on which they will be used.

(2)     By **7:30 PM**, each party will identify any objections to the exhibits and demonstratives of the opposing party.

(3)     The parties shall meet and confer on any objections by **9:00 PM** that day.

(4)     In the event the parties do not resolve any dispute, by **10:00 PM** the parties shall submit to the Court by email arguments regarding any remaining disputes regarding opening demonstratives.

(5)     Physical exhibits will be available for inspection at **7:30 PM** two days before a party intends to use the physical exhibit at trial. The parties reserve the right to lodge objections related to the quality and accuracy of the exhibits upon inspection of the physical exhibits.

(6)     Closing demonstratives will not be exchanged.

By **7:30 PM** the day before the party that is presenting its case-in-chief expects to rest, its counsel shall provide to counsel for the other party an estimate of when it expects to rest. To the extent either party expects to rest before 4:00 PM on a trial day, it will provide notice one day earlier. For instance, if Plaintiff expects to rest in the morning on a Wednesday, it will provide notice to Defendant on Monday so that the Defendant may prepare its related disclosures.

### B.   Motions

All motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) may be brought to the Court orally or in writing. Unless the Court sets alternative deadlines, all oppositions to motions filed pursuant to Fed. R. Civ. P. 50(b) must be filed within 28 days of the filing of the motion.  All replies in support of the motions must be filed within 21 days of service of any oppositions.  All sur-replies in support of oppositions must be filed within 21 days of service

of the reply.  The Parties reserve their right to seek reasonable extensions of these deadlines, subject to the Court's approval.

### C.  Exhibits

(1)    The Parties agree that any exhibit listed on any party's exhibit list as to which no objection remains pending at the time of opening statements may be shown to the jury during opening statements.  The Parties agree that exhibits to be used or offered into evidence solely for impeachment need not be included on the Parties' trial exhibit lists.

(2)    Each party has the right to use an exhibit on either party's exhibit list, even if not introduced by the designating party, subject to all evidentiary objections.  Another party's exhibit is not, however, admissible simply by virtue of being on an exhibit list.  A party seeking to introduce another party's exhibit must still have a witness sponsor the exhibit into evidence and is subject to any objections, including for example, hearsay objections that may apply to one party but not the other.  The parties' exhibit lists and the joint exhibit list include exhibits that may not necessarily be introduced into evidence.  A party's decision not to introduce any exhibit appearing on its list or the joint list shall not be commented on during trial except that a comment may be made if the exhibit was used in opening and then not explained to the jury by a witness at trial.

(3)    A legible copy of an exhibit may be offered in evidence in lieu of the original subject to all foundational requirements and other objections that might be made to the admissibility of the original and subject to the right of the party against whom it is offered to inspect the original upon request reasonably in advance of any

proposed use of the copy.  For exhibits that are spreadsheets, slide presentations, or videos, the Parties may use electronic versions of such exhibits in their native format.

(4)    The parties agree that the following are presumed prima facie authentic, subject to evidentiary objections: (i) exhibits created and thereafter produced by a party or subpoenaed third party; (ii) documents created by a government agency; and (iii) scientific-research articles and posters.

(5)    The parties agree that any date or description of a document (or absence thereof) on an exhibit list is provided for convenience only and shall not be used as evidence regarding that document.

(6)    Legible photocopies of United States and foreign patent and trademark applications, published documents, issued documents, and file histories, including the Asserted Patents and their file histories, may be used in evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.  The dates of filing and issuance and the identity of the inventors of record shall be deemed to be shown on the face of the patent, subject to the right of the party against whom it is offered to adduce evidence to the contrary.

(7)    No exhibit will be admitted unless a party offers the exhibit into evidence through a witness, who must at least be shown the exhibit, and the party formally moves the exhibit into evidence by exhibit number.  For avoidance of doubt, this Section excludes exhibits that have been pre-admitted, stipulations and a party's introduction of an opposing party's admissions, such as interrogatory responses and

responses to requests for admission, which can be offered as evidence by a party during its case-in-chief while no witness is on the stand, subject to other evidentiary objections.  A party seeking to introduce an interrogatory response or response to requests for admission must read the relevant response in its entirety, and may not admit the underlying document into evidence or publish it to the jury.  Further, if a witness testifies via deposition, exhibits on a party's exhibit list and discussed with that witness in the portion of the deposition presented to the jury may be moved into evidence immediately after the deposition testimony is concluded, subject to any unresolved objections as to the admissibility of that exhibit.

(8)     Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence, except documents used for demonstrative purposes only during opening statements as previously discussed, or documents used during examination of an expert witness where the documents were relied upon by the expert in forming the expert's opinions and disclosed in that expert's report, and for which there is no objection or any objection has been overruled. Once admitted, counsel may publish exhibits to the jury without requesting to do so.

(9)     The Parties agreed to exchange lists of "Admitted Exhibits" (those admitted into evidence) by **9:00 PM** the same day they were entered.

**D.   Deposition Testimony**

(1)     Promptly after the meet and confer one (1) day before the deposition testimony is to be played, the party that seeks to read or play the deposition testimony must provide the opposing party a workable copy of the actual recordings to be played

(or testimony to be read), including all designations and counter designations included sequentially (i.e., in the order that they appeared at the deposition). The Parties shall cooperate in good faith to prepare the designated portions of the depositions for presentation at trial. The time available for each side's trial presentation shall be reduced by the length of its designations or counter-designations actually played or read at trial. If played, such time shall be measured by the amount of time of each party's designations.

(2)     Unless used for impeachment, all designated deposition testimony shall be played by video unless video is unavailable, or unless both Parties otherwise reach an agreement to read the deposition testimony live or the Court orders otherwise. The Parties' designations and counter-designations shall be played (or read) together.

(3)     Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its designated and counter-designated testimony read or played.

(4)     Prior to the introduction of deposition designations or counter-designations, counsel for the introducing party may provide a short, agreed-upon introduction to the jury about the identity of the witness, which introduction the Parties agree is not evidence and the time for which will be charged against that party.

(5)     All irrelevant and redundant colloquy between counsel and objections will be eliminated as much as practicable when the deposition testimony is presented at trial. For each deposition, the specific portions of the deposition designated or counter-designated by either party shall be read or played together in the same order as the real time deposition testimony with all such objections and colloquy

removed.

(6)     Any deposition testimony not specifically identified on a party's deposition designation list may still be used at trial for the purpose of impeachment, if otherwise competent for that purpose.  When a party uses deposition testimony for impeachment, the party may elect to either play the deposition testimony by video or read the deposition testimony live unless the Court orders otherwise.

(7)     To the extent certain designated deposition testimony is admissible, a party's decision not to introduce some or all of the deposition testimony of a witness designated by that party herein shall not be commented upon by the other party at trial.

(8)     If a party withdraws testimony previously designated, the other party has the right to designate the withdrawn testimony subject to the initially designating party's objections.

**E.   Demonstratives**

(1)     "Demonstratives" are materials specifically created for the purpose of the trial. Demonstratives may include documents relied upon by experts but not admitted into evidence. For the avoidance of doubt, the Parties agree that enlargements, highlighting, ballooning, or other annotations of admitted trial exhibits done in Court (rather than prepared as slides in advance) are not Demonstratives.  Each Demonstrative shall clearly indicate information sources (including, if available, trial exhibit numbers) that form the basis of the Demonstrative.  Reasonable non-substantive edits or corrections of typographical and similar errors to Demonstratives may be made to such exhibits prior to use.

(2)    For clarity, Demonstratives include physical or other non-documentary demonstratives (such as poster boards, product samples, prior art sample, live product, or prior art demonstrations).  Thus, photos or electronic images of the physical demonstrative must be disclosed in accordance with the schedule and procedure set forth in § VIII.A. above, and also made available for physical inspection if requested by the opposing party.

(3)    Demonstratives that include videos, animations, or the like will be exchanged in a format that allows for the playback of any animations in accordance with the schedule and procedure set forth in § VIII.A. above.

(4)    Demonstratives for direct examination and opening and trial exhibits must be cleared of outstanding objections before being shown to the jury.  Additionally, any transcripts of testimony (excluding testimony given during this trial) must be cleared of outstanding objections before being shown to the jury during opening, closing, or on direct examination.  On cross-examination, transcripts of testimony may be used for impeachment so long as it is not in violation of a motion *in limine* or other exclusionary order, regardless of whether it was previously designated by the Parties.

(5)    The Parties agree that Demonstratives the Parties intend to use at trial do not need to be included on their respective lists of trial exhibits.  The Parties further agree that, unless otherwise ordered by the Court, Demonstratives will not be admitted as evidence and will not be made available to the jury during deliberations.

(6)    The Parties agree to discuss in good faith a reasonable time for exchange of previously undisclosed closing Demonstratives.  For closing arguments, the Parties

agree that a party need not provide advance notice regarding its intent to use Demonstratives previously used during the course of trial or enlargements, highlighting, ballooning, or other annotations of admitted trial exhibits or testimony given during this trial.

(7)     To the extent certain exhibits or Demonstratives are admissible, a party's decision not to introduce the exhibits or Demonstratives shall not be commented upon by the other party at trial.

**F.     Stipulations Regarding Subject Matter Not to Be Presented to the Jury**

Absent any later agreement among the parties to the contrary, the parties agree not to discuss or argue the following in front of the jury, without first approaching the Bench and explaining why despite such an agreement the other side has now opened the door:

(1)     The Parties agree not to offer any evidence or testimony (lay and expert) of or make any reference, suggestion, or argument regarding the fact that any claim, defense, affirmative defense, prior art, theory, or product was previously at issue in this lawsuit, has been withdrawn over the course of the litigation, or is no longer at issue in this lawsuit.  Notwithstanding the foregoing, the Parties may offer evidence, testimony, or argument regarding which products, services, and functionalities are and are not accused.

(2)     There will not be any testimony, evidence, or expert opinions from experts not disclosed in expert reports.  No expert witness may testify to expert opinions outside the established parameters of her/his expert report, and counsel shall not raise such an objection for strategic or other non-meritorious purposes.

(3)     No expert may offer legal opinions or legal testimony.

(4)    The Parties shall not offer any evidence or testimony (lay and expert) of or make any reference, suggestion, or argument that damages could potentially be enhanced.

(5)    The Parties agree not to offer any evidence or testimony (lay and expert) of or make any reference, suggestion, or argument regarding any current or prior relationship between any expert witnesses and either party, Boies Schiller Flexner LLP, Davis Polk & Wardwell LLP, and/or any other current or former counsel of record (including Shook, Hardy & Bacon LLP) or their current or former attorneys.

(6)    The Parties will not make any reference to jury consultants, investigators, mock trials, focus groups, and the like consulted in preparation for litigation.

(7)    The Parties shall not offer any evidence or testimony (lay and expert) concerning matters relevant solely to claims or defenses dismissed on summary judgment or otherwise no longer presented in this case.

(8)    Touchstream will not offer testimony, evidence, or argument regarding the substance of conversations with, or impressions of, Touchstream's patent prosecution counsel, including concerning the purported strength of Touchstream's patents or patent applications.

## G.    Handling of Source Code and Confidential Material

The parties may present Source Code at trial and enter it into evidence, subject to the protection of the Court's Protective Order (2:23-cv-00060-JRG, Dkt. 77). Only portions of source code about which a witness testifies shall be included as a trial exhibit for the jury, and such source

code shall be provided in paper format.

Once the trial is complete, the Parties must delete and/or destroy any copies of the other Party's source code material in that Party's possession, whether they be hard copies or digital copies, no later than forty-five (45) days of final termination of this Action, including any appeals, pursuant to the Protective Order (Dkt. 77, 2:23-cv-00060-JRG).

The parties must request to seal any exhibits on the record at the time they are offered. If a party asks to go on the confidential record, then the party shall also note when the proceedings may resume on the public record.

The Parties agree that a party may demand that its source code may only be displayed in a sealed courtroom. For the avoidance of any doubt, any presentation of the Parties' source code—in electronic or paper form—in open court requires sealing of the courtroom upon request of the party that owns the source code.

## XI.    PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

The Parties attach hereto as Exhibit H the Proposed Jury Instructions and attach hereto as Exhibit I the Proposed Verdict Form. The Parties will submit Amended Proposed Jury Instructions that include argument and authority in support of their proposals. The Parties will continue to meet and confer and expect to further narrow disputes with respect to the final jury instructions.

## XII.    LIST OF MOTIONS DECIDED AT PRETRIAL CONFERENCE

The below Motions are pending before the Court:

| Date Filed | Dkt. | Description |
|---|---|---|
| 8/5/2024 | 83 | Comcast's Motion to Strike the Opinions of Dr. Russell Mangum |
| 8/5/2024 | 84 | Comcast's Motion to Strike Certain Opinions of Dr. Kevin Almeroth |

| 8/5/2024 | 85 | Comcast's Motion for Partial Summary Judgment |
|---|---|---|
| 8/5/2024 | 86 | Defendant's Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101 |
| 8/5/2024 | 88 | Touchstream's Motion for Summary Judgment of Validity under 35 U.S.C. § 101 |
| 8/5/2024 | 90 | Touchstream's Motion to Strike the Opinions of Dr. Stephen Becker |
| 8/5/2024 | 91 | Touchstream's Motion to Strike the Opinions of Dr. Kevin Jeffay |
| 9/3/2024 | 170 | Touchstream's Motions *in Limine* |
| 9/3/2024 | 172 | Comcast's Motions *in Limine* |

## XIII.   MEMORANDA ON DISPUTED ISSUES OF LAW

Each party reserves the right to submit a trial brief, as appropriate, on any disputed issues of law and/or fact regarding infringement, invalidity, willfulness, damages, and the exceptional nature of this case.

## XIV.   ORDER OF PRESENTATION

The order of presentations at trial shall be as described in this subsection.

1.      Opening Statements:  The trial presentations shall begin with opening statements by each party.  Plaintiff shall present its opening statement first, followed by Defendant's opening statement.

2.      Evidence: After opening statements, the parties shall present their evidence. Plaintiff shall go first on the issues of infringement, willfulness, and damages.  Defendant shall next present its case on non-infringement, invalidity, and damages.  Plaintiff may then present its rebuttal case on invalidity.

3.      Closing Arguments:  The parties shall conclude with closing arguments.  Plaintiff

shall present its closing argument on all issues.  Next, Defendant will present its closing argument on all issues.  Plaintiff may reserve time and make a rebuttal closing after Defendant's argument.

## XV.    PROBABLE LENGTH OF TRIAL

The Court orders that the length of the trial will be between 4/5 and 5/6 days.  The Parties will be given twelve (12) / eighteen (18) hours per side for trial time excluding opening, closing, and *voir dire*.  The parties believe the Court should allocate 30 minutes for *voir dire* per side*,* 30 minutes for opening statements per side, and 40 minutes for closing statements per side. Touchstream may present a rebuttal case on invalidity after Comcast's case-in-chief, which can use Touchstream's trial time that was remaining at the time Comcast rested its case-in-chief.  A party may not reserve trial time for closing argument—40 minutes is the limit for each side's closing argument. Touchstream may reserve up to ten (10) minutes of its time for closing argument for a rebuttal argument.

## XVI.    DOCKET ENTRIES RELATED TO MEMBER CASE

Pursuant to the Third Amended Docket Control Order (Dkt. 205), and the Court's Standing Order Regarding Pretrial Procedures in Consolidated Cases, the Parties attach hereto as Exhibit J a list identifying all docket entries from the Lead Case that relate to Member Case No. 2:23-cv-0062. Because the cases were previously consolidated under Lead Case No. 2:23-cv-0060, Exhibit J includes related filings from Case No. 2:23-cv-0060.

This Joint Pretrial Order is hereby approved this ___ day of _____, 2024.

**TABLE OF EXHIBITS TO JOINT PRE-TRIAL ORDER**

| PTO EX. NO. | DESCRIPTION |
|---|---|
| A | Touchstream's Witness List (with Comcast objections) |
| B | Comcast's Witness List (with Touchstream objections) |
| C | Touchstream's Exhibit List (with Comcast objections) |
| D | Comcast's Exhibit List (with Touchstream objections) |
| E | Joint Exhibit List |
| F | Touchstream's Deposition Designations (with Comcast objections) |
| G | Comcast's Deposition Designations (with Touchstream objections) |
| H | Proposed Jury Instructions |
| I | Proposed Verdict Form |
| J | List of Docket Entries Related to Member Case 2:23-cv-0062 |

Date: October 4, 2024

Respectfully submitted,

/s/ Ryan D. Dykal
Ryan D. Dykal

Ryan D. Dykal (*pro hac vice*)
Jordan T. Bergsten (*pro hac vice*)
Mark Schafer (*pro hac vice*)
Philip A. Eckert (*pro hac vice*)
Anita Liu (TX State Bar No. 24134054)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC, DC 20005
(t) 202-274-1109
rdykal@bsfllp.com
jbergsten@bsfllp.com
mschafer@bsfllp.com
peckert@bsfllp.com
aliu@bsfllp.com

John M. Lyons (*pro hac vice*)
Sabina Mariella (*pro hac vice*)
Sophie Roytblat (*pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
jlyons@bsfllp.com
smariella@bsfllp.com
sroytblat@bsfllp.com

Melissa Smith (TX State Bar No. 24001351)
**GILLAM & SMITH LLP**
303 S. Washington Ave.
Marshall, TX 75670
(t) 903-934-8450
melissa@gillamsmithlaw.com

***Counsel for Plaintiff Touchstream Technologies, Inc.***

/s/ David J. Lisson
David J. Lisson

Deron Dacus (State Bar No. 00790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel:      (903) 705-1117
ddacus@dacusfirm.com

**DAVIS POLK & WARDWELL LLP**
Ashok Ramani (CA Bar No. 200020) David J. Lisson (CA Bar No. 250994) James Y. Park (CA Bar No. 343659) Micayla Hardisty (CA Bar No. 333246) 1600 El Camino Real Menlo Park, CA 94025
ashok.ramani@davispolk.com
david.lisson@davispolk.com
james.park@davispolk.com

Alena Farber (NY Bar No. 5896170) 450 Lexington Avenue
New York, NY 10017
alena.farber@davispolk.com

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Thomas G. Saunders (NY Bar No. 4429387)
2100 Pennsylvania Ave, NW
Washington, DC 20007
thomas.saunders@wilmerhale.com
Lauren E. Matlock-Colangelo (NY Bar No. 5771340) 7 World Trade Center
250 Greenwich St New York, NY 10007
lauren.matlock-colangelo@wilmerhale.com

***Counsel for Defendants Comcast Cable Communications, LLC, Comcast Cable Communications Management, LLC, Comcast of Houston, LLC, and Comcast Corporation***

**CERTIFICATE OF SERVICE**

I hereby certify that, October 4, 2024, the foregoing was filed under seal with the Clerk of Court using the CM/ECF system, and all counsel of record who are deemed to have consented to electronic service are being served with a notice of this document via the Court's CM/ECF system. Further, I hereby certify that a courtesy copy of the foregoing was emailed to counsel for Defendants on October 4, 2024.

/s/ *Ryan D. Dykal*
Ryan D. Dykal


**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) on October 3, 2024 and that this is a joint motion with various positions that the parties have reached an impasse on. Participants in the conference included at least Jordan Bergsten, John Lyons, Philip Eckert, Anita Liu, Dina Hayes, Micayla Hardisty, Alena Farber, and James Park. Counsel for the parties discussed their positions at the meet and confer regarding the joint motions but reached an impasse on several outstanding issues, leaving an open issue for the Court to resolve.

/s/ *Ryan D. Dykal*