EXHIBIT H

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **TOUCHSTREAM TECHNOLOGIES, INC.,** | |
| *Plaintiff,* | |
| *v.* | |
| **CHARTER COMMUNICATIONS, INC. et al.,** | |
| *Defendants.* | |
| | Lead Case No. 2:23-cv-00059-JRG |
| | **Member Case No. 2:23-cv-00062-JRG** |
| **TOUCHSTREAM TECHNOLOGIES, INC.,** | |
| *Plaintiff,* | |
| *v.* | |
| **COMCAST CABLE COMMUNICATIONS, LLC, D/B/A XFINITY, et al.,** | |
| *Defendants.* | |

## PROPOSED JURY INSTRUCTIONS[1]

---

[1]    Submissions that are agreed to by both Touchstream and Comcast are not highlighted. Submissions proposed by Touchstream that are not agreed to by Comcast are bracketed and highlighted in green. Submissions proposed by Comcast that are not agreed to by Touchstream are bracketed and highlighted in yellow.

The parties reserve their respective rights to further object or propose new instructions based on their pending motions or further development at trial.

## PRELIMINARY INSTRUCTIONS

Ladies and Gentlemen of the Jury: Before you hear the evidence in this case, I have some preliminary instructions that I need to give you on the record before we start with opening statements from the attorneys and then go on to the evidence.

You've now been sworn as the jurors in this case.  And as the jury, you are the sole judges of the facts.  As such, you will determine and decide all the facts in this case.

As the Judge, I'll give you instructions on the law, decide questions of law that might arise during the trial, handle matters related to evidence and procedure, as well as being responsible for the efficient flow of the evidence and maintaining the decorum of the courtroom.

At the end of the evidence, I'll give you detailed instructions about the law to apply in deciding this case, and I'll give you a list of questions that you are then to answer.  This list of questions is called the verdict form.  Your answers to those questions will need to be unanimous, and those unanimous answers will constitute the jury's verdict in this case.

Now, let me briefly talk with you about what this case concerns.  This case involves a dispute regarding three United States patents.  Now, I know that each one of you saw the patent video this morning prepared by the Federal Judicial Center, but I need to give you some instructions now and on the record about a patent how one is obtained.

Patents are either granted or denied by the United States Patent and Trademark Office, which you will hear referred to in shortened form simply as the PTO, or as the Patent Office.  A valid United States patent gives the patentholder the right for up to 20 years from the date the patent application is filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States or importing it into the United States without the patentholder's permission.

A patent is a form of property called intellectual property and, like with other forms of

property, a patent can be bought or sold.

A violation of the patentholder's rights is called infringement. The patentholder may try to enforce a patent against persons it believes to be infringers by filing a lawsuit in federal court, and that's what we have in this case.

Now, the process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO, the United States Patent and Trademark Office. The PTO, ladies and gentlemen, is an agency of the United States government that employs trained examiners who review patent applications.

The application filed with the PTO includes within it something called a specification. The specification contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes or ends with one or more numbered sentences. These numbered sentences at the end of the patent are called patent claims.

When a patent is granted by the Patent Office, the claims define the boundaries of its protection and it is the claims that give notice to the public of those boundaries.

Now, patent claims may exist in two forms referred to as independent claims and dependent claims. An independent claim does not refer to any other claim in the patent. It is independent. It's not necessary, ladies and gentlemen, to look to any other claim within the patent to determine what an independent patent claim means.

However, a dependent claim refers to at least one other claim in the patent. A dependent claim includes all the elements or limitations of that other claim or claims to which it refers or, as is sometimes said, from which it depends, as well as the additional elements or limitations recited within the dependent claim itself. Accordingly, to determine what a dependent patent claim covers,

it's necessary to look at both the dependent claim itself and the independent claim or claims from which it refers or, as we sometimes say, from which it depends.

Now, the claims of the patents-in-suit use the word "comprising." Comprising means including or containing. A claim that includes the word "comprising" is not limited to the methods or devices having only the elements that are recited in the claim, but also covers other methods or devices that include or add additional elements.

Let me give you an example. Take, if you will, the example of a table. If a claim recites a table comprising a tabletop, legs, and glue, the claim will cover any table that contains those structures, even if the table also contains other or additional structures such as leaves to expand the size of the tabletop or wheels to go on the ends of the legs. Now, that's a very simple example using the word "comprising" and what it means. In other words, it can have other features in addition to those that are covered by the patent.

After the applicant files his or her application with the Patent Office, an examiner is assigned and the examiner reviews the application to determine whether or not the claims are patentable—that is to say, appropriate for patent protection, and whether or not the specification adequately describes the invention that's claimed.

In examining the patent application, the examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews this type of information that's publicly available or that might have been submitted by the applicant. And this type of information is called prior art. The examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time.

Now, prior art is defined by law, and I'll give you specific instructions at a later time as to what it constitutes. However, ladies and gentlemen, in general, prior art includes information

that demonstrates the state of the technology that existed before the claimed invention was made or before the application for a patent was filed with the Patent Office.

A patent contains a list of certain prior art that the examiner has reviewed and considered. The items on this list as reflected in the patent are called the cited references. [If the examiner has not reviewed a particular piece of prior art, you may consider this fact when determining invalidity. And, if the PTO did not have all material facts before it, then the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain. The prior art in this case was not considered by the PTO.]

Now, after the prior art search and an examination of the application, the examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable in which case it would be allowed. And this writing from the examiner to the applicant is called an office action.

Now, if the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try to persuade the examiner to allow the claims. The applicant also has a chance to change or amend the claims, or to submit new claims. And the papers generated in this back and forth between the examiner and the applicant are called the prosecution history.

And this process between the examiner and the applicant may go back and forth for some time until the examiner is satisfied that the application meets the requirements for a patent and, in that case, the application issues as a United States patent; or, in the alternative, if the examiner ultimately concludes that the application should be rejected, then no patent is issued.

Now, to help you follow the evidence, I'm going to give you a brief summary of the positions of the parties in this case.

As you know, the party that brings a lawsuit is called the plaintiff. And the Plaintiff in

this case is Touchstream Technologies, Inc., which you will hear referred to throughout the trial simply as the "Plaintiff" or you may hear it referred to simply as "Touchstream" or "Shodogg," which is another name the company used for a "doing business as" name.  And as you know, the party or parties against whom a lawsuit is brought are called the defendants, and in this case the Defendants are Comcast Cable Communications, LLC, doing business as Xfinity, Comcast Corporation, Comcast Cable Communications Management, LLC, and Comcast of Houston, LLC, which you will hear referred to throughout the trial collectively together either as just the "Defendants" or as "Comcast."

Now, as I told you during jury selection, this is a case of alleged patent infringement. And as I've mentioned, there are three United States patents that have been asserted in this case. Those are United States Patent No. 8,356,251, United States Patent No. 11,048,751, and United States Patent No. 11,086,934.  As you may have heard, patents are often referred to by the last three digits of their patent number.  So in this case, Patent No. 8,356,251, you'll hear referred to simply as the "'251 Patent"; you'll hear Patent No. 11,048,751 referred to as the "'751 Patent"; and you'll hear Patent No. 11,086,934 referred to as the "'934 Patent."

Now, these patents may be referred to and will be referred to throughout the trial at various times as the patents-in-suit. You may also hear them referred to collectively as the Asserted Patents. Those terms mean the same thing. The Asserted Patents in this case generally relate to technology controlling how to stream or cast content (like videos) from a mobile device (like a cellular phone) to a display device (like a television).

Now, the Plaintiff Touchstream contends that the Defendants Comcast are infringing certain claims of the patents-in-suit by using Touchstream's  patented technology. Touchstream further contends that the Defendants' infringement is willful. And, additionally, Touchstream

contends that it is entitled to money damages as a result of the infringement.

The Defendants in this case, Comcast, deny that they are infringing any of the Asserted Claims of the patents-in-suit.

The Defendants also contend that the Asserted Claims of the patents-in-suit are invalid. [For a patent claim to be invalid, Comcast must prove this by clear and convincing evidence.] Specifically, Comcast contends that each Asserted Claim is invalid because it is anticipated by the prior art, obvious over the prior art, and/or for failure to satisfy the written description requirement. [Comcast also contends that the Asserted Claims of the Asserted Patents claim subject matter that is ineligible for patent protection.] [You will also be asked to decide whether elements of the Asserted Claims involve only technology that was well-understood, routine, and conventional at the time of the alleged invention in October 2010.]

Now, I know that there are many new words and new concepts that have been thrown at you, ladies and gentlemen, since you arrived for jury duty this morning. I'm going to define a lot of these words and a lot of these concepts for you as we go through these instructions. The attorneys on both sides of the case are going to discuss them in their opening statements which you'll hear in a few minutes. The witnesses over the course of the trial are going to help you as they go through their testimony to understand these words and these concepts.

So please, ladies and gentlemen, do not feel overwhelmed at this stage. I promise you it will all come together as we go through the trial.

Now, one of your jobs in this case is to decide whether or not the Asserted Claims of the patents-in-suit have been infringed. [You'll also be asked to decide whether or not certain of the Asserted Claims are invalid.] Now, if you decide that any claim of the patents-in-suit has been infringed [by the Defendants and is not invalid], then you'll be asked to decide [whether or not that

infringement that you have found was willful. You will also be asked to decide. whether or not certain of the Asserted Claims are invalid. Then, if at least one claim is infringed and not invalid, you will also need to decide at that point in time what amount of money damages should be awarded to the Plaintiff to compensate it for infringement] [what amount of money damages, if any, should be awarded to the Plaintiff to compensate it for that infringement, and then whether or not that infringement that you have found was willful.  The Plaintiff has the burden to prove willful infringement by a preponderance of the evidence.] [If you decide that any infringement has been willful, that should not affect any monetary damages that you might award, and I will take willfulness into account later.]

Now, my job in this case is to tell you what the law is, to handle rulings on evidence and procedure that arise during the trial, and to oversee the conduct of the trial efficiently and to maintain the proper decorum of the courtroom.

In determining the law, it is specifically my job to determine the meaning of any of the claim language from within the asserted patent that needs interpretation. I've already determined the meanings of the claims of the patents-in-suit, and you must accept the meanings that I give you and use those meanings when you decide whether any particular claim has or has not been infringed and when you decide whether or not any particular claim is invalid.

Now, you'll be given a document in a few moments that reflects these meanings that the Court has already arrived at. For any claim term for which the Court has not provided you with an interpretation or a definition, you'll sometimes hear that referred to as a construction, you should apply the plain and ordinary meaning. But if I have provided you with a definition or construction, you are to apply my definition to those terms throughout the case.

However, ladies and gentlemen, my interpretation as required by the law of the language

within the claims should not be taken by you as any indication that the Court has any personal opinion or opinion at all regarding the issues of infringement, invalidity, or any other issue in this case. Those issues are yours alone to decide. And I'll provide you with more detailed instructions on the meaning of the claim terms before you retire to the jury room to deliberate upon and reach your verdict.

Now, in deciding the issues that are before you, you'll be asked to consider specific legal rules, and I'll give you an overview of those rules now, and then at the conclusion of the case I'll give you more detailed instructions.

The first issue that you're asked to decide is whether or not the Defendants, Comcast, have infringed any of the Asserted Claims of the patents-in-suit as brought by Touchstream.

Infringement, ladies and gentlemen, is assessed and determined on a claim-by-claim basis. And Touchstream, the Plaintiff, must show by a preponderance of the evidence that a claim has been infringed. Accordingly, there may be infringement as to one claim but no infringement as to another claim.

A defendant may infringe a method claim by performing in the United States each and every requirement or limitation of the claim. [Now, if you decide that any claim of the patent-in-suit has been infringed, then you'll need to decide whether or not that infringement was willful.] And I'll provide you with more detailed instructions on the requirements for infringement [and willfulness] at the conclusion of the case.

The [second] issue that you are asked to decide as the jury is whether the Asserted Patents are invalid. Invalidity is a defense to infringement. [For a patent claim to be invalid, Comcast must prove this by clear and convincing evidence.] Even though the PTO has allowed the Asserted Claims, you the jury must decide whether those claims are invalid after hearing the evidence presented during this

trial.

You may find that a patent claim is invalid for any of a number of reasons, including because it [claims] [contains]subject matter that is not new [, or in other words, anticipated by the prior art as of the date of the invention.]For a patent claim to be invalid because it is [anticipated by prior art] [not new], the Defendants must show by clear and convincing evidence that [that all of the elements of a claim are present in a single previous device or method, or sufficiently described in a single previous printed publication or patent. We call these "prior art."] [all the elements or limitations of a claim are sufficiently described in a single previously printed publication or patent, or all the elements or limitations could be performed using a previously created product or system. If a claim is not new, ladies and gentlemen, it is said to be anticipated by the prior art.]

A claim may also be invalid as "obvious" over prior art. For a patent claim to be invalid because it is obvious, the Defendants must show by clear and convincing evidence that the claim would have been obvious to a person of ordinary skill in the field of the technology of the patent at the time of the invention. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more than one item of prior art.

A patent may also be invalid if its description in the specification does not meet certain requirements. To be valid, a patent must meet the "written description" requirement. In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as claimed in the claims of the issued patent.

Now, you'll need to consider a number of questions in deciding whether the invention claimed in the Asserted Patents is [anticipated by prior art] [not new], obvious, or lacks sufficient

written description, and I'll provide you with more detailed instructions on these questions at the conclusion of the trial.

[Comcast also contends that the Asserted Claims of the Asserted Patents claim subject matter that is ineligible for patent protection. Patent eligibility and infringement are separate and distinct issues. While it is my job to decide whether the Asserted Claims are eligible for patent protection, you must decide whether the Defendant has proven by clear and convincing evidence that each claim element of the Asserted Patents, both individually and by ordered combination of those elements, involve activities that were purely well-understood, routine, or conventional at the time of the alleged invention.]

[Now, patents must claim patent eligible subject matter. In general, a patent is directed toward an eligible subject matter if it claims a process, machine, manufacture or composition of matter or any new or useful improvement thereon or thereof. However, if the Court determines that a patent is also directed towards an abstract idea, then the jury must determine whether the patent only covers activities that were well-understood, routine, and conventional at the time of the alleged invention. I'll provide you with more detailed instructions on this question at the conclusion of the trial.]

If you decide that any claim of the patents-in-suit has been infringed and is not invalid, you will also need to decide what amount of money damages [, if any,] should be awarded to the Plaintiff [Touchstream] to compensate it for that infringement [of the Defendants Comcast].

[If you decide a] [A] damages award [is appropriate], ladies and gentlemen, [it] must be adequate to compensate the patentholder for the infringement. And in no event may a damages award be less than what the patentholder would have received if it had been paid a reasonable royalty for the use of its patent. However, the damages that you award, if any, are meant to

compensate the patentholder, and they are not meant to punish the Defendants. You may not include in any damages award an additional amount as a fine or a penalty above what is necessary to fully compensate the patentholder for the infringement.

[Further, every Asserted Claim in this case is a method claim. A method claim is not infringed unless a defendant performs each and every requirement or limitation of that claim. The Asserted Claims cannot be infringed by the mere sale or distribution of a product capable of performing the claimed method. Damages for a method claim must be correlated to the extent the infringing method is used. Therefore, because mere capability is not enough, Touchstream cannot simply count the number of set-top boxes capable of being used with the Accused Functionalities as the basis for calculating damages. Damages should be limited to products that were actually used to perform the claimed method or a reasonable approximation thereof.]

Additionally, damages cannot be speculative, and the Plaintiff Touchstream must prove the amount of its damages for the alleged infringement by a preponderance of the evidence.

Now, I'll give you more detailed instructions on the calculation of damages for the Defendants' alleged infringement of the patents-in-suit at the conclusion of the trial, including by giving you specific instructions with regard to the calculation of a reasonable royalty. However, ladies and gentlemen, the fact that I'm instructing you on damages does not mean that Touchstream is or is not entitled to recover damages.

[If you decide that any claim of the patents-in-suit has been infringed and is not invalid, then you'll also need to decide whether or not that infringement was willful. Whether the infringement was willful is a separate question from whether there was infringement or the amount of damages that would compensate the patentholder for any infringement.]

Now, you're going to be hearing from a number of witnesses over the course of this trial,

and I want you to keep an open mind while you're listening to the evidence and not to decide any of the facts until you have heard all the evidence.

This is important. While the witnesses are testifying, remember, you'll have to decide the degree of credibility and believability to allocate to each of the witnesses and the evidence and testimony that they give.

So while the witnesses are testifying from the witness stand during this trial, you should be asking yourselves things like this: Does the witness impress you as being truthful? Does he or she have a reason not to tell the truth? Does he or she have any personal interest in the outcome of the case? Does the witness seem to have a good memory? Did he or she have the opportunity and ability to observe accurately the things that they've testified about? Did the witness appear to understand the questions clearly and answer them directly? And, of course, does the witness' testimony differ from the testimony of other witnesses? And if it does, how does it differ? These are some of the things that you should be thinking about while you're listening to each and every one of the witnesses.

Also, I want to talk to you briefly about expert witnesses. When knowledge of a technical or specialized subject may be helpful to you, the jury, a person who has special training and experience in that particular field, we refer to them as an expert witness, is permitted to testify to you about his or her opinions on those technical or specialized matters.

However, ladies and gentlemen, keep in mind you're not required to accept an expert's opinion or any other opinion at all. It's up to you to decide whether you believe any expert witness or any witness, for that matter, and whether you determine that what they're telling you is correct or incorrect, or whether or not you want to believe what they have to say.

Now, I anticipate that there will be expert witnesses testifying in support of each of the

sides in this case. But when they do, it will be up to you to listen to their qualifications. And when they give you an opinion and explain the basis for that opinion, you will have to evaluate what they say and whether you believe it, and to what degree, if any, that you want to give that opinion weight. Remember, ladies and gentlemen, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

Now, during the course of the trial it's possible that there will be testimony from one or more witnesses that are going to be presented to you through what's called a deposition. In trials like this, it's difficult to get every witness here in the courtroom in person at the same time to testify, so lawyers for each side, prior to the trial, take the depositions of the witnesses.

In a deposition, the witness is present, they're sworn and placed under oath, a court reporter is present, counsel for both of the parties are present, and counsel asks the witness questions and the witness' answers to those questions are taken down, both the questions and the answers are recorded. Often those depositions are video recorded.

Now, it's important for you to understand, ladies and gentlemen, that during the course of this trial, when these deposition witnesses might be presented to you, you'll be seeing, in all likelihood, clips from recorded video depositions, and you'll be seeing the portions of those depositions that counsel believe are relevant and important for you to see.

Let me explain it to you this way. During a typical deposition in advance of a trial, the witness is questioned and answers are given for many hours, usually up to a maximum of seven hours. And so to keep you from listening to every question and every answer for seven hours regarding a witness who can't physically be here in person to testify, the parties will be able to select designations and counter designations from that deposition and the transcript and if it was videoed, the video that they believe relate to the important relevant things that you should see.

14

And because of that process, when you have a witness presented to you who testified by deposition as opposed to coming in person and testifying in open court, you're going to see breaks in that testimony when it's played back to you, you're going to hear changes in voices, you're going to see little irregularities, and that's unavoidable because they are cutting out pieces across many hours of testimony and putting them together. And I promise you that is a much better alternative than listening to an entire multi-hour deposition to get five minutes' worth of testimony out of it.

But when that happens, disregard the differences in voice, disregard the differences in tone or sound. If it looks like there's a clip where something's put together, it probably is, but don't focus on that. Listen to the testimony that's given when a witness testifies by deposition and pay attention to the substance of the questions and the answers and don't get distracted by any of those irregularities that are necessary to avoid all of us having to listen to hours and hours of testimony when there's only an included portion, a smaller portion, that's relevant to what's at issue during the trial.

So if it jumps around, if you hear different voices, don't focus on that; focus again on the substance of what's asked and the substance of what's said.

Now, assuming that there will be some witnesses who cannot appear in person and are presented to you by deposition, I want you to understand that that deposition testimony is entitled, insofar as possible, and is to be judged by you as to its credibility and believability and otherwise considered in the same way if the witness had appeared in person and testified live from the witness stand.

Also, ladies and gentlemen, information on some of the documents that you may see over the course of the trial may include what are called redactions. There may be portions of

documents that are presented to you as exhibits that have some of the document blacked out, redacted, and that happens because there are often portions of that document that are not important and, in fact, irrelevant for you to see. And those portions, pursuant to the Court's prior order, have been blacked out or redacted.

Just like I said with the depositions, don't focus on the redactions, don't focus on what's blacked out, don't try to guess what was said before it was blacked out, don't speculate; focus on the part that's clear and legible and that's presented to you in the document. Don't worry about what's blacked out or redacted, and don't consider that or get distracted by it. Again, focus on what is clearly printed and able to be read from any documents that might otherwise include sections or provisions or words that are blacked out or redacted.

Now, during the course of the trial, it's possible that the lawyers will make certain objections, and when they do, I will give rulings on those objections. And remember, it's the duty of an attorney for each side to object when the other side offers testimony or evidence which the attorney believes is not proper under the orders of the Court, the Rules of Civil Procedure, or the rules of evidence.

Now, upon the Court allowing the testimony or other evidence to be introduced over an objection of an attorney in the case that I overrule that objection, the Court does not, unless expressly stated otherwise, indicate any opinion in that as to the weight or effect of that evidence. As I've said before, you, the jury, are the sole judges of the credibility and believability of all the witnesses and the weight and effect to give to all the evidence.

Now, I'd like to compliment the attorneys on both sides of this case because up until today through various pretrial procedures that you have not been involved in, the Court has reviewed and heard arguments as to many, many different exhibits, many different issues, the Court

has ruled on those, and those exhibits that have been admitted into evidence by the Court are able to be shown to you during this trial without going through a formal offer and an objection and an argument and a ruling by the Court. In other words, all that's been done in advance.

And I promise you, you probably don't realize how much you will benefit by that, but you will benefit by that, because you won't have to listen to all that. I've already gone through all that with the parties and, working together, the Court's already determined the documents that are properly admissible and can be shown to you as exhibits during this trial, and that means the lawyers are able to present them and offer them without all those formalities that have already been taken up and considered by the Court.

And I promise you that has saved you many, many hours of sitting in those chairs that you do not have to endure because it's already been done by the Court working with the attorneys in advance of the trial. And I want to compliment them for their professionalism and the way that they've addressed and worked with the Court on those issues.

All of that means that when you're shown an exhibit during the trial, that it's already been ruled on by the Court as to its admissibility. If the Court did not find it admissible, you will not see it during the trial. But once they offer an exhibit that's been admitted by the Court counsel can ask questions, they can put it in a proper context, and they can review it with the witnesses, but they don't have to go through all of that prior process that we've already gone through. And that streamlined the case a great deal.

However, even though all that work's been done in advance, it's still possible that over the course of the trial objections may arise. If I should sustain an objection to a question addressed to a witness, then you, the jury, must disregard the question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if I had permitted them to

answer the question.

If I overrule an objection, then you should consider the question and the answer just as if no objection had been made.

You should also know, ladies and gentlemen, any comments from the judge to the jury regarding the evidence are only an expression of the judge's personal opinion, and the jury may disregard those comments in their entirety because, as I've told you, you, the jury, are the sole judges of the facts in this case, and the credibility of witnesses and how much weight, if any, to give to the evidence that's presented to you over the course of this trial.

But I want to be clear, I am going to work very hard not to comment on any of the evidence, not to give you any insight as to what the Court might personally think about any of this evidence that will be presented during the course of the trial, because deciding the facts in this case from that evidence is a job of the jury and not the judge in a context like this.

So don't take anything you see or hear from me or you think you see or hear from me as something for you to consider, a factor to take into account in making your ultimate decision about what the facts are in this case.

Now, our court reporter, Mr. McRoberts, who's seated in front of me, will take down everything that's said in the courtroom over the course of the trial. And you may hear me instruct the witnesses and the lawyers to make sure they don't talk at the same time over the course of the trial, and that's because you can't write down two people talking at the same time and we want to have a clear and an unconfused, straight-forward record of this case.

But the written transcription of the questions asked and the answers given, even though Mr. McRoberts will be taking them down, those are not going to be available for you to take back with you when you go to the jury room after you've heard all the evidence and you deliberate on

your verdict in this case. That means, ladies and gentlemen, you're going to have to rely on your memory of the evidence presented over the course of the trial.

Now, in a moment you're each going to be given a juror notebook, and in the back of that notebook you'll find a brand new legal pad. In the front pocket you should find a new pen if you don't have one of your own. You're entitled to take notes over the course of the trial anywhere within that notebook, particularly on that legal pad, if you choose to do that. You're also not required to take notes during the course of the trial.

If you take notes, remember those notes are for your own personal use. You still have to rely on your memory of the evidence as given in open court, and that's why you should be paying close attention to each and every witness when they testify. And you should not abandon your own recollection because somebody else's notes indicate something different. Remember, if you take notes during the trial, those notes are meant to refresh your recollection and that's the only reason you should be keeping them.

I'm now going to ask our Court Security Officer to pass out these juror notebooks to each member of the jury.

All right. If you'll look at these notebooks briefly with me, ladies and gentlemen, you'll see that in the front of these notebooks you'll each have a complete copy of the patents-in-suit that we've already talked about. You'll also see that you should have another section in there regarding the language from the Asserted Claims where the Court has already determined and given you a construction, a definition of that particular language to use during the trial. You should have the claim language on one side and the adopted construction or definition that the Court already reached on the other side of that particular part of your notebooks.

And then behind that, that's where you should find the legal pad that's been three-hole

punched so it will fit in your notebook. And, again, you should find a pen in the front pocket of each one of these.  Now, these notebooks, ladies and gentlemen, should stay in your possession throughout the trial. They're not to be left lying around where somebody could pick them up and look at them. They should be in your possession. When you leave each day during the trial, I'm going to ask you to take them with you to the jury room and leave them closed on the table in the jury room, and then you can pick them up back up there each morning when you come back in. When you come into the courtroom and go into the jury box, you should have these notebooks with you.

Now, there may be times during the course of the trial when we take a short recess, and you're only going to be out of the jury box and out of the courtroom for a few minutes, in which case I might say to you, ladies and gentlemen, you can simply close and leave your notebooks in your chairs. And if that's the case and if I tell you that, then you don't need to carry them with you; you can just close them and leave them in your seat because I don't anticipate that we're going to be out of the courtroom for any great length of time.

But if we're going to be out of the courtroom for longer than a short period of time, I'll want you to take them with you when you go to the jury room and, again, leave them on the table there overnight so you can get them when you come back each day. They are not to leave the courthouse. They are to either be in your possession or in the jury room unless I give you other instructions.

Now, in a minute, ladies and gentlemen, we're going to hear opening statements from the attorneys in the case. These opening statements are not opening arguments. They're opening statements, and they are meant to provide you a road map of what each side believes that the evidence in this case is going to show you.

Also, remember that these opening statements, along with everything else the lawyers tell you in this case, is not evidence. The evidence is the sworn testimony of the witnesses from the witness stand given under oath subject to cross-examination, the sworn testimony of any witnesses who testify by deposition, as I've already described to you, and the documents and exhibits that the Court has admitted into evidence and found to be admissible under the rules of evidence. That is the evidence in this case; nothing else.

And what the lawyers tell you is not evidence. But they're going to present their opening statements in a few minutes, and they have a duty to point out to you what they believe the evidence will show. But, again, what they tell you is not evidence.

Now, after the opening statements from both the Plaintiff's counsel and Defendants' counsel, the Plaintiff will have an opportunity to call its witnesses. That's what we call the Plaintiff's case-in-chief. The Plaintiff will call its witnesses, those witnesses will testify, and the Defendant will cross-examine those witnesses. And after the Plaintiff has called or presented all its intended witnesses, then the Plaintiff will rest the Plaintiff's case-in-chief.

At that point the Defendants will put on the Defendants' case-in-chief. They will call their witnesses, they will examine their witnesses, and the Plaintiff's counsel will have an opportunity to cross-examine the Defendants' witnesses. And then when the Defendants have put on all their intended witnesses, the Defendants will rest their case-in-chief.

At that point, the Plaintiff has an option to call what are known as rebuttal witnesses to rebut anything that the Defendants may have put on [for its invalidity defense only]. The Plaintiff is not required to call rebuttal witnesses, but they may call rebuttal witnesses if they choose to. Once those rebuttal witnesses are presented by the Plaintiff and then cross-examined by the Defendants, then the Plaintiff will rest its rebuttal case.

When the Plaintiff has rested its case-in-chief, when the Defendants have rested their case-in-chief, and if there is a Plaintiff's rebuttal case, when that rebuttal case has been completed and the Plaintiff has rested its rebuttal case, then you will have heard all the evidence in this case. After that point in time, I will give you my final instructions that you are to consider and apply in discharging your duty as jurors. That set of final instructions from me to you is often called the Court's final jury instructions. It's also often referred to as the Court's charge to the jury.

Once you've received my charge, then you will hear argument from both Plaintiff's counsel and Defendants' counsel. And once you've heard the closing arguments from both sides in the case, that's the point in time that I will instruct you to retire to the jury room and to deliberate on your verdict, to consider those questions in the verdict form and come to a unanimous answer as to those questions.

And as I told you earlier, ladies and gentlemen, until that specific point in time, you must not discuss this case or communicate about it with anyone, including the eight members of the jury.

But when all that has happened and I say, ladies and gentlemen, you may now retire to the jury room to deliberate upon your verdict, then it's like a light switch flips the other way and at that point you go from not being able to discuss the case with each other to being required to discuss the case with each other while you deliberate and come to a unanimous decision as to those questions that will be set forth in the verdict form. But until that time, it is critically important that you not discuss anything about the case with each other, and it is critically important that you not communicate or discuss anything about the case with anybody else.

You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom. This means that during the trial you must not conduct any

independent research about this case, the matters in the case, and the individuals or corporations involved in the case. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Also, let me just briefly remind you of what I told you earlier. This is a small courthouse, as federal courthouses go, and there will be times when you will be in close physical proximity to some of the people involved in the trial on either the Plaintiff's side or the Defendants' side. Don't take it as being rude, don't take it as being unfriendly if they don't talk with you, visit with you, smile and interact with you. They're simply doing what I've told them to do.

And all of these instructions from one perspective or another ultimately go back to that same fundamental principle that when all of this process comes to an end and you go to the jury room to deliberate on your verdict and come to a unanimous agreement as to what the answers to those questions are, the only source of information that you should have before you that should have been presented to you that you can draw upon to answer those questions must come from the sworn testimony presented during the trial, either by live witnesses or deposition witnesses, and the exhibits that have been admitted into evidence by the Court. There must be nothing else before you when you answer those questions, and that's the main reason why most of these instructions are as they are.

So if over the course of the trial, as you're coming and going to your vehicles at the beginning of the day, the end of the day, as you come and go from inside to outside of the courthouse and vice versa, when you walk by one of these lawyers or one of these witnesses or one of their support staff, don't take it as they're being rude; they're simply doing what I have instructed

them to do. And please keep that in mind and take that into account. With these instructions, we'll now proceed to hear opening statements from the attorneys in the case.

# FINAL INSTRUCTIONS

1.    **Introduction**

## 1.1    Introduction to Jury Instructions

Ladies and Gentlemen of the Jury: You've now heard the evidence in this case. I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions that I am about to give you orally. You will have these instructions for your review when you retire to deliberate in a few minutes. Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so.

## 1.2    Statements of the Court and Counsel

It is your duty to follow the law as I give it to you. On the other hand, as I have said, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have made in the course of the trial or may make in the course of these instructions as an indication that I have any opinion about the facts in this case. You are about to hear closing arguments from the attorneys for both of the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

## 1.3    Verdict Form and Procedure

A verdict form has been prepared for you. You will take this form to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it, and sign it. Answer the questions as directed in the verdict form from the facts as you find them to be. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

## 2.       Considering the Evidence

### 2.1       Credibility of Witnesses and Evidence

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who may have called them, the stipulations of the parties, and you may consider all the exhibits received and admitted into evidence, regardless of who may have introduced them.

You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all the evidence. In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider a witness's manner and demeanor on the witness stand, any feelings or interest they may have in the case, any prejudice or bias about the case that the witness may have, and the consistency or inconsistency of their testimony, considered in light of the circumstances. Has the witness been contradicted by other evidence? Has he or she made statements at other times and places contrary to what he or she said on the witness stand? You must give the testimony of each witness the amount of credibility that you think it deserves.

You must also keep in mind, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth. You must consider whether any misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

### 2.2       Objections of Counsel

As I have told you previously, the attorneys in this case are advocates for their competing clients, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of this Court. When the Court sustained an objection to a question

addressed to a witness, you must disregard that question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer. If the objection was overruled, then you may treat the answer to that question just as you would treat the answer to any other question as if the objection had not been made. By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

Now, at times during the trial it was necessary for the Court to talk with the lawyers outside of your hearing at the bench, or by calling a recess and talking to them while you were out of the courtroom. This happened because often during a trial, something comes up that does not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence.

### 2.3    Direct and Circumstantial Evidence

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented, both direct and circumstantial.

### 2.4    Stipulated Facts

The parties have stipulated or agreed to some facts in this case. When the lawyers on both sides stipulate as to the existence of a fact, then you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proven. These facts are not in dispute between the parties.

### 2.5    Interrogatories

Evidence has been presented to you in the form of answers of one or more of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers read to you as if they were made from the witness stand.

### 2.6    Testimony by Deposition

Certain testimony in the case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial.

If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition. Before this trial began, the attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded their sworn testimony. Deposition testimony is entitled to the same consideration by you as testimony given by a witness in-person from the witness stand in open court. Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you in open court.

### 2.7    Reasonable Inferences from Evidence

Now, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. However, you should not base your decision on any evidence not presented by the parties during this case, including your own personal experience with any products that are at issue in the case.

### 2.8    Sufficiency of Testimony

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the evidence, you believe that single witness.

### 2.9    Expert Witnesses

When knowledge of certain technical or specialized subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an "expert witness"—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide whether to rely upon it or not.

### 2.10    Demonstratives

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's description, picture, or model used to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits are sometimes called "jury aides." Demonstrative exhibits themselves are not evidence, but a witness's testimony during which they use a demonstrative exhibit is evidence. Demonstrative exhibits will not be available for you to view during your deliberations.

3.      **Burdens of Proof**

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on the Plaintiff for some issues and on the Defendants for other issues. There are two burdens of proof that you will apply in this case: "preponderance of the evidence" and "clear and convincing evidence."

The Plaintiff in this case, Touchstream Technologies, Inc. which you have heard referred to throughout the trial as "Plaintiff," "Touchstream," or "Shodogg," has the burden of proving patent infringement by a preponderance of the evidence. [Touchstream also has the burden of proving willful patent infringement by a preponderance of the evidence.] Touchstream has the burden of proving damages for any patent infringement by a preponderance of the evidence. [Touchstream also has the burden of proving willful patent infringement by a preponderance of the evidence.] A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

The Defendants in this case, Comcast Cable Communications, LLC, doing business as Xfinity, Comcast Corporation, Comcast Cable Communications Management, LLC, and Comcast of Houston, LLC, which you have heard referred to throughout the trial as "Defendants" or "Comcast," have the burden of proving the invalidity [and ineligibility] of Touchstream's patent claims by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions is highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. [If proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.]

Now, as I've previously told you, ladies and gentlemen, these two burdens of proof are not to be confused with the burden of proof known as "beyond a reasonable doubt," which is the burden of proof applied in a criminal case, not in a civil case such as this. Beyond a reasonable doubt is a higher standard than both the preponderance of the evidence and clear and convincing evidence standards.

4.    **Summary of the Positions of the Parties**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously advised you, this is an action for patent infringement. Touchstream contends that Comcast infringes certain claims of the patents-in-suit. Remember, there are three patents-in-suit: United States Patent No. 8,356,251, which you have heard referred to as the "'251 Patent"; United States Patent No. 11,048,751, which you have heard referred to as the "'751 Patent"; and United States Patent No. 11,086,934, which you have heard referred to as the "'934 Patent." I may also refer to these as the "Asserted Patents."

Touchstream contends that Comcast infringes the following claims of the patents-in-suit: Claims 1, 5, 7, 8, and 9 of the '251 Patent; Claims 12, 13, and 14 of the '751 Patent; and Claims 17, 18, 19, and 20 of the '934 Patent. These are the "Asserted Claims." Touchstream contends that Comcast has infringed the Asserted Claims by performing the methods described in the Asserted Claims when a subscriber uses the Xfinity TV Remote Application to [deliver media (such as video) to customers through a] [remote tune an] X1 set-top box, which you have heard referred to as a "STB." I will refer to Comcast's X1 STBs used in conjunction with the Xfinity TV Remote mobile application as the "Accused Functionalities." Touchstream [alleges that Comcast's infringement of the Asserted Patents was willful. Touchstream] contends that it is entitled to money damages in the form of a reasonable royalty for Comcast's alleged infringement. Touchstream [further alleges that Comcast's infringement of the Asserted Patents was willful. Touchstream] has the burden to prove these issues by a preponderance of the evidence.

Comcast denies that it infringes any of the Asserted Claims because it does not perform the methods described in the Asserted Claims. Comcast denies that it owes Touchstream any

money damages. Comcast also denies any willful infringement of any of the Asserted Claims.

Further, Comcast contends that the Asserted Claims of the patents-in-suit are invalid as being anticipated or obvious in light of the prior art. Comcast also contends that the Asserted Claims of the patents-in-suit are invalid for failure to satisfy the written description requirement. Invalidity is a defense to infringement, and Comcast has the burden to prove invalidity by clear and convincing evidence. [Comcast also contends that the Asserted Claims of the Asserted Patents claim subject matter that is ineligible for patent protection. Patent ineligibility is a defense to infringement. Comcast has the burden to prove patent ineligibility by clear and convincing evidence.] [Comcast further contends that all the elements used by the Asserted Claims were well-understood, routine and conventional.]

Your job is to decide whether Comcast has infringed the Asserted Claims[, whether that infringement, if you find it, was willful,] and whether the Asserted Claims are invalid. If you decide that any Asserted Claim has been infringed and is not invalid, you will then need to decide the amount of money damages [, if any,] to be awarded to Touchstream to compensate it for the infringement. [Then, for any Asserted Claim found infringed and not invalid, you must decide whether that infringement was willful.] If you decide that there was any infringement and that it was willful, that decision should not affect any damages award you make. I will take willfulness into account later, if you find it.

5.        **Claims and Claim Construction**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of the patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims themselves that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers. You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I have provided to you my definition of terms used in the claims. This definition can be found in your juror notebooks. You must accept my definition of these words in the claims as being correct. It is your job to take this definition and apply it to the issues that you are deciding, including the issues of infringement and invalidity.

You should disregard any evidence presented at trial that contradicts or is inconsistent with the construction and definition that I have given you. For claim limitations that I have not construed—that is, limitations that I have not interpreted or defined—you are to use the plain and ordinary meaning of the limitations as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent, at the time of the alleged invention. The meaning of the words of the patent claims must be the same when deciding both infringement and invalidity. You have been provided with copies of the Asserted Patents, which are inside your juror

notebooks, and you may use them in your deliberations.

Several times in my instructions, I have referred or will refer to a person of ordinary skill in the field of the invention, or a person of ordinary skill in the art. In deciding the level of ordinary skill in the art, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor or other persons actively working in the field; (2) the types of problems encountered in the field; (3) previous solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually.

I will now explain how a claim defines what it covers. A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a method meets all the requirements of a claim, the claim is said to "cover" that method, and the performance of that method is said to "fall" within the scope of that claim. In other words, a claim covers a method where each of the claim elements or limitations is performed. There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.

If a method satisfies each of these requirements, then it is covered by the claim.  If a method is missing even one limitation or element of a claim, the method is not covered by the claim. If the method is not covered by the claim, that method cannot infringe that claim. A claim sets forth all the requirements of the claim, so if something is not recited by the claim language, it

is not required for infringement or invalidity.

The beginning portion, or preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that the Accused Functionalities perform all the requirements of that claim, the claim is infringed. This is true even if the Accused Functionalities perform additional elements.

[For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also contains other structures, such as leaves that would go in the tabletop or wheels that would go on the ends of the legs.]

### 5.1    Independent and Dependent Claims

This case involves two types of patent claims: independent claims; and dependent claims.

An independent claim does not refer to any other claim in the patent. An independent claim sets forth all the requirements that must be met in order to be covered by the claim. It is not necessary to look to any other claim to determine what an independent claim covers.

A dependent claim does not itself recite all the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all the requirements of the claim to which it refers or, stated alternatively, from which it depends. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A method that uses all the requirements of both the dependent claim and the claims to which it refers is covered by that dependent claim.

For the '251 Patent, claim 1 is an independent claim, claims 5, 7, and 8 are dependent claims that depend from independent claim 1, and claim 9 is a dependent claim that depends from

claim 8, which in turn depends from independent claim 1.

For the '751 Patent, claim 12 is an independent claim, claims 13 and 14 are dependent claims that depend from independent claim 12.

For the '934 Patent, claim 17 is an independent claim, and claims 18, 19, and 20 are dependent claims that depend from independent claim 17.

**6.      Infringement**

I will now instruct you on infringement in more detail. If a person or corporation performs within the United States a method covered by a patent claim without the patent owner's permission, that person or corporation is said to infringe the patent claim.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another claim. You must compare the Asserted Claims to Accused Functionalities and determine whether or not there is infringement. This is the only correct comparison.

You should not compare the Accused Functionalities with any specific examples set out in the patent, the prior art, or Touchstream's own products in reaching your decision on infringement. In deciding infringement, the only correct comparison is between the Accused Functionalities and the limitations of the claims as the Court has construed them. You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

**6.1      Direct Infringement**

I will now instruct you on the specific rules you must follow to determine whether or not Touchstream has proven that Comcast has directly infringed any of the Asserted Claims.

[A patent can be directly infringed even if the alleged direct infringer did not have knowledge of the patent and did not know that what it did was infringement of the claim. A patent may also be directly infringed even though the alleged direct infringer believed in good faith that what it did was not an infringement of the patent. Infringement does not require proof that a party copied its product from the Asserted Claims. There is no intent element to direct infringement.

Evidence of independent development is not relevant to an infringement determination. Copying is not a required element of infringement. Even if the party independently creates the accused functionality, it can still infringe for purposes of finding infringement, the proper comparison is between the language of the Asserted Claims and the Accused Functionalities. The fact that Comcast has its own patents is not to be considered when making this comparison.]

[Touchstream only asserts method claims. The fact that [a product] an apparatus has the capability of performing all of the steps of the claimed method is not enough to show infringement. In order to prove direct infringement of an Asserted Claim, Touchstream must show by a preponderance of the evidence that the use of the Accused Functionalities results in performance of each and every step of the claimed method.] In determining whether use of the Accused Functionalities directly infringes a patent claim in this case, you must compare use of the Accused Functionalities with each and every one of the required steps of that claim to determine whether such use performs each and every step recited in the claim. Infringement of a method claim occurs only where all the steps of a claimed method are performed or are attributable to a single party.

A claim step is literally met if Comcast performs the step just as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by its plain and ordinary meaning to one of ordinary skill in the art. [If Comcast does not perform a single step recited in a claim, then you must find that it does not literally infringe that claim.] So long as an Accused Functionality performs each and every one of the claim steps, infringement of that claim is shown, even if the Accused Functionalities perform additional steps not required by the claim.

You must determine, separately for each Asserted Claim, whether or not there is infringement. However, if you find that an independent claim on which other claims depend is not

infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets additional requirements of any claims that depend from the independent claim; that is, whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

## 6.2    Willfulness

Touchstream also contends that Comcast has willfully infringed the patents-in-suit.

If you decide that Comcast has infringed, you must go on to address the issue of whether or not that infringement was willful. Touchstream has the burden of proving willful infringement by a preponderance of the evidence. You may not determine that the infringement was willful just because Comcast knew of the Asserted Patents and infringed them. You may find that Comcast willfully infringed if you find that Comcast deliberately or intentionally infringed the Asserted Patents.

To determine whether Comcast acted willfully, consider all the facts and assess Comcast's knowledge at the time of the challenged conduct. Specifically, Touchstream contends that Comcast willfully infringed the '251 Patent before the filing of this lawsuit until today, and Comcast willfully infringed the '751 and '934 Patents beginning with the filing of this suit through today.

Facts that may be considered include whether or not Comcast reasonably believed it did not infringe or that the Asserted Patents were invalid. You may find that Comcast's actions were deliberate or intentional if Comcast was willfully blind to Touchstream's patent rights. You may find that a defendant is willfully blind when it is indifferent to the rights of another or when it proceeds in disregard of a high or excessive danger of infringement that is known to it or would have been apparent to a reasonable person in its position.

Your determination of willfulness should incorporate the totality of the circumstances based on the evidence presented during this trial. Willfulness can be established by circumstantial evidence. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later if you find it.

7.    **Invalidity**

I will now instruct you on the rules you must follow in deciding whether or not Comcast has proven that any Asserted Claims of the Asserted Patents are invalid.

**7.1    [Invalidity – Burden of Proof**

An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've heard referred to throughout this trial as the "PTO" or sometimes just the "Patent Office," acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents.

In order to overcome this presumption.] Comcast must establish by clear and convincing evidence that a claim is invalid. [A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not Comcast has proven that the patent is invalid.] Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, this does not mean that any other claim is necessarily invalid. Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity. In making your determination as to invalidity, you should consider each claim separately. If you find that an independent claim is invalid, you must separately consider whether any dependent claim or claims that depend from it are also invalid. However, when considering anticipation or obviousness, if you find that an independent claim is not obvious, you cannot find that its dependent claims are obvious.

In this case, Comcast contends that the Asserted Claims are invalid for several reasons:

first, because they are anticipated by the prior art; second, because they are obvious over the prior art, and third because they fail to comply with the written description requirement. [Comcast further contends that the Asserted Claims of the Asserted Patents claim subject matter that is ineligible for patent protection.] [Comcast further contends that all the elements used by the Asserted Claims were well-understood, routine and conventional.]

### 7.2    Prior Art

A previous device, system, method, publication, or patent that predates the claimed invention is generally called "prior art," and may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. Prior art may be authored or created by anyone.

[In evaluating the prior art to determine whether an invalidity defense has been proven by clear and convincing evidence, you may consider whether that prior art was or was not before the PTO.]

[The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, a patent contains a list of certain prior art that the examiner has reviewed and considered. The items on this list as reflected in the patent are called the cited references. If the examiner has not reviewed a particular piece of prior art, you may consider this fact when determining invalidity. And, if the PTO did not have all material facts before it, then the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain.

In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do, and no process is perfect. Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to

infringe the patent. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not Comcast has proven that the Asserted Claims are invalid.

Further, where an alleged infringer is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear and convincing burden of proving invalidity.]

Comcast relies on the following references as prior art:

- U.S. Patent No. 9,294,800 (or "McMahon");

- The 2010 Xfinity TV Mobile Application (or the "2010 Xfinity TV App System");

- U.S. Patent Publication No. 2004/0078812 (or "Calvert");

- and U.S. Patent No. 8,660,545 (or "Redford").

[None of these references were cited or considered by the PTO examiners during the prosecution of the Asserted Patents.]

[It is Comcast's burden to show by clear and convincing evidence that these references disclose each and every passage or claim element or limitation that Comcast contends invalidates any claim of the Asserted Patents.  If you conclude that Comcast has not met that burden, then the reference is not prior art and it cannot invalidate any asserted claims.]

### 7.3    Types of Prior Art

You must determine whether the prior art on which Comcast relies is prior art that can be considered in determining whether Asserted Claims are anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Comcast contends that the 2010 Xfinity TV App System, Redford, and Calvert are prior art because each was known to or used by others in the United States or patented or described in a printed publication anywhere in the world before the alleged date of invention of the Asserted Claims. A prior art invention is known when the information about it was reasonably accessible to the public on that date.  [A description is a "printed publication" only if it was publicly accessible.]

Comcast also contends that Redford and Calvert are prior art because each was already patented or described in a printed publication anywhere in the world more than a year before April 21, 2011, which is the effective filing date of the applications for the Asserted Patents.

[Comcast further contends that McMahon, Redford, and Calvert are prior art because each is a patent granted on a provisional application for a patent filed in the United States before the alleged date of invention of the Asserted Claims. In particular, Comcast contends that McMahon is prior art based on a provisional patent application to which is claims priority. In order to claim priority to the date of the provisional application, the subject matter which invalidates the Asserted Claims must be described in the provisional application and the provisional application must provide adequate written support for at least one claim in the subsequent patent application.]

Additionally, Comcast contends that McMahon, the 2010 Xfinity TV App System, Redford, and Calvert are each prior art because they were made by someone else in the United States before the invention was made by David Strober, and the other person did not abandon, suppress, or conceal the invention. For someone else to have made the claimed invention before David Strober, they must have either (1) reduced the invention to practice before David Strober's alleged invention date, or (2) conceived of the claimed invention before David Strober and exercised diligence in reducing it to practice starting before David Strober's conception date.

In this case, you must determine the date of invention and/or reduction to practice for

the claimed invention or alleged prior art.

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventor was diligent in reducing the invention to practice. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. Diligence means working continuously, though not necessarily every day. A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application that fully describes the invention.

[Oral testimony alone is insufficient to prove prior invention or that something is prior art. A party seeking to prove prior invention or prior art also must provide evidence that corroborates any oral testimony, especially where the oral testimony comes from an interested witness, or a witness testifying on behalf of an interested party.

This includes any individual or company testifying that his, her, or its invention predates the patent-in-suit.

Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that an inventor's testimony or an alleged prior art inventor's testimony has been corroborated.

[Comcast must prove by clear and convincing evidence that alleged prior art is prior art.]

**7.4     Anticipation**

[The Defendants contend that the Asserted Claims are invalid because the claimed inventions are not new. In other words, the Defendants contend that the patent is anticipated by the prior art. Anticipation requires that all the requirements of a patent claim be disclosed in a single prior art reference.

Also, the single prior art reference must disclose all elements of the claim arranged or combined in the same way as in the claim. Defendants must prove with clear and convincing evidence that an asserted patent claim was anticipated by the prior art reference.

Anticipation must be determined on a claim-by-claim basis.

Now, to anticipate the invention, the prior art does not have to use the same words as the claim, but all the requirements of the claim must have been disclosed, either stated expressly or implied, to a person having ordinary skill in the art in the field of the technology of the invention so that looking at that one reference that person of ordinary skill could make and use the claimed invention.

Now, keep in mind that Comcast may not establish anticipation by arguing that the Accused Functionalities practice the prior art or by comparing the Accused Functionalities to a prior art reference. An item of prior art may anticipate without explicitly disclosing a feature of the claimed invention if that missing characteristic is necessarily present or inherent in the single anticipated reference.]

[I'll now instruct you on how to determine whether any of the Asserted Claims of the

47

Asserted Patents are invalid as anticipated. In order for someone to be entitled to a patent, the invention must actually be "new." Comcast contends that the Asserted Claims are invalid because the claimed invention is not new. In other words, Comcast contends that the Asserted Claims are anticipated by the prior art. Comcast must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the Asserted Claims are invalid.

Specifically, Comcast contends that the following pieces of prior art anticipates the Asserted Claims:

- U.S. Patent No. 9,294,800 (or "McMahon");

- The 2010 Xfinity TV Mobile Application (or the "2010 Xfinity TV App System");

- and U.S. Patent No. 8,660,545 (or "Redford").

Anticipation must be determined on a claim-by-claim basis and all of the requirements of a claim must be present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.]

### 7.5    Obviousness

I will now instruct you on how to determine whether any of the Asserted Claims that were challenged on prior art grounds are invalid as obvious.

Even though an invention may not have been disclosed or described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must also not

have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Comcast [has the burden of establishing obviousness] [may establish that a patent claim is invalid] by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made.  In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the art that someone would have had at the time the claimed invention was made, the scope and content of the prior art relied on by Comcast, and any differences between the prior art and the claimed invention. Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. [The skill of the actual inventor is not necessarily relevant because inventors may possess something that distinguishes them from persons having ordinary skill in the art.]

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art. The scope and content of the prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Further, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ. A person of ordinary skill may be able to fit the teachings of multiple pieces of prior art together like pieces of a puzzle. The person of ordinary skill in the art would have the capability of understanding the scientific and engineering principles

applicable to the pertinent art.

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as:

1.   Whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2.   Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3.   Whether the prior art teaches or suggests the desirability of combining elements in the claimed invention;

4.   Whether the prior art teaches away from combining elements in the claimed invention;

5.   Whether it would have been obvious to try the combination of elements in the claimed invention, such as when there is a design need or market pressure to solve a problem, and there are a finite number of identified, predictable solutions; and

6.   Whether the change resulted more from design incentives or other market forces.

To find the invention obvious, you must also find that the [prior art provided a] person with ordinary skill in the field [would have had] a reasonable expectation of success when combining the prior art references. [This does not require absolute predictability or guaranteed success and a possibility of failure does not mean that there no reasonable expectation of success.] [Simply being "obvious to try" is not sufficient in unpredictable technologies.]

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight; consider only what was known at the time of the invention. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teachings of the Asserted Patents.

In making these assessments, you should take into account any objective evidence,

sometimes called "secondary considerations," that may have existed at the time of the invention, and afterwards, that may shed light on the obviousness or not of the claimed invention. The following are possible secondary considerations, but it is up to you to decide whether secondary considerations of non-obviousness exist at all:

1. Whether the invention was commercially successful as the result of the merits of the claimed invention, rather than the result of design needs or market pressure, advertising, or similar activities;

2. Whether the invention satisfied a long-felt need;

3. Whether the inventor proceeded contrary to accepted wisdom in the field;

4. Whether others tried, but failed, to solve the problem solved by the claimed invention;

5. Whether others invented the invention at roughly the same time;

6. Whether others copied the claimed invention;

7. Whether others accepted licenses under the patents-in-suit because of the merits of the claimed invention;

8. Whether the claimed invention achieved unexpected results;

9. Whether others in the field praised the claimed invention;

10. Whether there were changes or related technologies or market needs contemporaneous with the invention; and

11. Whether persons having ordinary skill in the art expressed surprise or disbelief regarding the invention.

These factors are relevant only if there is a connection, or "nexus," between the factors and what differentiates the claimed invention from the prior art. Touchstream has the burden of establishing this connection or "nexus." [If Touchstream has not established a nexus between the purported secondary considerations and the alleged claimed invention, then the secondary considerations are not relevant to the obviousness analysis.] Moreover, even if you conclude that some of the above indicators of objective evidence have been established, those factors should be

considered along with all the other evidence in the case in determining whether Comcast has proven that the claimed invention would have been obvious.

[Now, in support of obviousness, you may also consider whether others independently invented the claimed invention before or at about the same time as the named inventor thought of it. In making these determinations, a person of ordinary skill uses simple common sense and can rely upon the inferences and creative steps that a person of ordinary skill in the art would employ.

Also, Comcast does not need to show that one of ordinary skill would have actually combined the physical structures of two references; one need only combine the teachings. Remember, and as stated earlier, that prior art is not limited to patents and published materials but includes the general knowledge and systems that would have been available at the time to one of ordinary skill in the field of the invention.]

When considering obviousness, if you find that an independent claim is not obvious, you cannot find that its dependent claims are obvious.

### 7.6    Written Description

[Comcast also contends that the Asserted Claims are invalid for failure to satisfy the written description requirement.  As I previously explained, to obtain a patent, one must first file an application with the United States Patent and Trademark Office, or the PTO. The process of obtaining a patent is called "patent prosecution." The application submitted to the PTO includes within it what is called a "specification." The specification is required to contain a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The written description requirement is designed to ensure that the inventor was in possession of the full scope of the claimed invention as of the patent's priority date.]

[The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in

possession of the full scope of claimed invention as of the patent's effective filing date. Comcast contends that the Asserted Claims are invalid because the specification common to each of the Asserted Patents does not contain an adequate written description of the invention.]

To succeed on its claims of lack of adequate written description, Comcast must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the effective filing date of April 21, 2011 would not have recognized that it describes the full scope of the invention as it is finally claimed in Asserted Claims. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date of the patents. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. [It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.]

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s). However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology,

and other considerations appropriate to the subject matter. The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or group of claims.

### 7.7    Patent Eligibility

The next question you will decide relates to patent eligibility. In that regard, Comcast must show by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the date of invention. In determining whether a patent claim involves well-understood, routine, and conventional technology to a person of ordinary skill in the art, you should consider all the evidence presented during the trial, including the testimony of the witnesses as well as the exhibits introduced, including the specifications contained within the Asserted Patents.

Whether a particular technology was well-understood, routine, and conventional goes beyond what was known in the prior art. The mere fact that something is disclosed in a piece of prior art does not mean that it was well-understood, routine, and conventional. At the same time, the specification of the Asserted Patent may be such evidence, if you find that the specification shows that the elements of the Asserted Claims involve only technology which a person of ordinary skill in the art would have considered as well-understood, routine, and conventional.

8.    **Patent Damages**

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Comcast has not infringed any valid Asserted Claim, then Touchstream is not entitled to any damages. However, if you find that Comcast has infringed any valid Asserted Claim, you must then consider what amount of damages [, if any,] to award to Touchstream.

8.1    **Damages Introduction**

The damages period for any infringement of the '251 Patent in this case begins on February 17, 2017[, and runs through the present]. The damages period for any infringement of the '751 Patent in this case begins on June 29, 2021[, and runs though the present]. The damages period for any infringement of the '934 Patent in this case begins on August 10, 2021[, and runs through the present].

Touchstream has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Touchstream establishes that it more likely than not suffered as a result of Comcast's infringement. While Touchstream is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. Touchstream is not entitled to damages that are [remote or that are only speculative] [speculative, damages that are only possible, or damages that are based on guesswork].

[Any doubts that you may have on the issue of damages due to Comcast's failure to keep proper records should be decided in favor of Touchstream. Any confusion or difficulties caused by Comcast's records also should be held against Comcast, not Touchstream.]

[Further, every Asserted Claim in this case is a method claim. A method claim is not infringed unless a defendant performs each and every requirement or limitation of that claim. The

55

Asserted Claims cannot be infringed by the mere sale or distribution of a product capable of performing the claimed method. Damages for a method claim must be correlated to the extent the infringing method is used.

Therefore, because mere capability is not enough, Touchstream cannot simply count the number of set-top boxes capable of being used with the Accused Functionalities as the basis for calculating damages. Damages should be limited to products that were actually used to perform the claimed method or a reasonable approximation thereof.]

The damages you award [, if any,] must be adequate to compensate Touchstream for any infringement you may find. You must not award Touchstream more damages than are adequate to compensate for the infringement. You also must not include any additional amount for the purpose of punishing Comcast or setting an example.

## 8.2    Type of Royalty

A reasonable royalty can be paid either in the form of a "running royalty" or a one-time lump sum payment.  [It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.]

[Touchstream is seeking a running royalty. A running royalty is a fee paid for the right to use the patent that is paid, for example, for infringing uses. If Comcast infringes in the future, any damages for these infringements would not be addressed by you. The damages that you award should reflect the total amount necessary to compensate Touchstream for Comcast's past infringement.] [Reasonable royalty awards may also take the form of a running royalty. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the approximate number of products that use the method by a royalty amount per use.]

A lump sum royalty is equal to an amount that Comcast would have paid at the time of a hypothetical negotiation for a license covering all use of the method, both past and future. When

a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing use.  If you decide that a lump sum is appropriate, then the damages you should award, if any, should reflect the total amount necessary to compensate Touchstream for Comcast's infringement throughout the life of the patents.

### 8.3    Reasonable Royalty Overview

I will now instruct you on how to calculate reasonable royalty damages.  [The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty. If you find that Touchstream has established patent infringement and that Comcast has not established patent invalidity, Touchstream is entitled to at least a reasonable royalty to compensate it for that infringement.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.] A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. [Although evidence of the actual profits an alleged

infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.]

### 8.4    Apportionment

The law requires that any royalty awarded to Touchstream correspond to the value of the alleged inventions as distinct from other unpatented features, [or other factors such as marketing or advertising, or the infringer's size or market position. This is particularly true where the accused product has multiple features and multiple components not covered by the patent or where the accused product works in conjunction with other non-patented items. If unpatented features contribute to the Accused Functionalities, you must apportion that value out so as to exclude any value attributable to unpatented features.] The amount you find as damages must be based on the value attributable to the patented technology alone and exclude any value attributable to unpatented features. You must therefore determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone. Touchstream bears the burden to establish the amounts attributable to the patented features.

### 8.5    Factors

In determining the reasonable royalty, you should consider all the facts known and available to the parties [at the time the alleged infringement began].

Some of the factors that you may consider in making your determination are:

1. The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty;

2. Royalties paid by the licensee for the use of other patents comparable to the patents-in-suit. [Comparable license agreements include those covering the use of the claimed invention or similar technology];

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.  Whether the patent owner had an established policy of granting licenses or retaining the patented invention as its exclusive right or whether the patent owner had a policy of granting licenses under special conditions designed to preserve its exclusivity;

5.  The nature of the commercial relationship between the patent owner and licensee, such as whether they are competitors in the same territory in the same line of business;

6.  The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the patent owner as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.  The duration of the patent and the term of the license;

8.  The established profitability of the product made under the patents, its commercial success, and its current popularity;

9.  The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for working out similar results;

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. The opinion and testimony of qualified experts as to what a reasonable royalty would be; and

15. The amount that a licensor (such as the patent holder) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to the patent owner who was willing to grant a license.

You may have heard these factors referred to as the "Georgia-Pacific factors." No one factor is dispositive, and you can and should consider the evidence that has been presented to

you in this case on each of these factors. You may also consider any other factors which, in your mind, would have increased or decreased the royalty the alleged infringer would have been willing to pay, and the patent holder would have been willing to accept, acting as normally prudent business people.

### 8.6    Comparable Licenses

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

### 8.7    [No Punitive Damages

As I have already told you, you must not award the patent owner any additional amount for the purpose of punishing the infringer or setting an example. You must not consider any allegations of willfulness in considering damages. Consideration of willfulness is entirely separate from the question of damages. You may not increase damages because you find willfulness or decrease damages because you did not find willfulness. I will take your decision regarding the issue of willfulness into account later.]

## 9.    Willfulness

If you decide that Comcast has infringed a valid Asserted Claim, you must go on to address the issue of whether or not that infringement was willful. Touchstream has the burden of proving willful infringement by a preponderance of the evidence. You may not determine that the infringement was willful just because Comcast knew of the Asserted Patents and infringed them. You may find that Comcast willfully infringed if you find that Comcast deliberately or intentionally infringed the Asserted Patents.

To determine whether Comcast acted willfully, consider all the facts and assess Comcast's knowledge at the time of the challenged conduct. Facts that may be considered include whether or not Comcast reasonably believed it did not infringe or that the Asserted Patents were invalid. The facts relevant to willfulness, such as knowledge of infringement or belief that a claim is not infringed or is invalid, can change over time, so you should determine willfulness on a period-by-period basis. For the '251 patent, you should examine willfulness during two periods: (1) first, between February 17, 2017 and February 16, 2023, and (2) second, after Touchstream filed suit on February 17, 2023. For the '751 and '934 patents, you may only consider willfulness after Touchstream filed suit on February 17, 2023.

You may not assume that merely because Comcast did not obtain a legal opinion about whether it infringed the Asserted Patents, that the opinion would have been unfavorable. The absence of a legal opinion may not be used by you to find that Comcast acted willfully. Rather, the issue is whether, considering all the facts, Touchstream has established that Comcast's conduct was willful.

Your determination of willfulness should incorporate the totality of the circumstances based on the evidence presented during this trial. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account

61

later if you find it.

By instructing you on willfulness, I am not suggesting which party should win this case, on any issue.]

\* \* \*

Now, with those instructions, we're ready to hear closing arguments from the attorneys in this case.

\* \* \*

**10.    Final Jury Instructions**

I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict regardless of the consequences.

Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly. Again, I remind you, your answers and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect his rights under the laws of the United States. This includes bringing suit in a United States District Court for money damages for infringement. The same guarantees allow an accused party to vigorously defend against assertions of infringement and also allow an accused party to assert that the patent claims are invalid. The law recognizes no distinction among types of parties. All

corporations, partnerships, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you. If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or exhibits to you. Once you retire, you should select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your Foreperson is to fill in the verdict form in a manner which reflects your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, you should give a message or question written by the Jury Foreperson to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom, so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

I will now hand the verdict form and eight copies of these instructions to the Court Security Officer to deliver to the jury room.

Ladies and Gentlemen, you may now retire to the jury room to deliberate. We await your verdict.