# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **TOUCHSTREAM TECHNOLOGIES, INC.,** | |
| *Plaintiff,* | |
| *v.* | |
| **CHARTER COMMUNICATIONS, INC. et al.,** | Case No. 2:23-cv-00059-JRG |
| *Defendants.* | |

## PRELIMINARY JURY INSTRUCTIONS[1]

---

[1]    Submissions that are agreed to by both Touchstream and Charter are not highlighted. Submissions proposed by Touchstream that are not agreed to by Charter are bracketed and highlighted in green. Submissions proposed by Charter that are not agreed to by Touchstream are bracketed and highlighted in blue. The parties have entered their objections, explanations, citations, and commentary in footnotes only.

The parties reserve their respective rights to further object or propose new instructions based on their pending motions or further development at trial.

## PRELIMINARY INSTRUCTIONS

Ladies and Gentlemen of the Jury: Before you hear the evidence in this case, I have some preliminary instructions that I need to give you on the record before we start with opening statements from the attorneys and then go on to the evidence.

You've now been sworn as the jurors in this case. And as the jury, you are the sole judges of the facts. As such, you will determine and decide all the facts in this case.

As the Judge, I'll give you instructions on the law, decide questions of law that might arise during the trial, handle matters related to evidence and procedure, as well as being responsible for the efficient flow of the evidence and maintaining the decorum of the courtroom.

At the end of the evidence, I'll give you detailed instructions about the law to apply in deciding this case, and I'll give you a list of questions that you are then to answer. This list of questions is called the verdict form. Your answers to those questions will need to be unanimous, and those unanimous answers will constitute the jury's verdict in this case.

Now, let me briefly talk with you about what this case concerns. This case involves a dispute regarding three United States patents. Now, I know that each one of you saw the patent video this morning prepared by the Federal Judicial Center, but I need to give you some instructions now and on the record about how one is obtained.

Patents are either granted or denied by the United States Patent and Trademark Office, which you will hear referred to in shortened form simply as the PTO, or as the Patent Office. A valid United States patent gives the patentholder the right for up to 20 years from the date the patent application is filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States or importing it into the United States without the patentholder's permission.

A patent is a form of property called intellectual property and, like with other forms of

property, a patent can be bought or sold.

A violation of the patentholder's rights is called infringement. The patentholder may try to enforce a patent against persons it believes to be infringers by filing a lawsuit in federal court, and that's what we have in this case.

Now, the process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO, the United States Patent and Trademark Office. The PTO, ladies and gentlemen, is an agency of the United States government that employs trained examiners who review patent applications.

The application filed with the PTO includes within it something called a specification. The specification contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes or ends with one or more numbered sentences. These numbered sentences at the end of the patent are called the patent claims.

When a patent is granted by the Patent Office, the claims define the boundaries of its protection and it is the claims that give notice to the public of those boundaries.

Now, patent claims may exist in two forms referred to as independent claims and dependent claims. An independent claim does not refer to any other claim in the patent. It is independent. It's not necessary, ladies and gentlemen, to look to any other claim within the patent to determine what an independent patent claim means.

However, a dependent claim refers to at least one other claim in the patent. A dependent claim includes all of the elements or limitations of that other claim or claims to which it refers or, as is sometimes said, from which it depends, as well as the additional elements or limitations recited within the dependent claim itself. Accordingly, to determine what a dependent patent claim

covers, it's necessary to look at both the dependent claim itself and the independent claim or claims from which it refers or, as we sometimes say, from which it depends.

Now, the claims of the patents-in-suit use the word 'comprising.' Comprising means including or containing. A claim that includes the word 'comprising' is not limited to the methods or devices having only the elements that are recited in the claim, but also covers other methods or devices that include or add additional elements.

Let me give you an example. Take, if you will, the example of a table. If a claim recites a table comprising a tabletop, legs, and glue, the claim will cover any table that contains those structures, even if the table also contains other or additional structures such as leaves to expand the size of the tabletop or wheels to go on the ends of the legs. Now, that's a very simple example using the word 'comprising' and what it means. In other words, it can have other features in addition to those that are covered by the patent.

After the applicant files his or her application with the Patent Office, an examiner is assigned and the examiner reviews the application to determine whether or not the claims are patentable—that is to say, appropriate for patent protection, and whether or not the specification adequately describes the invention that's claimed.

In examining the patent application, the examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews this type of information that's publicly available or that might have been submitted by the applicant. And this type of information is called prior art. The examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time.

Now, prior art is defined by law, and I'll give you specific instructions at a later time as to what it constitutes. However, ladies and gentlemen, in general, prior art includes information

that demonstrates the state of the technology that existed before the claimed invention was made or before the application for a patent was filed with the Patent Office.

A patent contains a list of certain prior art that the examiner has reviewed and considered. The items on this list as reflected in the patent, are called the cited references.

Now, after the prior art search and an examination of the application, the examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable in which case it would be allowed. And this writing from the examiner to the applicant is called an office action.

Now, if the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try to persuade the examiner to allow the claims. The applicant also has a chance to change or amend the claims, or to submit new claims. And the papers generated in this back and forth between the examiner and the applicant are called the prosecution history.

And this process between the examiner and the applicant may go back and forth for some time until the examiner is satisfied that the application meets the requirements for a patent and, in that case, the application issues as a United States patent; or, in the alternative, if the examiner ultimately concludes that the application should be rejected, then no patent is issued.

Sometimes patents are issued after appeals from within the PTO or to a court.

Now, to help you follow the evidence, I'm going to give you a brief summary of the positions of the parties in this case.

As you know, the party that brings a lawsuit is called the plaintiff. And the Plaintiff in this case in this case is Touchstream Technologies, Inc., which you will hear referred to throughout the trial simply as the "Plaintiff" or you may hear it referred to simply as "Touchstream" or "Shodogg," which is another name the company used for a "doing business as" name. And as you

know, the party or parties against whom a lawsuit is brought are called the defendants, and in this case the Defendants are Charter Communications, Inc., Charter Communications Operating, LLC, Spectrum Management Holding Company, LLC, Time Warner Cable Enterprises, LLC, Spectrum Gulf Coast, LLC, and Charter Communications LLC, which you will hear referred to throughout the trial collectively together either as just the "Defendants" or as "Charter."

Now, as I told you during jury selection, this is a case of alleged patent infringement. And as I've mentioned, there are three United States patents that have been asserted in this case. Those are United States Patent No. 8,356,251, United States Patent No. 11,048,751, and United States Patent No. 11,086,934.  As you may have heard, patents are often referred to by the last three digits of their patent number.  So in this case, Patent No. 8,356,251, you'll hear referred to simply as the "'251 Patent"; you'll hear Patent No. 11,048,751 referred to as the "'751 Patent"; and you'll hear Patent No. 11,086,934 referred to as the "'934 Patent."

Now, these patents may be referred to and will be referred to throughout the trial at various times as the patents-in-suit. You may also hear them referred to collectively as the Asserted Patents. Those terms mean the same thing. The Asserted Patents in this case generally relate to technology controlling how to stream or cast content (like videos) from a mobile device (like a cellular phone) to a display device (like a television).

Now, the Plaintiff Touchstream contends that the Defendants Charter are infringing certain claims of the patents-in-suit by using Touchstream's patented technology in connection with Charter's products and services to its customers. Touchstream further contends that the Defendants' infringement is willful. And, additionally, Touchstream contends that it is entitled to money damages as a result of the infringement. Now, the Defendants in this case, Charter, deny that they are infringing any of the claims asserted by the Plaintiff in the patents-in-suit, and they

contend that the asserted claims of the patents-in-suit are invalid as being anticipated or obvious in light of the prior art, invalid based on a lack of sufficient written description, and invalid based on ineligible patent subject matter. Charter denies that it has willfully infringed any of the patents-in-suit, and Charter denies that Touchstream is entitled to any money damages.

Now, I know that there are many new words and new concepts that have been thrown at you, ladies and gentlemen, since you arrived for jury duty this morning. I'm going to define a lot of these words and a lot of these concepts for you as we go through these instructions. The attorneys on both sides of the case are going to discuss them in their opening statements which you'll hear in a few minutes. The witnesses over the course of the trial are going to help you as they go through their testimony to understand these words and these concepts.

So please, ladies and gentlemen, do not feel overwhelmed at this stage. I promise you it will all come together as we go through the trial.

Now, one of your jobs in this case is to decide whether or not the asserted claims of the patents-in-suit have been infringed [and whether or not such infringement was willful].[2] You will

---

[2] Touchstream: Consistent with this Court's practice in other cases, Touchstream proposes instructing the jury on willfulness after infringement (as opposed to providing willfulness instructions after damages as Charter proposes). *See, e.g.*, *Constellation Designs, LLC v. LG Electronics Inc.*, No. 2:21-cv-00448-JRG (E.D. Tex.) and *Netlist, Inc. v. Samsung Electronics Co.*, No. 2:21-cv-00463-JRG (E.D. Tex.). This is also consistent with the Federal Circuit Bar Association Model Jury Instructions, which instruct on willfulness as part of its infringement instructions. *See* Fed. Cir. Model Jury Instrs. at Instr. B.3. Moreover, Charter's request to condition a finding of willfulness on the jury's determination of invalidity is not tenable because (1) if issues relating to ineligibility are submitted to the jury, then it will not be possible for the jury to determine what patents, if any, it found invalid because the Court will ultimately determine ineligibility, and (2) having the jury determine willfulness in conjunction with infringement will avoid the possibility of a retrial on willfulness if the Court rejects a jury's finding of invalidity post-trial. Finally, Charter's concern that the jury will take willfulness into account when calculating damages is both speculative and can be mitigated through jury instructions telling the jury not to consider willfulness in calculating damages.

also be asked to decide whether or not certain of the Asserted Claims are invalid. Then if at least

one claim is infringed and not invalid, you will also need to decide at that point in time what

amount of money damages[, if any,]³ should be awarded to the Plaintiff to compensate it for

---

Charter: Charter objects to including the willfulness instruction prior to the instructions on invalidity and damages. Although Charter acknowledges the Federal Circuit's holding that "the factual components of the willfulness question should be resolved by the jury," *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016), it preserves the right to argue at an appropriate time that willfulness should be decided by the Court and not the jury. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 107 (2016) ("[Section 284] 'commits the determination' whether enhanced damages are appropriate 'to the discretion of the district court' and 'that decision is to be reviewed on appeal for abuse of discretion.'") (quoting *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014)); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) ("As the plain language of 35 U.S.C. § 284 makes clear, the issue of punishment by enhancement is for the court and not the jury. . . . The question of enhanced damages is addressed by the court once an affirmative finding of willfulness has been made.").

Charter proposes that should any willfulness instruction be given to the jury, it should be provided after instruction on invalidity. There cannot be willful infringement of any invalid claim and willfulness should not be discussed prior to the threshold issue of validity.  *See Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1379 (Fed. Cir. 2020) (recognizing belief of invalidity as a factor in the willfulness analysis). Further, the Court should resolve the issue of whether the claims recite an abstract idea prior to trial, such that the jury's finding that the claims recite well-known and conventional technology will be sufficient for a final finding of invalidity.  The possibility of a possible retrial on willfulness should invalidity be overturned is not a reason to ask the jury to answer the legally incorrect question of whether Charter willfully infringed an invalid patent claim.

Further, Charter proposes that the jury hears the Court's instructions on willful infringement after it hears the instructions on damages because the jury "may not allow that [willfulness] decision to affect the amount of any damages award you give for infringement."  *See* 2024 AIPLA Model Patent Jury Instructions at 57.  While the jury may consider any "deliberate or intentional infringement," it may not apply that finding to any damages award—those damages related to willfulness are determined by the court.  *See Eko Brands,* 946 F.3d at 1378 ("the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement, . . . [t]he question of enhanced damages is addressed by the court once an affirmative finding of willfulness has been made").

³ Touchstream:  Throughout these instructions, Touchstream proposes not including an "if any" qualifier in the damages instructions because if the jury finds infringement and does not find invalidity, then Touchstream is entitled to damages for that infringement and a zero verdict would be inconsistent with the jury's finding of infringement. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018) (citations omitted) ("While it is clear that Finjan failed to present

a damages case that can support the jury's verdict, reversal of JMOL could result in a situation in which Finjan receives no compensation for Blue Coat's infringement of the '844 patent. Ordinarily, 'the district court must award damages in an amount no less than a reasonable royalty' when infringement is found, unless the patent holder has waived the right to damages based on alternate theories. We therefore remand to the district court to determine whether Finjan has waived the right to establish reasonable royalty damages under a new theory and whether to order a new trial on damages.").

Indeed, Charter's own damages expert, W. Christopher Bakewell, nowhere opines that the record would support an award of zero dollars if Charter is found to infringe a valid patent, and instead calculates his own competing multi-million dollar royalty awards. As such, any damages award of zero would be reversed under clear Federal Circuit precedent, and the instructions should not present that erroneous option to the jury as Charter suggests. *See, e.g.*, Report of W. Christopher Bakewell at ¶ 14 ("A reasonable royalty appropriate to compensate Touchstream for Charter's alleged infringement of the patents-in-suit is less than $4.5 million. This is an aggregate amount for all three of the patents-in-suit, and it is a lump-sum royalty that relates to the statutory lives of the patents-in-suit.").

==Charter==: Charter objects to Touchstream's proposal to delete "if any" from damages instructions. Such "if any" language has been included in the damages instructions in other cases in this District. *See, e.g.*, *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-CV-00310-JRG, Dkt. 534 at 35, 58-59, 64-65 (E.D. Tex. May 30, 2023); *Finesse Wireless LLC v. AT&T Mobility LLC*, No. 2:21-cv-316, Dkt. No. 286 at 14, 33-34, 36 (E.D. Tex. Feb. 27, 2023); *Seagen, Inc. vs. Daiichi Sankyo Co.*, No. 2:20-cv-337-JRG, Dkt. 378 at 66, 88 (E.D. Tex. April 13, 2022); *Salazar v. AT&T Mobility LLC*, No. 2:20-cv-00004-JRG, Dkt. 257 at 31 (E.D. Tex. Sept. 20, 2021). For good reason: this language avoids giving the jury an impression that it *must* award damages. Contrary, to Touchstream's argument, even if a jury finds infringement, the jury can still award zero damages, including a zero reasonable royalty. *See* 35 U.S.C. § 284; *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020) (affirming district court's reduction of the jury's damages award to zero, rejecting the argument that "because the jury found direct infringement of each asserted claim, 35 U.S.C. § 284 entitles TecSec to a non-zero reasonable royalty," and explaining that "[t]he statute does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts"); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 ("[A] record could demonstrate that, at the time of infringement, the defendant considered the patent valueless and the patentee would have accepted no payment for the defendant's infringement."), *overruled in part on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed Cir. 2015); *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 895 F.2d 1403, 1407 (Fed. Cir. 1990) ("The statute [35 U.S.C. § 284] requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute.") (quoting *Devex Corp. v. Gen. Motors Corp.*, 667 F.2d 347, 363 (3d Cir. 1981)). While Touchstream argues that an award of zero damages is appropriate only when the patentee has waived its right to seek damages under any remaining theories, the Federal Circuit has noted that narrow proposition before stating that, "[m]ore generally, we have observed that there can be an award of no damages where 'none were proven.'" *TecSec*, 978 F.3d at 1291. Furthermore, it is Touchstream's burden to prove damages by

9

alleged infringement [and whether or not that infringement that you have found was willful.][4]  If you decide that any infringement has been willful, that should not affect any monetary damages that you might award, and I will take willfulness into account later.

Now, my job in this case is to tell you what the law is, to handle rulings on evidence and procedure that arise during the trial, and to oversee the conduct of the trial efficiently and to maintain the proper decorum of the courtroom.

In determining the law, it is specifically my job to determine the meaning of any of the claim language from within the asserted patent that needs interpretation. I've already determined the meanings of the claims of the patents-in-suit, and you must accept the meanings that I give you and use those meanings when you decide whether any particular claim has or has not been infringed and when you decide whether or not any particular claim is invalid.

Now, you'll be given a document in a few moments that reflects these meanings that the Court has already arrived at. For any claim term for which the Court has not provided you with an interpretation or a definition, you'll sometimes hear that referred to as a construction, you should apply the plain and ordinary meaning. But if I have provided you with a definition or construction, you are to apply my definition to those terms throughout the case.

---

a preponderance of the evidence. The opinion of Charter's damages expert is of no moment. Touchstream is incorrect, however, that Mr. Bakewell "nowhere opines that the record would support an award of zero dollars if Charter is found to infringe a valid patent." Mr. Bakewell opines that a reasonable royalty would be "less than" certain damages figures or "no more than" certain damages figures. Expert Rpt. of W. Christopher Bakewell, ¶¶ 14, 16, 143, 148, 174, 303, 304. This opinion includes a damages award of $0.

[4] Charter objects to instructing the jury on willfulness directly after infringement for the reasons stated in n.2, *supra*.

Touchstream proposes instructing the jury on willfulness in conjunction with its infringement instructions, *see* n.2, *supra*, and objects to Charter's proposal to instruct on willfulness after damages.

However, ladies and gentlemen, my interpretation as required by the law of the language within the claims should not be taken by you as any indication that the Court has any personal opinion or opinion at all regarding the issues of infringement, invalidity, or any other issue in this case. Those issues are yours alone to decide. And I'll provide you with more detailed instructions on the meaning of the claim terms before you retire to the jury room to deliberate upon and reach your verdict.

Now, in deciding the issues that are before you, you'll be asked to consider specific legal rules, and I'll give you an overview of those rules now, and then at the conclusion of the case I'll give you more detailed instructions.

The first issue that you're asked to decide is whether or not the Defendants, Charter, have infringed any of the asserted claims of the patents-in-suit as brought by Touchstream.

Infringement, ladies and gentlemen, is assessed and determined on a claim-by-claim basis. And Touchstream, the Plaintiff, must show by a preponderance of the evidence that a claim has been infringed. Accordingly, there may be infringement as to one claim but no infringement as to another claim.

And there are also a few different ways that a patent can be infringed, and I'll explain the requirements for each of these types of infringement to you in detail at the conclusion of the case. But, in general, a defendant may infringe a method claim by preforming in the United States each and every requirement or limitation of the claim.

And I'll provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.

[Now, if you decide that any claim of the patents-in-suit has been infringed, then you'll be asked to decide whether or not that infringement that you have found was willful.  The Plaintiff

has the burden to prove willful infringement by a preponderance of the evidence. If you decide that any infringement has been willful, that should not affect any monetary damages that you might award, and I will take willfulness into account later.][5]

The next issue that you are asked to decide as the jury is whether the asserted patents are invalid. Infringement and invalidity are separate and distinct issues. Invalidity is a defense to infringement.  Charter has the burden to prove invalidity by clear and convincing evidence. Therefore, even though the United States Patent and Trademark Office has allowed the asserted claims and even though an issued United States patent is presumed to be valid, you, the jury, must decide whether those claims are invalid after hearing the evidence presented during the trial of this case.

You may find that a patent claim is invalid for a number of reasons, including because it claims subject matter that is anticipated or obvious in light of the prior art, invalid based on a lack of sufficient written description, or ineligible for patent protection.

For a patent claim to be invalid because it is anticipated or obvious, the Defendants must prove that the claim would have been anticipated or obvious to a person of ordinary skill in the field of the technology of the patent at the relevant time. Now, you'll need to consider a number of questions in deciding whether the invention claimed in the asserted patent is anticipated or obvious, and I'll provide you with more detailed instructions on these questions at the conclusion of the trial.

Now, another way that a patent claim can be found to be invalid is if Defendants prove

---

[5] Touchstream proposes instructing the jury on willfulness in conjunction with its infringement instructions for the reasons set forth in n.2, *supra*.

Charter opposes an instruction on willfulness prior to an instruction on damages for the reasons stated in n.2, *supra*.

that there is a lack of an adequate written description. A patent may be invalid if its specification does not describe the claimed invention in sufficient detail so that one skilled in the art can reasonably conclude that the inventor actually had possession of the invention that they're claiming. You'll need to consider a number of questions in deciding whether a patent-in-suit contains a sufficient written description, and I'll provide you with those more detailed instructions at the conclusion of the trial.

Charter also contends that the Asserted Claims of the Asserted Patents claim subject matter that is ineligible for patent protection. Patent eligibility and infringement are separate and distinct issues. While it is my job to decide whether the Asserted Claims are eligible for patent protection, you must decide whether the Defendants have proven that each claim element of the Asserted Patents, both individually and by ordered combination of those elements, involve activities that were only well-understood, routine, and conventional at the time of the alleged invention.

If you decide that any claim of the patents-in-suit has been infringed and is not invalid, you will also need to decide what amount of money damages [, if any,] should be awarded to the Plaintiff Touchstream to compensate it for the infringement of the Defendants Charter.

A damages award, ladies and gentlemen, must be adequate to compensate the patentholder for the infringement. And in no event may a damages award be less than what the patentholder would have received if it had been paid a reasonable royalty for the use of its patent. However, the damages that you award, if any, are meant to compensate the patentholder, and they are not meant to punish the Defendants. You may not include in any damages award an additional amount as a fine or a penalty above what is necessary to fully compensate the patentholder for the infringement.

Additionally, damages cannot be speculative, and the Plaintiff Touchstream must prove the amount of its damages for the alleged infringement by a preponderance of the evidence.

[Further, every Asserted Claim in this case is a method claim. Method claims are not infringed by the mere sale or distribution of a product capable of performing the claimed process. Therefore, Touchstream cannot recover damages based on sales or distribution of products with the mere capability to perform the claimed method. Because mere capability of performing the claimed process is not enough, Touchstream cannot simply count the number of set-top boxes capable of using the Accused Functionalities as the basis for calculating damages. Damages should be limited to products that were actually used to perform the claimed method, or an estimate of the amount or percentage of sold or distributed products that were actually used to perform the claimed method.][6]

---

[6] Charter proposes this instruction for the reasons stated in its Motion for Summary Judgement (Dkt. 87), its Reply in support thereof (Dkt. 153), its Motion to Exclude and Strike Dr. Russell W. Mangum III's Improper Opinions (Dkt. 95), and its Reply in support thereof (Dkt. 154), and based on the authorities cited therein. In particular, Charter's proposed instruction reflects the law's requirement that, where the patentee has alleged only direct infringement of a method claim, damages must be limited to "a reasonable approximation of actual infringing uses of the claimed method." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022) ("Damages should be apportioned to separate out noninfringing uses, and patentees cannot recover damages based on sales of products with the mere capability to practice the claimed method"). This is because a "method claim is directly infringed only by one practicing the patented method." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1359 (Fed. Cir. 2009) (quoting *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993). Touchstream, in its opposition to Charter's Motion to Exclude and Strike Dr. Russell W. Mangum III, relied heavily on *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075 (Fed. Cir. 1983) and on *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009). Touchstream's reliance is misplaced as *Hanson* itself acknowledges that the expert accounted for "estimated cost savings resulting from Alpine's use of the infringing Hedco machines" by basing his "calculations on the **use** of the machines for 800 hours a year," assuming "an average season's use of snowmaking systems." *Hanson,* 718 F.2d at 1080-81 (emphasis added). Likewise, Charter's proposed instruction also reflects the holding in *Lucent*. *See Lucent*, 580 F.3d at 1334 ("The damages award ought to be correlated, in some respect, to the extent the infringing method is **used** by consumers.") (emphasis added); *see also Ecolab*

*Inc. v. Dubois Chems., Inc.*, 2023 WL 7019266, at *13 (D. Del. Oct. 25, 2023) (noting *Lucent* and *Niazi* are "consistent" on this issue).

Moreover, *Georgia-Pacific* factor 11 does not "cover" this instruction. Again, in cases such as this one, damages **must** be limited to "a reasonable approximation of actual infringing uses of the claimed method"—the extent of infringing use is not a mere factor that the jury may consider. *Niazi*, 30 F.4th at 1357 ("[T]he damages base should be limited to products that were actually used to perform the claimed method" or a reasonable approximation thereof.). Additionally, *Niazi* affirmed exclusion of the plaintiff's expert's damages opinion as not only conclusory but also as "***legally insufficient*** because [the expert] failed to 'apportion' between infringing and noninfringing uses.'" *Id.* (emphasis added).

Finally, Touchstream's proposed alternate instruction is improper for several reasons. First, it invites the jury to award damages for acts that do not infringe. Absent exceptional circumstances not present here, a jury awarding a running royalty cannot use mere estimates of future infringement at the time of the hypothetical negotiation to calculate the actual royalty base to which the royalty rate agreed upon in the hypothetical negotiation is applied. A patent owner who has proven infringement is entitled only to "damages adequate to compensate ***for the infringement***," 35 U.S.C. § 284 (emphasis added), not damages to compensate for acts that do not infringe. A running royalty on method claims must therefore be tied to the use of those claims. Second, Touchstream's proposed alternative instruction uses the confusing term "there is no requirement that damages for a method claim be mathematically limited to specific instances of infringement proven with direct evidence," which is imprecise, confusing, and has no basis in the case law. To the extent Touchstream is merely saying that exact precision is not required when calculating damages, that concept is adequately conveyed to the jury through Charter's instruction that damages be limited to "an estimate of the amount or percentage of sold or distributed products that were actually used to perform the claimed method."

==Touchstream==:  Touchstream objects to this instruction.  Charter's proposed instruction is confusing and legally incorrect insofar as it conflates infringement (and what constitutes infringement) in the first three sentences with damages issues in the last three sentences.  Re-instructing on infringement in the context of damages is confusing and unfairly prejudicial.  Moreover, Charter's proposed damages instruction is legally incorrect and will confuse the jury because extent of use is covered by *Georgia-Pacific* factor 11, and Charter's instruction improperly attempts to resolve fact issues in the guise of jury instructions (including by informing the jury that "Touchstream cannot simply count the number of set-top boxes capable of being used with the Accused Functionalities as the basis for calculating damages").  The Federal Circuit, while noting that the extent of later, actual use may be correlated with the expectations of parties to the earlier hypothetical negotiation, has rejected the position that damages be directly, mathematically limited to actual infringing use, especially where, as here, parties would not normally base royalties on this methodology. *See Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1323–24, 1334 (Fed. Cir. 2009) ("Microsoft's second argument for reversing the damages award is that, for method claims, [Federal Circuit precedent] requires that damages be limited to the proven number of instances of actual infringing use…. [W]e reject both arguments as presented by Microsoft. . . . Usage (or

Now, I'll give you more detailed instructions on the calculation of damages for the Defendants' alleged infringement of the patents-in-suit at the conclusion of the trial, including by giving you specific instructions with regard to the calculation of a reasonable royalty. However, ladies and gentlemen, the fact that I'm instructing you on damages does not mean that Touchstream

_____

similar) data may provide information that the parties would frequently have estimated during the negotiation. Even though parties to a license negotiation will usually not have precise data about future usage, they often have rough estimates as to the expected frequency of use. . . . On the other hand, we have never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence. Such a strict requirement could create a hypothetical negotiation far-removed from what parties regularly do during real-world licensing negotiations. As shown by the evidence in this case, companies in the high-tech computer industry often strike licensing deals in which the amount paid for a particular technology is not necessarily limited to the number of times a patented feature is used by a consumer. A company licensing a patented method often has strong reasons not to tie the royalty amount strictly to usage. The administrative cost of monitoring usage can be prohibitively expensive. Furthermore, with some inventions, say for example a method of detecting fires, value is added simply by having the patented invention available for use. Thus, potential licensors and licensees routinely agree to royalty payments regardless of whether the invention is used frequently or infrequently by the consumer." (citation omitted)); *see also Hanson v. Alpine Ski Area, Inc.*, 718 F.2d 1075, 1080 (Fed. Cir. 1983) (affirming damages award in case involving only method claims and rejecting the argument that "because [defendant] acquired the Hedco machines for experimental purposes and did not use them much, the royalty should have been based upon the actual use rather than upon estimated savings reflecting the snowmaking capacity of the machines"); *Lone Star Tech. Innovations, LLC v. ASUSTek Computer Inc.*, No. 6:19-CV-00059-RWS, 2022 WL 4494312, at *8–11 (E.D. Tex. Aug. 18, 2022) (analyzing and applying *Lucent*).

Moreover, the damages opinion in the *Niazi* case cited by Charter was ultimately excluded because it was "conclusory," which Charter has not argued, and could not persuasively argue, is the case here. *See* 30 F.4th at 1343. The passage Charter cites from *Lucent* are from a discussion of *Georgia-Pacific* factor 11, which the jury is already being instructed on, and the ruling in *Lucent* expressly declined to "identify any particular *Georgia-Pacific* factor as dispositive," 580 F.3d at 1333-35*, underscoring that the issue identified by Charter is a disputed fact issue on a *Georgia-Pacific* factor.

Finally, to the extent that the Court overrules Touchstream's objection and instructs the jury regarding this issue, Touchstream proposes the following instruction: "You may consider the extent to which the parties to the hypothetical negotiation to determine a reasonable royalty, which would have taken place at the time of the first infringement, would have considered the extent they predicted the infringing method would be used by consumers. However, there is no requirement that damages for a method claim be calculated with specific instances of infringement proven with direct evidence."

is or is not entitled to recover damages.

[Now, if you decide that any claim of the patents-in-suit has been infringed and is not invalid, then you'll need to decide whether or not that infringement was willful. The Plaintiff has the burden to prove willful infringement by a preponderance of the evidence. If you decide that any infringement has been willful, that should not affect any monetary damages that you might award, and I will take willfulness into account later.][7]

Now, you're going to be hearing from a number of witnesses over the course of this trial, and I want you to keep an open mind while you're listening to the evidence and not to decide any of the facts until you have heard all the evidence.

This is important. While the witnesses are testifying, remember, you'll have to decide the degree of credibility and believability to allocate to each of the witnesses and the evidence and testimony that they give.

So while the witnesses are testifying from the witness stand during this trial, you should be asking yourselves things like this: Does the witness impress you as being truthful? Does he or she have a reason not to tell the truth? Does he or she have any personal interest in the outcome of the case? Does the witness seem to have a good memory? Did he or she have the opportunity and ability to observe accurately the things that they've testified about? Did the witness appear to understand the questions clearly and answer them directly? And, of course, does the witness' testimony differ from the testimony of other witnesses? And if it does, how does it differ? These are some of the things that you should be thinking about while you're listening to each and every

---

[7] Charter: Charter includes the willfulness instruction after the instructions on invalidity and damages for the reasons stated in n.2, *supra*.

Touchstream objects to instructing the jury on willfulness after damages for the reasons stated in n.2, *supra*.

one of the witnesses.

Also, I want to talk to you briefly about expert witnesses. When knowledge of a technical subject may be helpful to you, the jury, a person who has special training and experience in that particular technical field, we refer to them as an expert witness, is permitted to testify to you about his or her opinions on those technical matters.

However, ladies and gentlemen, keep in mind you're not required to accept an expert's opinion or any other opinion at all. It's up to you to decide whether you believe any expert witness or any witness, for that matter, and whether you determine that what they're telling you is correct or incorrect, or whether or not you want to believe what they have to say.

Now, I anticipate that there will be expert witnesses testifying in support of each of the sides in this case. But when they do, it will be up to you to listen to their qualifications. And when they give you an opinion and explain the basis for that opinion, you will have to evaluate what they say and whether you believe it, and to what degree, if any, that you want to give that opinion weight. Remember, ladies and gentlemen, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

Now, during the course of the trial it's possible that there will be testimony from one or more witnesses that are going to be presented to you through what's called a deposition. In trials like this, it's difficult to get every witness here in the courtroom in person at the same time to testify, so lawyers for each side, prior to the trial, take the depositions of the witnesses.

In a deposition, the witness is present, they're sworn and placed under oath, a court reporter is present, counsel for both of the parties are present, and counsel asks the witness questions and the witness' answers to those questions are taken down, both the questions and the answers are recorded. Often those depositions are video recorded.

Now, it's important for you to understand, ladies and gentlemen, that during the course of this trial, when these deposition witnesses might be presented to you, you'll be seeing, in all likelihood, clips from recorded video depositions, and you'll be seeing the portions of those depositions that counsel believe are relevant and important for you to see.

Let me explain it to you this way. During a typical deposition in advance of a trial, the witness is questioned and answers are given for many hours, usually up to a maximum of seven hours. And so to keep you from listening to every question and every answer for seven hours from a witness who can't physically be here in person to testify, the parties will be able to select designations and counter designations from that deposition and the transcript and if it was videoed, the video that they believe relate to the important relevant things that you should see.

And because of that process, when you have a witness presented to you who testified by deposition as opposed to coming in person and testifying in open court, you're going to see breaks in that testimony when it's played back to you, you're going to hear changes in voices, you're going to see little irregularities, and that's unavoidable because they are cutting out pieces across many hours of testimony and putting them together. And I promise you that is a much better alternative than listening to an entire multi-hour deposition to get five minutes' worth of testimony out of it.

But when that happens, disregard the differences in voice, disregard the differences in tone or sound. If it looks like there's a clip where something's put together, it probably is, but don't focus on that. Listen to the testimony that's given when a witness testifies by deposition and pay attention to the substance of the questions and the answers and don't get distracted by any of those irregularities that are necessary to avoid all of us having to listen to hours and hours of testimony when there's only an included portion, a smaller portion, that's relevant to what's at issue during

the trial.

So if it jumps around, if you hear different voices, don't focus on that; focus again on the substance of what's asked and the substance of what's said.

Now, assuming that there will be some witnesses who cannot appear in person and are presented to you by deposition, I want you to understand that that deposition testimony is entitled, insofar as possible, and is to be judged by you as to its credibility and believability and otherwise considered in the same way if the witness had appeared in person and testified live from the witness stand.

Also, ladies and gentlemen, information on some of the documents that you may see over the course of the trial may include what are called redactions. There may be portions of documents that are presented to you as exhibits that have some of the document blacked out, redacted, and that happens because there are often portions of that document that are not important and, in fact, irrelevant for you to see. And those portions, pursuant to the Court's prior order, have been blacked out or redacted.

Just like I said with the depositions, don't focus on the redactions, don't focus on what's blacked out, don't try to guess what was said before it was blacked out, don't speculate; focus on the part that's clear and legible and that's presented to you in the document. Don't worry about what's blacked out or redacted, and don't consider that or get distracted by it. Again, focus on what is clearly printed and able to be read from any documents that might otherwise include sections or provisions or words that are blacked out or redacted.

Now, during the course of the trial, it's possible that the lawyers will make certain objections, and when they do, I will give rulings on those objections. And remember, it's the duty of an attorney for each side to object when the other side offers testimony or evidence which the

attorney believes is not proper under the orders of the Court, the Rules of Civil Procedure, or the rules of evidence.

Now, upon the Court allowing the testimony or other evidence to be introduced over an objection of an attorney in the case that I overrule that objection, the Court does not, unless expressly stated otherwise, indicate any opinion in that as to the weight or effect of that evidence. As I've said before, you, the jury, are the sole judges of the credibility and believability of all the witnesses and the weight and effect to give to all of the evidence.

Now, I'd like to compliment the attorneys on both sides of this case because up until today through various pretrial procedures that you have not been involved in, the Court has reviewed and heard arguments as to many, many different exhibits, many different issues, the Court has ruled on those, and those exhibits that have been admitted into evidence by the Court are able to be shown to you during this trial without going through a formal offer and an objection and an argument and a ruling by the Court. In other words, all that's been done in advance.

And I promise you, you probably don't realize how much you will benefit by that, but you will benefit by that, because you won't have to listen to all that. I've already gone through all that with the parties and, working together, the Court's already determined the documents that are properly admissible and can be shown to you as exhibits during this trial, and that means the lawyers are able to present them and offer them without all those formalities that have already been taken up and considered by the Court.

And I promise you that has saved you many, many hours of sitting in those chairs that you do not have to endure because it's already been done by the Court working with the attorneys in advance of the trial. And I want to compliment them for their professionalism and the way that they've addressed and worked with the Court on those issues.

All of that means that when you're shown an exhibit during the trial, that it's already been ruled on by the Court as to its admissibility. If the Court did not find it admissible, you will not see it during the trial. But once they offer an exhibit that's been admitted by the Court, counsel can ask questions, they can put it in a proper context, and they can review it with the witnesses, but they don't have to go through all of that prior process that we've already gone through. And that streamlined the case a great deal.

However, even though all that work's been done in advance, it's still possible that over the course of the trial objections may arise. If I should sustain an objection to a question addressed to a witness, then you, the jury, must disregard the question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if I had permitted them to answer the question.

In other words, if I overrule an objection, then you should consider the question and the answer just as if no objection had been made.

You should also know, ladies and gentlemen, that the law of the United States permits a United States district judge to comment to the jury regarding the evidence in the case, but those comments from the judge to the jury regarding the evidence are only an expression of the judge's personal opinion, and the jury may disregard those comments in their entirety because, as I've told you, you, the jury, are the sole judges of the facts in this case, and the credibility of witnesses and how much weight, if any, to give to the evidence that's presented to you over the course of this trial.

But I want to be clear. Even though the law may permit me the ability to comment on the evidence, as I indicated to you earlier, I am going to work very hard not to comment on any of the evidence, not to give you any insight as to what the Court might personally think about any of

this evidence that will be presented during the course of the trial, because deciding the facts in this case from that evidence is a job of the jury and not the judge in a context like this.

So don't take anything you see or hear from me or you think you see or hear from me as something for you to consider, a factor to take into account in making your ultimate decision about what the facts are in this case.

Now, our court reporter, Mr. McRoberts, who's seated in front of me, will take down everything that's said in the courtroom over the course of the trial. And you may hear me instruct the witnesses and the lawyers to make sure they don't talk at the same time over the course of the trial, and that's because you can't write down two people talking at the same time and we want to have a clear and an unconfused, straight-forward record of this case.

But the written transcription of the questions asked and the answers given, even though Mr. McRoberts will be taking them down, those are not going to be available for you to take back with you when you go to the jury room after you've heard all the evidence and you deliberate on your verdict in this case. That means, ladies and gentlemen, you're going to have to rely on your memory of the evidence presented over the course of the trial.

Now, in a moment you're each going to be given a juror notebook, and in the back of that notebook you'll find a brand new legal pad. In the front pocket you should find a new pen if you don't have one of your own. You're entitled to take notes over the course of the trial anywhere within that notebook, particularly on that legal pad, if you choose to do that. You're also not required to take notes during the course of the trial.

If you take notes, remember those notes are for your own personal use. You still have to rely on your memory of the evidence as given in open court, and that's why you should be paying close attention to each and every witness when they testify. And you should not abandon your own

recollection because somebody else's notes indicate something different. Remember, if you take notes during the trial, those notes are meant to refresh your recollection and that's the only reason you should be keeping them.

I'm now going to ask our Court Security Officer to pass out these juror notebooks to each member of the jury.

All right. If you'll look at these notebooks briefly with me, ladies and gentlemen, you'll see that in the front of these notebooks you'll each have a complete copy of the patents-in-suit that we've already talked about. You'll also see that you should have another section in there regarding the language from the asserted claims where the Court has already determined and given you a construction, a definition of that particular language to use during the trial. You should have the claim language on one side and the adopted construction or definition that the Court already reached on the other side of that particular part of your notebooks.

Also, after that section, you should find a section in the middle where there are tabbed pages for each of the witnesses that may be presented or called to testify during the course of the trial. Each of those witness pages should have a photograph of the witness at the top of the page and their name underneath, and then the remainder of that page should be ruled lines in case you want to take additional notes there in regard to that witness as opposed to using your legal pad.

And then behind the section of witness tabs or witness pages, that's where you should find the legal pad that's been three-hole punched so it will fit in your notebook. And, again, you should find a pen in the front pocket of each one of these. Now, these notebooks, ladies and gentlemen, should stay in your possession throughout the trial. They're not to be left lying around where somebody could pick them up and look at them. They should be in your possession. When you leave each day during the trial, I'm going to ask you to take them with you to the jury room

and leave them closed on the table in the jury room, and then you can pick them up back up there each morning when you come back in. When you come into the courtroom and go into the jury box, you should have these notebooks with you.

Now, there may be times during the course of the trial when we take a short recess, and you're only going to be out of the jury box and out of the courtroom for a few minutes, in which case I might say to you, ladies and gentlemen, you can simply close and leave your notebooks in your chairs. And if that's the case and if I tell you that, then you don't need to carry them with you; you can just close them and leave them in your seat because I don't anticipate that we're going to be out of the courtroom for any great length of time.

But if we're going to be out of the courtroom for longer than a short period of time, I'll want you to take them with you when you go to the jury room and, again, leave them on the table there overnight so you can get them when you come back each day. They are not to leave the courthouse. They are to either be in your possession or in the jury room unless I give you other instructions.

Now, in a minute, ladies and gentlemen, we're going to hear opening statements from the attorneys in the case. These opening statements are not opening arguments. They're opening statements, and they are meant to provide you a road map of what each side believes that the evidence in this case is going to show you.

Also, remember that these opening statements, along with everything else the lawyers tell you in this case, is not evidence. The evidence is the sworn testimony of the witnesses from the witness stand given under oath subject to cross-examination, the sworn testimony of any witnesses who testify by deposition, as I've already described to you, and the documents and exhibits that the Court has admitted into evidence and found to be admissible under the rules of

evidence. That is the evidence in this case; nothing else.

And what the lawyers tell you is not evidence. But they're going to present their opening statements in a few minutes, and they have a duty to point out to you what they believe the evidence will show. But, again, what they tell you is not evidence.

Now, after the opening statements from both the Plaintiff's counsel and Defendants' counsel, the Plaintiff will have an opportunity to call its witnesses. That's what we call the Plaintiff's case-in-chief. The Plaintiff will call its witnesses, those witnesses will testify, and the Defendants will cross-examine those witnesses. And after the Plaintiff has called or presented all of its intended witnesses, then the Plaintiff will rest the Plaintiff's case-in-chief.

At that point the Defendants will put on the Defendants' case-in-chief. They will call their witnesses, they will examine their witnesses, and the Plaintiff's counsel will have an opportunity to cross-examine the Defendants' witnesses. And then when the Defendants have put on all of their intended witnesses, the Defendants will rest their case-in-chief.

At that point, the Plaintiff has an option to call what are known as rebuttal witnesses to rebut anything that the Defendants may have put on. The Plaintiff is not required to call rebuttal witnesses, but they may call rebuttal witnesses if they choose to. Once those rebuttal witnesses are presented by the Plaintiff and then cross-examined by the Defendants, then the Plaintiff will rest its rebuttal case.

When the Plaintiff has rested its case-in-chief, when the Defendants have rested their case-in-chief, and if there is a Plaintiff's rebuttal case, when that rebuttal case has been completed and the Plaintiff has rested its rebuttal case, then you will have heard all of the evidence in this case. After that point in time, I will give you my final instructions that you are to consider and apply in discharging your duty as jurors. That set of final instructions from me to you is often

called the Court's final jury instructions. It's also often referred to as the Court's charge to the jury.

Once you've received my charge, then you will hear argument from both Plaintiff's counsel and Defendants' counsel. And once you've heard the closing arguments from both sides in the case, that's the point in time that I will instruct you to retire to the jury room and to deliberate on your verdict, to consider those questions in the verdict form and come to a unanimous answer as to those questions.

And as I told you earlier, ladies and gentlemen, until that specific point in time, you must not discuss this case or communicate about it with anyone, including the eight members of the jury.

But when all that has happened and I say, ladies and gentlemen, you may now retire to the jury room to deliberate upon your verdict, then it's like a light switch flips the other way and at that point you go from not being able to discuss the case with each other to being required to discuss the case with each other while you deliberate and come to a unanimous decision as to those questions that will be set forth in the verdict form. But until that time, it is critically important that you not discuss anything about the case with each other, and it is critically important that you not communicate or discuss anything about the case with anybody else.

Also, let me just briefly remind you of what I told you earlier. This is a small courthouse, as federal courthouses go, and there will be times when you will be in close physical proximity to some of the people involved in the trial on either the Plaintiff's side or the Defendants' side. Don't take it as being rude, don't take it as being unfriendly if they don't talk with you, visit with you, smile and interact with you. They're simply doing what I've told them to do.

And all of these instructions from one perspective or another ultimately go back to that same fundamental principle that when all of this process comes to an end and you go to the jury

room to deliberate on your verdict and come to a unanimous agreement as to what the answers to those questions are, the only source of information that you should have before you that you can draw upon to answer those questions must come from the sworn testimony presented during the trial, either by live witnesses or deposition witnesses, and the exhibits that have been admitted into evidence by the Court. There must be nothing else before you when you answer those questions, and that's the main reason why most of these instructions are as they are.

So if over the course of the trial, as you're coming and going to your vehicles at the beginning of the day, the end of the day, as you come and go from inside to outside of the courthouse and vice versa, when you walk by one of these lawyers or one of these witnesses or one of their support staff, don't take it as they're being rude; they're simply doing what I have instructed them to do. And please keep that in mind and take that into account. With these instructions, we'll now proceed to hear opening statements from the attorneys in the case.