IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TOUCHSTREAM TECHNOLOGIES, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., et al., <br><br> *Defendants*. | § § § § § § § § § § § § CASE NO. 2:23-cv-00059-JRG-RSP <br> (Lead Case) |

**<u>MEMORANDUM ORDER</u>**

Before the Court is the Charter Defendants' Motion to Exclude and Strike the Opinions of Dr. Stephen B. Wicker. **Dkt. No. 92.** For the reasons discussed below, the Motion is **GRANTED** only in **PART**.

I.   **LEGAL STANDARD**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under Daubert is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a Daubert hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

2

## II. ANALYSIS

### A. Dr. Wicker's References to and Reliance on the *Google* Matter

In the Motion, Charter moves to strike Dr. Wicker's reference to "the *Google* matter," a separate litigation with different parties, different accused products and a different set of asserted patents. Dkt. No. 92 at 2. Charter objects to Dr. Wicker's references for a variety of reasons: 1) violation of the Court's Standing Order on MILs No. 13; 2) the *Google* matter is still pending and not fully final even at the district court level; 3) Touchstream's failure to produce documents from the *Google* matter; and 4) different accused products in the *Google* matter. *Id.* at 3–4. Charter asserts that allowing Dr. Wicker to opine on a different litigation is highly prejudicial to them. *Id.*

Touchstream responds that an order excluding Dr. Wicker's references to the *Google* litigation would be premature and unnecessary because Plaintiff would only elicit this testimony from Dr. Wicker if Charter opens the door based on its expert, Dr. Shamos's invalidity testimony. Dkt. No. 118 at 3–4. Touchstream represents that prior to potentially eliciting this testimony, it would confer with Charter, and if necessary, raise it with the Court. *Id.* at 4. Touchstream argues that the testimony would be relevant to counter the assertion by Charter that Touchstream's product was unsuccessful by arguing that Google's Chromecast is highly successful and has been found by a jury to infringe the patent. *Id.* at 3.

The Court previously granted Charter's motion *in limine* No. 2, specifically precluding Touchstream from referencing the *Google* matter. Dkt. No. 233 at 104: 16–18. Touchstream has failed to identify any potentially legitimate use of the *Google* litigation. Accordingly, the portion of Dr. Wicker's report that references the *Google* matter is hereby **STRICKEN.**

.

### B. Dr. Wicker's References to Dr. Almeroth

In the Motion, Charter also moves to strike Dr. Wicker's references to Dr. Alemroth, an expert who will not be testifying in this trial but testified on behalf of Touchstream in the *Google* matter. Dkt. No. 92 at 4. Touchstream explains that Dr. Wicker reviewed Dr. Almeroth's opinions and agrees with them. Dkt. No. 118 at 8. In reply, Charter represents that "[i]f Touchstream can agree that Dr. Wicker will not mention Dr. Almeroth in any way absent Charter opening the door by mentioning Dr. Almeroth first, this issue is resolved." Dkt. No. 148 at 5. In sur-reply, Touchstream makes clear that it "does not intend to elicit testimony from Dr. Wicker about any opinion of Dr. Almeroth whatsoever." Dkt. No. 175 at 4. Touchstream reserves the ability to allow Dr. Wicker to respond if Charter opens the door. *Id.* The Court intends to hold Touchstream to its representation. Accordingly, there is nothing to strike, and this portion of the Motion is **DENIED AS MOOT.**

### C. Dr. Wicker's References to and Reliance on Documents that Were not Produced in Discovery

Finally, Charter seeks exclusion of Dr. Wicker's testimony that it alleges Touchstream did not produce in discovery. Dkt. No. 92 at 6. In reply, Charter represents that "Touchstream has finally provided these documents, mooting the issue." Dkt. No. 148 at 5. Accordingly, this portion of the Motion is **DENIED AS MOOT.**

## III. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Motion as to Dr. Wicker's references to the *Google* matter and **DENIES** the Motion as moot in all other respects.

**SIGNED this 20th day of January, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE