# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TOUCHSTREAM TECHNOLOGIES, INC., | § § § |
| *Plaintiff*, | § §   CASE NO. 2:23-cv-00059-JRG-RSP |
| v. | §        (Lead Case) |
| CHARTER COMMUNICATIONS, INC., et al., | § § § § |
| *Defendants*. | § § |

## MEMORANDUM ORDER

Before the Court is Plaintiff Touchstream's Motion to Strike the Opinions of Dr. Michael I. Shamos. **Dkt. No. 94.** For the reasons discussed below, the Motion is **GRANTED** only in **PART.**

## I. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

      Importantly, in a jury trial setting, the Court's role under Daubert is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a Daubert hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II. ANALYSIS

### A. Dr. Shamos's "Three Anys" Opinions

In the Motion, Touchstream moves to strike Dr. Shamos's opinions directed to the Touchstream "Three Anys." Dkt. No. 94 at 2. Dr. Shamos is Charter's non-infringement and invalidity expert. Touchstream argues that Dr. Shamos relies on statements from Touchstream's marketing materials to improperly opine on claim construction issues. *See id.* at 4. For example, Dr. Shamos opines that "a POSITA would recognize that the Asserted Claims attempt to claim methods that must permit use of *any* personal computing device to control the delivery and playback of content from *any* source to *any* display device." *Id.* at 3 (quoting Dkt. No. 94-1, ¶ 231). Touchstream argues that neither Charter nor Dr. Shamos has provided a legitimate purpose for the "three anys" opinion. *Id.* at 6. Moreover, Touchstream argues that the risk of jury confusion and prejudice to Touchstream far outweighs any probative value of the testimony. *Id.* Specifically, Touchstream worries about the jury will improperly rely on Dr. Shamos's testimony about the "three anys" for infringement purposes. *Id.*

Charter responds that Dr. Shamos's "three anys" opinions relate to damages and are proper. Dkt. No. 120 at 1. Specifically, Charter points to *Georgia-Pacific* factors 9 and 10. *Id.* Charter disclaims using the "three anys" opinions to argue noninfringement or claim construction. *Id.* at 2. Instead, Charter argues that "the fact that Charter's accused Send-to-Tv feature does not provide the benefits that Touchstream touted as its value proposition in its own documents goes directly to the hypothetical negotiation." *Id.* Dr. Shamos opines that the problems that Touchstream purportedly solves are not relevant for Charter and would have been relevant to the hypothetical negotiation. *Id.*

The Court previously granted-in-part Touchstream's motion *in limine* foreclosing "any express argument that compares the claims directly to the marketing materials instead of

3

comparing the claims to the accused products." Dkt. No. 233 at 66: 20–23. The Court finds it noteworthy that Charter's damages experts does not rely on any of Dr. Shamos's "three anys" opinions. After reviewing the portions of the reports cited by the parties, the Court finds that contrary to Charter's representations Dr. Shamos provides improper claim construction opinions that would be highly confusing to the jury. For example, Dr. Shamos opines that "[a] POSITA would recognize that the Asserted Claims attempt to claim methods that must permit use of any personal computing device to control the delivery and playback of content from any source to any display device." Dkt. No. 94-1, ¶ 231. This is a claim construction argument. The other cited paragraphs go into technical details comparing the claim language to Touchstream's marketing materials. The Court **GRANTS** this portion of the Motion and thus **STRIKES** any reference to Touchstream marketing materials from Dr. Shamos's report.

### B.  Dr. Shamos's Independent Development Opinions

In the Motion, Touchstream also moves to strike Dr. Shamos's opinions about Charter's independent development of the accused technology. Dkt. No. 94 at 7. Touchstream argues that Charter never disclosed this as part of their invalidity contentions and now seek to back door it into the trial under the pretext of *Georgia-Pacific* factor 5. *Id.* Touchstream argues that the jury may be misled into thinking this is a valid basis for a finding of invalidity. *Id.*

Charter counters that they plan to offer this evidence for damages purposes (*G-P* factor 5) and to rebut Touchstream's copying and willfulness allegations, not for invalidity purposes and thus did not need to disclose it in their invalidity contentions. Dkt. No. 120 at 5. Here, Charter's damages expert (at least nominally) relies on this opinion from Dr. Shamos in his analysis of the hypothetical negotiation. *Id.* at 7 (citing Dkt. No. 120-10, ¶ 287 & n.518). Further, Charter argues for the use of this testimony to rebut willfulness allegations from the Plaintiff. *Id.*

The Court finds that Charter has presented sufficient legitimate non-invalidity purposes for this testimony. Any potential prejudice can be dealt with through cross-examination and a limiting instruction, if appropriate. The Court **DENIES** this portion of the Motion.

### C. Xfinity TV Remote App "System Theories"

Finally, Touchstream objects to Dr. Shamos's invalidity opinions relating to Comcast's Xfinity TV Remote App system. Dkt. No. 94 at 12. Touchstream argues that the opinions are unreliable because they treat several distinct instrumentalities as a single prior art system in violation of § 102. *Id.* Touchstream essentially argues that as a matter of law the Xfinity System cannot be considered a single prior art system reference because Touchstream asserts that "[f]or multiple references to qualify as a single prior art reference, they must all describe the exact same thing, i.e., be embodied in a 'coherent whole document [or product] that can be assigned a single prior art date of creation.'" *Id.* at 13–14 (quoting *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Circ. 2008). Touchstream argues that the Comcast "system" is dispersed across 57 unique documents and Dr. Shamos does not explain why this collection of documents forms a single system reference. *Id.* at 14–15.

Charter responds that Touchstream's motion presents a question of fact for the jury and any criticisms go to the weight, not the admissibility of Dr. Shamos's opinions. Dkt. No. 120 at 11. Charter disputes the characterization of the documents as unique and explains their connection and the witness testimony that supports their assertions. *Id.*

The Court agrees with Charter that any dispute here is one of fact that is left to the jury to resolve. The Court **DENIES** this portion of the Motion.

### III. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Motion as to Dr. Shamos's opinions regarding Touchstream's marketing materials and **DENIES** the Motion on the other bases.

**SIGNED this 20th day of January, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE